UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK                FOR PUBLICATION
---------------------------------------------------------X
In re:                                                               Chapter 11

JOHNS-MANVILLE CORPORATION, *et al.*,       Case Nos. 82 B 11656,
                                                                         82 B 11657, 82 B 11660,
                                                                         82 B 11661, 82 B 11665 through
                                                                         82 B 11673 inclusive,
                                                                         82 B 11675, 82 B 11676 (BRL)

                                              Debtors.
---------------------------------------------------------X

APPEARANCES**:**

MILBERG LLP
One Pennsylvania Plaza, 48th Floor
New York, NY 10119
Telephone: (212) 594-5300
Facsimile:  (212) 868-1229
<u>By</u>:    Matthew Gluck
         Kent A. Bronson

*Statutory Settlement Counsel and Hawaii Settlement Counsel*

GOLDBERG KOHN LTD
55 East Monroe Street, Suite 3300
Chicago, Illinois 60603
Telephone: (312) 201-4000
Facsimile:  (312) 332-2196
<u>By</u>:    Ronald Barliant (admitted *pro hac vice*)
         Danielle Wildern Juhle (admitted *pro hac vice*)

*Common Law Settlement Counsel*

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Telephone:  (212) 455-2000
Facsimile:   (212) 455-2502
<u>By</u>:    Barry R. Ostrager
         Myer O. Sigal, Jr.
         Andrew T. Frankel

*Attorneys for Respondents The Travelers Indemnity Company and Travelers Casualty and Surety Company*

Before: Hon. Burton R. Lifland
       United States Bankruptcy Judge

**MEMORANDUM DECISION AND ORDER GRANTING THE MOTIONS OF HAWAII AND STATUTORY DIRECT ACTION SETTLEMENT COUNSEL AND COMMON LAW SETTLEMENT COUNSEL TO COMPEL TRAVELERS' PAYMENT OF <u>SETTLEMENT PROCEEDS</u>**

Before the Court are the motions (the "Motions") of (1) Statutory and Hawaii Direct Action Settlement Counsel to Compel Payment of Settlement Proceeds Under Statutory and Hawaii Direct Action Settlement Agreements (the "Statutory/Hawaii Motion") (Dkt. No. 3931) and (2) Common Law Settlement Counsel to Enforce Settlement Agreement and Compel Payment of Settlement Proceeds Under Common Law Settlement Agreement (the "Common Law Motion") (Dkt. No. 3932).[1]

Despite attempts to portray the issues before this Court on remand as multifaceted and complex, they are not. The only impediment to effectuating these landmark settlements is the resolution of a single disputed condition precedent. Therefore, in accordance with the directive from the Second Circuit and hopefully to end this Sisyphean[2] cycle, the Court will resolve this narrow dispute that has gone on for too long, especially for those asbestos victims who have yet to be fully compensated. *See In re Johns-Manville Corp.* ("*Manville III*"), 600 F.3d 135, 159 (2d

---

[1] Although the Motions were brought separately by Statutory and Hawaii Settlement Counsel and Common Law Settlement Counsel, the settlements have consistently been construed and recognized as interconnected. They are not mutually exclusive expressions of prohibitions against statutory claims by one party and against common law claims by another. *See* Transcript of Aug. 17, 2004 Hearing (Dkt. No. 3819) at p. 20: 15-16 (This Court found that "[the Hawaii and the Statutory Settlements on the one hand and the Common Law Settlements on the other hand] both rest on the same foundation."). Indeed, Governor Cuomo noted that "[f]rom the beginning of the mediation" process, he "personally believed that the large number of direct actions . . . were basically interconnected" and that "the connectedness of these actions . . . require[d] that in order to achieve the best possible result, everything be done completely at the same time." Transcript of May 24, 2004 Hearing at p. 6: 2-6; p. 11: 2-5, Ex. B to Declaration of Barry R. Ostrager ("Ostrager Decl.") (Dkt. No. 3937).

[2] Sisyphus was the son of Aeolus, ruler of Corinth who was punished "by being compelled to roll a stone to the top of a slope, the stone always escaping him near the top and rolling down again." Thus, a Sisyphean cycle refers to one that is "endless and unavailing." *See* Random House Dictionary of the English Language 1333 (1970).

Cir. 2010) (leaving "it to the parties, with the aid of the bankruptcy court, to determine the status of their settlements").

Nearly three decades ago, the Johns-Manville Corporation and its affiliated companies (collectively, "Manville") filed the instant chapter 11 cases before this Court. The same parties that were present thirty years ago are again before this Court in this long-standing saga. In addition, as the Supreme Court noted, "[a]lmost a quarter-century after the 1986 Orders were entered," "the same judge who had issued the 1986 Orders" is still presiding today. *Travelers Indem. Co. v. Bailey*, 129 S. Ct. 2195, 2206, 2200 (2009). But most importantly, the relief sought by the parties is still the same – compensation for the thousands of asbestos victims who continue to await their agreed-upon settlement payments.

More than six years ago, Settlement Counsel[3] and Travelers[4] (collectively, the "Parties") executed three settlement agreements to resolve actions brought by victims against Travelers for asbestos-related personal injuries arising from Travelers' relationship with Manville. At that time, Travelers represented to this Court that "[t]hese settlements will collectively provide nearly a ***half billion dollars*** to asbestos claimants at a time when new sources of asbestos compensation are few and far between." Supplemental Declaration of Kent A. Bronson (Dkt. No. 3945), Ex. 2 at p. 1 (emphasis in original). Indeed, Travelers agreed to pay at least $360 million to the statutory direct action settlement fund, $15 million to the Hawaii direct action settlement fund and $70 million to the common law direct action settlement fund upon the satisfaction of specified conditions precedent.

---

[3] "Settlement Counsel" refers collectively to the Statutory Direct Action, Hawaii Direct Action, and Common Law Direct Action Settlement Counsel as defined in the respective settlement agreements. *See* Declaration of Kent A. Bronson ("Bronson Decl.") (Dkt. No. 3931), Ex. 1, ¶ 1(s); Ex. 2, ¶ 1(i); Ex. 3, ¶ 1(r).

[4] "Travelers" as used herein is defined in the respective settlement agreements. *See* Bronson Decl., Ex. 1, ¶ 1(u); Ex. 2, ¶ 1(u); Ex. 3, ¶ 1(s).

3

At the core of the instant Motions lies a sharp dispute between the Parties as to whether, pursuant to the terms of these settlements, Travelers' payment obligations were irreversibly triggered by the Supreme Court's decision in *Bailey* or terminated by the Second Circuit's decision in *Manville III*.

For the reasons set forth below and at oral argument, the Motions are GRANTED. Travelers is, therefore, ordered to immediately fulfill its payment obligations in accordance with the plain terms of the settlements.

## BACKGROUND

This Court assumes familiarity with the lengthy procedural history of these cases and, accordingly, will address only those facts necessary for resolution of the Motions at issue.

### I. Facts

#### A. The Direct Actions

On December 18, 1986, this Court entered an order (the "Insurance Settlement Order")[5] prohibiting "all Persons" from "commencing and/or continuing any suit, arbitration or other proceeding of any type or nature" against Travelers that sought to collect "any and all claims . . . against [Travelers] based upon, arising out of or relating to" the insurance policies under which Travelers was contractually obligated to defend Manville against asbestos-related torts. In 2002, Travelers invoked the terms of this 1986 Order, when it moved this Court to enjoin twenty-six state court actions (the "Direct Actions") seeking to hold Travelers liable for alleged asbestos-related personal injuries arising from (1) Travelers' underwriting of insurance policies for Manville; (2) Travelers' investigation, defense and settlement of claims against Manville; and (3)

---

[5] The Insurance Settlement Order was incorporated by reference in this Court's December 22, 1986 order confirming Manville's plan of reorganization (the "Confirmation Order", and together with the Insurance Settlement Order, the "1986 Orders").

4

the knowledge that Travelers gained in the course of its nearly three-decades-long insurance relationship with Manville.

While certain of the Direct Actions were based on state consumer statutes (the "Statutory Direct Actions") and others on common law theories (the "Common Law Direct Actions"), all were predicated on the same underlying conduct: that Travelers acquired knowledge about the dangers of asbestos from claims in the 1950s, recognized the potential for future escalation of asbestos litigation and began to influence Manville's purported failure to disclose knowledge about asbestos hazards.

In 2002, for cause shown, this Court issued a temporary restraining order prohibiting further prosecution of the Direct Actions. Following a hearing, this Court referred the Parties to mediation and, on August 1, 2002, appointed the Honorable Mario M. Cuomo, former Governor of New York, to serve as mediator (the "Mediator").

Over the next several months, under the auspices of the Mediator, the Parties executed settlement agreements resolving claims brought in the Statutory Direct Actions (the "Statutory Direct Action Settlement"), the Common Law Direct Actions (the "Common Law Direct Action Settlement"), and the Hawaii Direct Actions[6] (the "Hawaii Direct Action Settlement") (collectively, the "Settlements" or the "Settlement Agreements").

B.  The Settlements

The mechanics of each of the Settlements are the same: Travelers will make the agreed-upon settlement payments into a fund created to pay Direct Action claims brought by eligible asbestos personal injury and wrongful death claimants. Travelers will make an additional payment to cover the costs, subject to specified caps, associated with the formation and

---

[6] The Hawaii Direct Actions are predicated on Hawaii consumer statutes, and are a subset of the Statutory Direct Actions.

administration of each fund. To gain access to the appropriate fund, a Direct Action claimant must sign and deliver to Travelers a general release (the "General Release"), attached as Exhibit B to each of the Settlements, stating that Travelers is released from further liability "separate and apart from Travelers' protection under the 1986 Orders." *Bailey*, 129 S. Ct. at 2200.

Pursuant to the Settlements, Travelers' payment obligations are contingent upon the satisfaction of three conditions precedent. These conditions, stated in general terms, are as follows: (a) entry of an order by this Court that becomes a "Final Order"[7] clarifying that the Direct Actions were, and had always been, barred by this Court's injunction contained in the 1986 Orders (the "Disputed Condition Precedent"); (b) entry of an order, that becomes a "Final Order" approving the proposed Settlements; and (c) the execution and delivery into escrow of a specified number of General Releases, within sixty days of entry of this Court's order approving the Settlements. None of the Parties disputes that conditions (b) and (c) have been satisfied. Indeed, over a hundred thousand General Releases have been delivered and escrowed. *See* Common Law Motion at p. 5; Bronson Decl., Ex. 4.

In late spring of 2004, the Parties filed separate motions seeking this Court's approval of the Settlements. Thirteen objections were filed, either by insurance companies or various asbestos claimants separately referred to as the Asbestos Personal Injury Plaintiffs and the Cascino Asbestos Claimants[8] (collectively, with the objecting insurance companies, the "Objecting Plaintiffs").

---

[7] The Settlements define "Final Order" as "an order as to which the time to appeal, petition for certiorari, motion for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceeding for reargument or rehearing shall be pending or as to which any right to appeal, petition for certiorari or motion for reargument or rehearing shall have been waived in writing by the Entity possessing such right or in the event of an appeal, writ of certiorari or motion for reargument or rehearing has been sought, such order shall have been affirmed by the highest court to which such order was appealed or certiorari has been denied and the time to take any further appeal or petition for certiorari shall have expired." Bronson Decl., Ex 1, 1(j); Ex. 2, 1(g); Ex. 3, 1(j).

[8] The parties comprising the Asbestos Personal Injury Plaintiffs and the Cascino Asbestos Claimants were discussed by the Second Circuit in *In re Johns-Manville Corp.*, 517 F.3d 52, 55 nn.1-2 (2d Cir. 2008).

6

One of the objectors was Chubb Indemnity Insurance Company ("Chubb"), a co-defendant with Travelers in certain Common Law Direct Actions, who stood to be enjoined from bringing potential contribution and indemnity claims against Travelers. To preserve its ability to bring such claims against Travelers, Chubb joined the Objecting Plaintiffs in arguing that this Court lacked subject matter jurisdiction to enjoin non-derivative claims against Travelers, a third party non-debtor in Manville's bankruptcy proceedings. Chubb additionally (and independently) objected on due process grounds, contending that this Court lacked authority to enjoin it because despite being a major informed institutional insurer that engaged in the mammoth asbestos litigation, Chubb did not receive sufficiently adequate constitutional notice of the 1986 Orders.

C. The 2004 Clarifying Order

Following a full and contested evidentiary hearing on July 6, 2004, and upon a thorough review of the entire record, this Court granted the Parties' motions by entering a single order approving all three Settlements, and clarifying that the 1986 Orders barred pending Direct Actions and "[t]he commencement or prosecution of all actions and proceedings against Travelers that directly or indirectly are based upon, arise out of or relate to Travelers['] insurance relationship with Manville or Travelers['] knowledge or alleged knowledge concerning the hazards of asbestos," including claims for contribution or indemnification. Order Approving Settlement of the Statutory, Hawaii and Common Law Direct Actions and Clarifying Confirmation Order, Including Insurance Settlement Order and Channeling Injunction, dated Aug. 17, 2004, at ¶ 7 (Dkt. No. 3751) [hereinafter, the "2004 Clarifying Order"].

That same day, this Court separately issued findings of fact and conclusions of law detailing the basis for the 2004 Clarifying Order. *See generally* Findings of Fact and

Conclusions of Law Regarding Travelers Motions For Approval of Certain Settlement Agreements and For Entry of a Clarifying Order, dated Aug. 17, 2004 (Dkt. No. 3750).

## II. Procedural History

On appeal, the District Court affirmed the 2004 Clarifying Order in all material respects, except with regard to the "gate-keeping" provision.[9] *In re Johns-Manville Corp.* ("*Manville I*"), 340 B.R. 49 (S.D.N.Y. 2006). The District Court relied largely on the Second Circuit's prior decision in *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89 (2d Cir. 1988) to reject the various challenges brought by the Objecting Plaintiffs. Notably, the District Court found that the Second Circuit had already considered and rejected an argument similar to Chubb's due process challenge in *MacArthur* when it ruled that all "interested parties were provided with notice and a hearing before the settlements were approved by the Bankruptcy Court. The notice of proposed settlements issued by the Bankruptcy Court met the requirements of due process." *Manville I*, 340 B.R. at 68 (quoting *MacArthur*, 837 F.2d at 94).

In 2008, however, the Second Circuit reversed *Manville I*, holding that the District Court lacked subject matter jurisdiction to enjoin claims against Travelers "that were predicated, as a matter of state law, on Travelers' own alleged misconduct and were unrelated to Manville's insurance policy proceeds and the *res* of the Manville estate." *In re Johns-Manville Corp.* ("*Manville II*"), 517 F.3d 52, 68 (2d Cir. 2008). Such claims, according to the Second Circuit, could not have been barred by the 1986 Orders because the Bankruptcy Court had neither the jurisdiction nor the authority to enter a confirmation order that extended beyond the "res" of the debtors' estates. *Id.* The Second Circuit arrived at this conclusion without reaching Chubb's due

---

[9] The District Court ruled that this Court lacked jurisdiction to enter a "gate-keeping" provision, which required future asbestos-related claimants against Travelers first to establish before the Bankruptcy Court that their actions neither arose from Travelers' relationship with Manville nor violated the 1986 Orders. *Manville I*, 340 B.R. at 66-67.

process arguments. *Id.* at 60 n.17 ("Because we decide this case on other grounds, we do not specifically address Chubb's claims.").

Less than a year later, the United States Supreme Court granted certiorari and reversed *Manville II*. *Bailey*, 129 S. Ct. at 2198. Finding that the Second Circuit erred in revisiting this Court's subject matter jurisdiction of the 1986 Orders, the Supreme Court expressly held that "the 1986 Orders became final on direct review over two decades ago" and "whether the Bankruptcy Court had jurisdiction and authority to enter the injunction in 1986 was not properly before the Court of Appeals in 2008 and is not properly before us." *Bailey*, 129 S. Ct. at 2203. The Supreme Court explained that the issue, instead, was whether the Bankruptcy Court had properly interpreted the *scope* of the 1986 Orders in its 2004 Clarifying Order. *Id.* at 2204 (emphasis added). Finding that this Court had, the Supreme Court declared that "the only question left is whether the Bankruptcy Court had subject-matter jurisdiction to enter the [2004 Clarifying Order]. The answer here is easy: as the Second Circuit recognized . . . the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders." *Id.* at 2205 (citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 239 (1934)).

The Supreme Court in *Bailey* refrained from determining whether any particular party was bound by the 1986 Orders. *Id*. at 2207 ("We have assumed that respondents are bound, but the Court of Appeals did not consider this question."). Because Chubb preserved its due process objection on appeal but since the Second Circuit never reached it in *Manville II*, the Supreme Court remanded for the Second Circuit to address whether due process "absolves" Chubb from following the 1986 Orders, "whatever their scope." *Id.*

On March 22, 2010, the Second Circuit affirmed the District Court's March 28, 2006 order as to the Objecting Plaintiffs, but reversed it as to Chubb, finding that Chubb did not

9

receive constitutionally adequate notice of the 1986 Orders, and thus "it would offend the Due Process Clause to enforce the 1986 Orders against . . . Chubb." *Manville III*, 600 F.3d at 147. Again, as in *Manville II*, the Second Circuit declined "to determine the prospective status of [the Settlements] or to resolve arguments relating to technical objections and [the Settlements]' overall fairness," and left "it to the parties, with the aid of the bankruptcy court, to determine the status of their settlements." *Id.* at 158-59 (quoting *Manville II*, 517 F.3d at 68 n.26).

On August 18, 2010, Travelers filed a petition for a writ of certiorari and a writ of mandamus (collectively, the "Petitions") before the United States Supreme Court, both of which were recently denied on November 29, 2010. *Travelers Indem. Co. v. Chubb Indem. Co.*, 562 U.S.____ (2010) (No. 10-244).

On September 2, and on September 3, 2010, the Statutory and Hawaii Direct Action Settlement Counsel and the Common Law Settlement Counsel, respectively, filed their Motions requesting that this Court compel Travelers to pay the settlement proceeds. On September 30, 2010, Travelers filed its opposition brief ("Travelers Opp. Br.") (Dkt. No. 3936) requesting that this Court deny the Motions on the grounds that pursuant to the terms of the Settlements, Travelers' payment obligations are not due. After accepting supplemental briefing from the Parties, this Court conducted oral argument on October 21, 2010. At that hearing, Settlement Counsel expressly asked this Court to follow the Second Circuit's directive and aid them in determining the status of the Settlements. Transcript of Oct. 21, 2010 Hearing at p. 40: 17-21 (Dkt. No. 3953).

## DISCUSSION

The instant Motions before this Court request the enforcement of Settlements that were approved by this Court in the 2004 Clarifying Order. As a threshold matter, this Court has

jurisdiction to enforce these Settlements pursuant to 28 U.S.C. §§ 1334, 157, 11 U.S.C. §§ 105, 1141 and/or 11 U.S.C. § 1142, as well as pursuant to the terms of the Settlements, which each provide that "[t]he United States Bankruptcy Court for the Southern District of New York shall have continuing and exclusive jurisdiction over this Settlement Agreement and the Parties in respect of their relations hereunder."  Bronson Decl., Ex. 1, ¶ 18; Ex. 2, ¶ 17; Ex. 3, ¶ 18. Additionally, in light of the Supreme Court's ruling in *Bailey* that this Court had subject matter jurisdiction to enter the 2004 Clarifying Order, expressly providing in paragraph 10 that "this Court retains jurisdiction to enforce this Order and to determine any and all disputes arising under this Order," this Court finds that it has ample jurisdiction and authority not only to aid the Parties in determining the status of the Settlements, but also to determine what is required by law and equity to make the Parties whole.

To do so, this Court must first identify that which is preventing the Parties from determining the status of the Settlements on their own.  The Parties do not dispute that the [Settlements] "were the product of good-faith, arms-length negotiations, are complete, clear and unambiguous on their face and must be enforced according to the plain meaning of their terms." Travelers Opp. Br. at p. 1; *see* Statutory/Hawaii Motion at p. 14; Common Law Reply Br. (Dkt. No. 3944) at pp. 1-2.  They do, however, dispute whether, pursuant to the terms of the Settlement, Travelers' payment obligations were irreversibly triggered by the Supreme Court's decision in *Bailey* or terminated by the Second Circuit in *Manville III.*

At the heart of their dispute is whether the Disputed Condition Precedent has been satisfied, namely whether the 2004 Clarifying Order clarifies that the Direct Action claims were, and always have been, barred by this Court's 1986 Orders, and that the 2004 Clarifying Order became a "Final Order."  According to Settlement Counsel, the 2004 Clarifying Order, affirmed

11

by the Supreme Court in *Bailey*, completely satisfies the Disputed Condition Precedent. Travelers, however, argues that the Second Circuit's ruling in *Manville III* that the 1986 Orders are "jurisdictionally void" as to Chubb is a "material failure" of the Disputed Condition Precedent, and consequently releases Travelers from its payment obligations. Travelers Opp. Br. at p. 2.[10]

All of the Parties agree that the terms of the Settlements clearly resolve this dispute, and request that this Court follow the general principles of contract interpretation[11] that hold that "where the intention of the parties is clearly and unambiguously set forth, effect must be given to the intent as indicated by the language used." Statutory/Hawaii Motion at p. 14 (quoting *Wind v. Eli Lilly & Co.,* 210 A.D.2d 220, 220-21 (N.Y. App. Div. 1994); *see* Travelers Opp. Br. at p. 11 (quoting *Greenfield v. Philles Records, Inc.,* 780 N.E.2d 166, 170-71 (N.Y. 2002) ("The fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent."). This Court concurs with the Parties, and will enforce these Settlements according to their plain meaning.

**The Disputed Condition Precedent Has Been Satisfied Such that Travelers is Obligated to Fulfill Its Payment Obligations Under the Settlement Agreements**

To determine whether the Disputed Condition Precedent has been satisfied, this Court begins its inquiry with the plain language of the Disputed Condition Precedent. Under both the Statutory Direct Action Settlement and the Hawaii Direct Action Settlement, the Disputed Condition Precedent is: "Entry of . . . a Clarifying Order containing prohibitions against Claims *at least as broad* as those contained in Exhibit A, which order[] shall have become a Final

---

[10] Travelers also argues that the 2004 Clarifying Order is not yet a "Final Order" because the Petitions filed by Travelers are currently pending before the Supreme Court. Travelers Opp. Br. at p. 16. Yet, as the Supreme Court recently denied both of Travelers' Petitions, this argument is now moot. *See Travelers Indem. Co. v. Chubb Indem. Co.*, 562 U.S.____ (2010) (No. 10-244).

[11] The Settlements provide that they "shall be governed by and construed in accordance with the laws of the State of New York." Bronson Decl., Ex 1, ¶ 18; Ex. 2, ¶ 17; Ex. 3, ¶ 18.

12

Order(s)." Bronson Decl., Ex. 1, ¶ 2(a); Ex. 2, ¶ 2(b) (emphasis added).  The Disputed Condition Precedent is defined in substantially the same way under the Common Law Direct Action Settlement as: "Entry of an order or orders of the Bankruptcy Court, issued pursuant to the [1986 Orders], and/or Sections 105(a), 524(g), 1141 and 1142 of the Bankruptcy Code and the Court's inherent powers, *substantially in the form* attached hereto as Exhibit A . . . which order shall have become a Final Order."[12]  Bronson Decl., Ex. 3, ¶ 2(a) (emphasis added).

---

[12] The exact injunctive language contained in Exhibit A to the Hawaii and Statutory Direct Action Settlements states:

> The commencement or prosecution of all claims, demands, actions or proceedings against Travelers of any kind or nature whatsoever under the statutes, laws or regulations of [11 specified states] or arising from or relating to any acts or omissions of Travelers in (a) the handling, defense, trial, appeal or settlement or participation in the handling, defense, trial, appeal or settlement of any asbestos-related bodily injury claim, (b) disclosing, failing to disclose, suppressing, misleading, conspiring with any entity to disclose or fail to disclose, suppress or mislead or acting in concert with any entity to disclose or fail to disclose or suppress or mislead any facts, information, knowledge or beliefs about asbestos or its hazardous properties in connection with the handling, defense, settlement or trial or participation in the handling, defense, settlement or trial of any asbestos-related bodily injury claim, or (c) asbestos-related claims that allege unfair competition, unfair or deceptive claims handling or trade practices, lack of good faith and fair dealing, statutory-based claims for "bad faith", actual or constructive fraud, actual or constructive breach of fiduciary duty involving, in any way, asbestos; and any claims for contribution or indemnity relating in any way to the foregoing (a) through (c), are covered by the Confirmation Order and permanently enjoined as against Travelers, which were released therefrom under the Confirmation Order.

Bronson Decl., Ex. 1, Ex. A, at ¶ 3.

Varying only slightly, the exact injunctive language contained in Exhibit A to the Common Law Direct Action Settlement states:

> The commencement or prosecution of all actions and proceedings against Travelers that directly or indirectly are based upon, arise out of or relate to Travelers insurance relationship with Manville or Travelers knowledge or alleged knowledge concerning the hazards of asbestos, including but not limited to, any and all claims or demands relating to asbestos that now or in the future allege unfair competition, unfair or deceptive claims handling or trade practices, bad faith, failure to warn, breach of any duty to disclose information, negligent undertaking, negligent or intentional misrepresentation, negligent inspection or any theory or cause of action similar to the foregoing, under any statute or common law, and any claims for contribution or indemnity relating in any way to the foregoing, are permanently enjoined as against Travelers pursuant to the Confirmation Order.

Bronson Decl., Ex. 3, Ex. A, ¶ 2.

13

The 2004 Clarifying Order provides that for which the Parties bargained, both according to its plain terms and its content. <u>First</u>, the injunctive language specified in the proposed orders attached as Exhibit A to each of the Settlement Agreements was adopted, verbatim, in paragraphs 6 and 7 of the 2004 Clarifying Order. Indeed, even Travelers admits that the 2004 Clarifying Order, at least facially, "contained the broad injunctive language contained in the proposed orders attached to each of the Settlement Agreements." Travelers Opp. Br. at p. 8. <u>Second</u>, in upholding this Court's entry of the 2004 Clarifying Order, the Supreme Court expressly found that "[t]he Bankruptcy Court correctly understood that the Direct Actions fall within the scope of the 1986 Orders." *Bailey*, 129 S. Ct. at 2203. As little remains to be addressed as to whether the 2004 Clarifying Order contains the requisite broad injunctive language bargained for by the Parties in full satisfaction of the terms of the Settlements, this appears to be the end of the inquiry.

Nevertheless, Travelers maintains that it is "absurd to argue" that the Settlements remain intact in the wake of the Second Circuit's *Manville III* decision. Travelers Supp. Br. (Dkt. No. 3949) at p. 4. Given the Second Circuit's holding that the 2004 Clarifying Order is "jurisdictionally void" as to Chubb, Travelers asserts that the 2004 Clarifying Order, consequently, does not "contain[] prohibitions against claims 'at least as broad' as those agreed to by the Parties as condition precedent to any payment obligation." *Id.* In effect, Travelers is arguing that because the 2004 Clarifying Order does not enjoin all parties, including those who failed to receive sufficient notice such as Chubb, Travelers has not achieved "*complete and total peace* from Direct Action Claims" and is therefore released from its payment obligations. Travelers Opp. Br. at p. 13 (emphasis added).

14

Travelers' position cannot be squared with fundamental principles of contract law that require this Court to adopt "a construction [of an agreement] . . . which renders the contract valid." *Civil Serv. Employees Ass'n, Inc. v. State Univ. of Stony Brook*, 368 N.Y.S.2d 927, 930 (Sup 1974). Travelers' reading of the Settlements would require this Court to enter an order clarifying that all Direct Action claims were enjoined by the 1986 Orders, regardless of whether the parties bringing these claims received constitutionally sufficient notice of the 1986 Orders. However, a reading of "[a]n agreement which violates a provision of the constitution is illegal and void" and "the law will not presume that the parties intended to make an illegal contract." *Id.*; *Venizelos, S.A. v. Chase Manhattan Bank*, 425 F.2d 461, 465 (2d Cir. 1970) ("A construction that will sustain an instrument will be preferred to one that will defeat it; if an agreement is fairly capable of a construction that will make it valid and enforceable, that construction will be given it.") (internal citations omitted); *Friedman v. State*, 242 A.D. 314, 317 (N.Y. App. Div. 1934) ("The law does not assume an intention to violate the law, nor will an agreement be adjudged to be illegal, where it is capable of a construction which will uphold it, and make it valid."); *see also* Restatement (Second) of Contracts § 203(a) (1981) ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect"). The only legally permissible reading, therefore, is that the scope of the 2004 Clarifying Order is constrained by necessity to enjoin only claims of those parties originally bound by the 1986 Orders. Accordingly, this Court finds that *Manville III* does not disturb the Settlements.[13]

---

[13] Moreover, it is noteworthy that with respect to contribution and indemnity claims by Chubb related to Common Law Direct Actions, Travelers itself has admitted that the risk of such claims is highly remote. *See e.g.*, Bronson Decl., Ex. 7 at p. 3 ("Not one of the insurers has ever even asserted a claim for 'contribution' or 'indemnity' against Travelers."); Bronson Decl., Ex. 8 at p. 20 n.8 ("The hypothetical contribution or indemnity claim that Chubb complains are being 'confiscated' do not presently exist and could only arise if some future Direct Action asbestos plaintiff were able to collect from Chubb what supposedly should (were it not for the 1986 Confirmation Order) be

Given that the 2004 Clarifying Order contains the broad injunctive language for which the Parties bargained, the only remaining question for this Court to determine is whether the 2004 Clarifying Order is a "Final Order" as defined under the Settlement Agreements. Under the terms of the Settlements, an order is a "Final Order" if "such order shall have been affirmed by the highest court to which such order was appealed or certiorari has been denied and the time to take any further appeal or petition for certiorari shall have expired." Bronson Decl., Ex. 1, ¶ 1(j); Ex. 2, ¶ 1(g); Ex. 3, ¶ 1(j). This Court finds that the 2004 Clarifying Order became a "Final Order" after it was affirmed by the Supreme Court, the court of last resort, in *Bailey* on June 18, 2009.[14] Indeed, the only issue that was pending before the Supreme Court, whether Chubb was bound by the 1986 Orders on due process grounds, has no impact on whether the 2004 Clarifying Order is a Final Order. Thus, the 2004 Clarifying Order is a "Final Order" and the Disputed Condition Precedent has been completely satisfied as to all of the Parties.[15]

Accordingly, from a contractual standpoint, this Court concludes that Travelers received everything that it bargained for: an order clarifying that to the extent a Direct Action claim (including any related contribution or indemnity claim) was enjoined under the 1986 Confirmation Order, such claim was indeed enjoined, and such order has become a Final Order. Travelers' notion of "complete and total peace" is a subjective concept that no tribunal can ever guarantee. *See Bailey*, 129 S. Ct. at 2197 (noting that it is "black-letter law that an unambiguous

---

collectible from Travelers. Beyond the fact that *the existence of such a claim is entirely hypothetical*, the Bankruptcy Court has already provided a remedy to Chubb . . . .") (emphasis added).

[14] Travelers argues that Settlement Counsel breached the Settlement Agreements by failing to use their "best efforts" to support Travelers' Petitions to the Supreme Court. *See* Travelers Opp. Br. at pp. 26-27. Because Settlement Counsel's rights were fully adjudicated by the Supreme Court in *Bailey*, this Court finds that Travelers' argument is meritless.

[15] Statutory and Hawaii Settlement Counsel requested that to the extent this Court determines that the conditions precedent under the Common Law Direct Action Settlement have not been satisfied, this Court should enter a severance order. Statutory/Hawaii Motion at p. 19. As this Court has found that the Disputed Condition Precedent has occurred, this request is rendered moot.

16

private contract's terms must be enforced irrespective of the parties' subjective intent"). Therefore, the Disputed Condition Precedent has occurred, and the Settlements should be upheld in their entirety.

Further, from an equitable standpoint, given that the 2004 Clarifying Order became a "Final Order" after *Bailey* on June 18, 2009, and Travelers has yet to fulfill its payment obligations pursuant to the Settlements, this Court is concerned that Travelers is getting something for nothing. Indeed, this is in line with the "overriding general policy, as Mr. Justice Holmes put it, 'of preventing people from getting other people's property for nothing when they purport to be buying it.'" *Kelly v. Kosuga*, 358 U.S. 516, 520-21 (1959) (quoting *Cont'l Wall Paper Co. v. Louis Voight & Sons Co.*, 212 U.S. 227, 271 (1909). As a court of equity, this Court may exercise its equitable powers to ensure that substantial justice is achieved. *See Pepper v. Litton*, 308 U.S. 295, 304-05 (1939).

Here, even though Travelers received everything that it bargained for, Travelers is threatening to upend all of the Settlements, even after they have been affirmed in their entirety by the United States Supreme Court. Travelers, however, may not be released from its payment obligations in its attempt to utilize an argument that is not only contrary to the express provisions of the Settlement Agreements, but also contrary to constitutional due process considerations. The fact that the Second Circuit has held that Chubb "did not receive adequate notice of the 1986 Orders" and is therefore not bound by its terms does not affect the finality of the 2004 Clarifying Order. *Manville III*, 600 F.3d at 158. Therefore, just as the Supreme Court has barred parties from bringing suit against Travelers based on the plain language of the 1986 Orders, Travelers should likewise be bound by the plain language of the Settlements, and should be compelled to comply with its payment obligations. *See Strong v. Sheffield*, 144 N.Y. 392, 394-96 (1895)

17

(holding that one party's forbearance from bringing suit is a sufficient consideration for the promise of the other party). Travelers may not walk away with precisely the injunction it bargained for without paying the asbestos victims the compensation that they are duly entitled to pursuant to the Settlements.

Although not contemplated by the Settlements, this Court has been asked to determine whether it will award interest to the beneficiaries of the Settlements. Statutory and Hawaii Settlement Counsel maintain that "the beneficiaries of the Statutory and Hawaii Direct Action Settlements are entitled to interest on the settlement proceeds accruing since the Supreme Court's June 2009 Ruling." Statutory/Hawaii Motion at p. 20. They argue that Travelers has failed to fulfill its payment obligations and, under relevant New York law, the beneficiaries of the Statutory and Hawaii Direct Action Settlements are entitled to interest "upon a sum awarded because of a breach of performance of a contract," which shall be computed "from the earliest ascertainable date the cause of action existed." N.Y. C.P.L.R. § 5001(a), (b) (McKinney 2007). Travelers counters that "no interest can possibly be due as there is not a final Clarifying Order, no settlement payments are due, and there is no need for Travelers to take a position on the date of an alleged breach that has not occurred." Travelers Supp. Br. at p. 7 n.6. As the asbestos victims have been waiting a long time to receive their compensation, while in the process Travelers has been benefiting from the Supreme Court's mandate barring Direct Action claims against it, the Statutory and Hawaii Settlement Counsel's request may be what is required to make these victims whole. Accordingly, unless the Parties can consensually resolve the interest issue, this Court is ordering briefing on that subject forthwith.

## **CONCLUSION**

For the reasons set forth above, the Motions are hereby GRANTED in their entirety. In light of the foregoing, this Court hereby orders Travelers to immediately satisfy its payment obligations pursuant to the Settlement Agreements, which have been due and owing since June 18, 2009. In addition, the Parties are hereby directed to submit a briefing schedule to this Court within 21 days of issuance of this Memorandum Decision and Order regarding whether the beneficiaries of the Settlements are entitled to interest on the settlement proceeds and, if so, the amount due and owing. Alternatively, the Parties are granted 60 days from the issuance of this Memorandum Decision and Order to submit a consent order resolving the interest issue, with or without the aid of the Mediator.

**IT IS SO ORDERED**.

Dated: New York, New York          /s/ Burton R. Lifland
       December 16, 2010          United States Bankruptcy Judge