**FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————x
                                              :
*In re:*                                      :
                                              :
                                              :   Chapter 11
JOHNS-MANVILLE CORPORATION,                   :
*et al.*,                                     :
                                              :   Case No. 82-11656 (CGM)
                                              :
    *Debtors*                                 :
                                              :
———————————————————————x

## MEMORANDUM DECISION GRANTING THE MOTION OF MARSH USA TO ENFORCE THE CONFIRMATION ORDER

**A P P E A R A N C E S :**

WILLKIE FARR & GALLAGHER LLP
*Attorneys for Marsh USA, Inc.*
787 Seventh Avenue
New York, New York 10019
By:    Brian E. O'Connor, Esq.
       Emma J. James, Esq.

THE BOGDAN LAW FIRM
*Attorneys for Salvador Parra, Jr.*
4910 Wright Road
Suite 190
Stafford, Texas 77477
By:    Eric Bogdan, Esq.

STUTZMAN BROMBERG ESSERMAN & PLIFKA
*Attorneys for The Bogdan Law Firm, as Counsel for Salvador Parra, Jr.*
2323 Bryan Street
Suite 2200
Dallas, Texas 75201
By:    Sander L. Esserman, Esq.
       Peter D'Apice, Esq.
       Cliff I. Taylor, Esq.

SIMPSON THACHER & BARTLETT LLP
*Attorneys for The Travelers Indemnity Company and Travelers Casualty and Surety Company*
425 Lexington Avenue
New York, New York 10017
By:    Barry R. Ostrager, Esq.
       Myer O. Sigal, Jr., Esq.
       Andrew T. Frankel, Esq.

**The Honorable Cecelia G. Morris**[1]
**Chief United States Bankruptcy Judge**

Before the Court is the motion (the "Motion") of Marsh USA, Inc. ("Marsh")[2] to enforce

orders entered in connection with the chapter 11 cases of Johns-Manville Corporation and its

related entities (collectively, "Manville"). Marsh is one of several defendants in a lawsuit

brought by Salvador Parra, Jr. ("Parra"), who developed asbestosis and other conditions after he

was exposed to asbestos while working as an insulator during the 1960s and '70s. Parra filed suit

in 2009, claiming that Marsh had conspired with other asbestos producers, distributors, and

insurers to withhold information from the public regarding the dangers of asbestos inhalation. In

response, Marsh filed the Motion, arguing that it was relieved of any liability for such claims by

the release and channeling injunction contained in the order approving Manville's chapter 11

plan and an accompanying order approving settlement agreements between Manville and certain

of its insurers.

For the reasons set forth below, the Court agrees with Marsh that Parra's claims are

barred by the plain language of the applicable release and injunction. Accordingly, the Motion is

**GRANTED.**

## <u>Jurisdiction</u>

The United States District Court for the Southern District of New York has subject-

matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This Court exercises

---

[1] These chapter 11 cases were originally assigned to the Honorable Burton Lifland, who presided over them from the time they were filed in August 1982 until his death in January 2014.

[2] Marsh filed the Motion individually and as successor in interest to Marsh & McLennan, Inc.; Marsh USA, Inc., a Mississippi Corporation; Marsh USA, Inc., a Louisiana Corporation; Marsh USA, Inc., a Texas Corporation; Marsh USA Agency, Inc., a Texas Corporation; Marsh & McLennan of Delaware, Inc.; Marsh & McLennan of Dallas, Inc.; Houseman & Company, Inc.; J&H Marsh & McLennan, Inc.; J&H M&M ELC, Inc.; and Marsh USA Risk Services, Inc.

authority over the proceeding pursuant to 28 U.S.C. § 157 and the Amended Standing Order of

Reference signed by Chief District Judge Loretta Preska on January 31, 2012. This matter is a

core proceeding. *See In re Portrait Corp. of America, Inc.*, 406 B.R. 637, 641 (Bankr. S.D.N.Y.

2009) (postconfirmation dispute between nondebtors is a core proceeding where it involves a

request to "interpret and enforce" a bankruptcy court order).

**<u>Background</u>**

A.    **<u>The Manville Reorganization</u>**

Prior to its bankruptcy filing, Manville was a Fortune 500 company that operated a large

and diversified mining, manufacturing, and forest products business. Among other things, it was

the world's largest miner of raw asbestos and a major manufacturer of finished asbestos

products. In the 1960s and '70s, as scientific studies began to link exposure to asbestos fibers

with various respiratory conditions including certain lung cancers, Manville became the target of

a number of products liability lawsuits alleging personal injuries due to asbestos exposure. By

the early 1980s, Manville had been named as a defendant in more than 12,000 such suits brought

by more than 16,000 claimants, with new suits being filed at a rate of more than 400 every

month. At the same time, Manville was engaged in contentious coverage disputes with its

insurance carriers, which were disputing their obligation to defend and indemnify Manville

against asbestos claims.

Under the weight of its potential asbestos liabilities, Manville filed a voluntary petition

for relief under chapter 11 of the Bankruptcy Code on August 26, 1982. "From the outset of the

reorganization, all concerned recognized that the impetus for Manville's action was not a present

inability to meet debts but rather the anticipation of massive personal injury liability in the

future." *Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 639 (2d Cir.

1988) ("*Kane*"); *see also id.* (describing future asbestos liabilities as "the *raison d'être* of the Manville reorganization").

Recognizing that Manville's insurance policies were some of the estate's most valuable assets, the Bankruptcy Court entered an order extending the automatic stay under §§ 105 and 362 of the Bankruptcy Code to "any proceeding against Manville's insurers based on the alleged liability of Manville, its affiliates, officers, directors, or employees." *In re Johns-Manville Corp.*, 26 B.R. 420, 436 (Bankr. S.D.N.Y. 1983), *rev'd in part on other grounds sub nom.*, *Occidental Chem. Corp. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 41 B.R. 926 (S.D.N.Y. 1984). In doing so, the Court noted that prohibiting actions against the insurers from proceeding while Manville's reorganization was ongoing was necessary to "insure uniform treatment of all asbestos-related health claimants." *Id.*

Due to the long latency period associated with asbestos-related diseases, the Bankruptcy Court also appointed a legal representative for the interests of so-called "future asbestos claimants." *In re Johns-Manville Corp.*, 36 B.R. 743, 744 (Bankr. S.D.N.Y. 1984), *aff'd sub nom.*, *Robinson v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 52 B.R. 940 (S.D.N.Y. 1985); *see also Kane*, 843 F.2d at 644 ("The Bankruptcy Court appointed the Legal Representative specifically for the purpose of ensuring that the rights of the future claimants would be asserted where necessary."). In appointing the representative, the Bankruptcy Court stated:

> It is abundantly clear that the Manville reorganization will have to be accountable for future asbestos claimants whose competing interest must be safeguarded in order to leave a residue of assets sufficient to accommodate a meaningful resolution of the Manville asbestos-related health problem. The term "future asbestos claimants" is defined for these purposes to include all persons and entities who, on or before August 26, 1982, came into contact with asbestos or asbestos-containing products mined, fabricated, manufactured, supplied or sold by

> Manville and who have not yet filed claims against Manville for personal injuries
> or property damage.

*Johns-Manville*, 36 B.R. at 744-45.

In 1986, after years of negotiations among parties including Manville, its insurers, and the future claimants' representative, the parties reached a global resolution that culminated in the filing of Manville's Second Amended and Restated Plan of Reorganization (the "Plan"). The Plan was predicated on a series of settlement agreements between Manville and certain of its insurers, which had agreed to contribute $770 million in cash to a trust for the benefit of asbestos personal injury claimants. In exchange for those payments, "the insurers would be relieved of all obligations related to [their insurance of Manville] and the insurers would be protected from claims based on such obligations by injunctive orders of the Bankruptcy Court." *MacArthur Co. v. Johns-Manville (In re Johns-Manville Corp.)*, 837 F.2d 89, 90 (2d Cir. 1988) ("*MacArthur*"). Marsh, which was one of the settling insurers, contributed a total of $29.75 million to the trust in exchange for its injunction.

On December 18, 1986, the Bankruptcy Court entered an order approving the settlement agreements between Manville and the settling insurers (the "Insurance Settlement Order"). Four days later, on December 22, 1986, the Court entered an order confirming the Plan (the "Confirmation Order," together with the Insurance Settlement Order, the "1986 Orders"). *In re Johns-Manville Corp.*, 68 B.R. 618, 638 (Bankr. S.D.N.Y. 1986), *aff'd*, 78 B.R. 407 (S.D.N.Y. 1987). As contemplated by the Plan, the 1986 Orders channeled all present and future asbestos health claims to the trust and released Manville and its insurers from further liability for those claims. *See Kane*, 843 F.2d at 640 ("The Injunction provides that asbestos health claimants may proceed only against the Trust to satisfy their claims and may not sue Manville, its other operating entities, and certain other specified parties, including Manville's insurers."); *see also*

*Findley v. Trustees of the Manville Personal Injury Settlement Trust (In re Joint E. & S. Dist. Asbestos Litig.)*, 237 F. Supp. 2d 297, 303 (E.D.N.Y. & S.D.N.Y. 2002) ("An injunction required all claimants seeking compensation for existing and future asbestos health claims caused by exposure to Manville products to proceed solely against the Trust; Manville and its insurers were immunized.").

On direct appeal, the Second Circuit affirmed both the Insurance Settlement Order and the Confirmation Order. *See MacArthur*, 837 F.2d at 94 (affirming Insurance Settlement Order); *Kane*, 843 F.2d at 648-50 (affirming Confirmation Order). In doing so, the Circuit observed that the insurance settlement agreements were a "cornerstone" of the Plan and that the injunction protecting the settling insurers was "a critical part of the entire reorganization." *MacArthur*, 837 F.2d at 90; *see also id.* at 93 (noting that the injunctive provisions of the 1986 Orders "were necessary to effectuate the [Bankruptcy Court]'s channeling authority; that is, to make sure that claims to Manville's insurance proceeds were, in fact, channeled to the settlement fund and could not be asserted directly against the insurers").

In 1988, the 1986 Orders became final and nonappealable. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 148 (2009) ("*Bailey*") ("[T]he 1986 Orders became final on direct review over two decades ago . . . ."). At that point, the orders became *res judicata* as to all matters that were or could have been raised in the proceedings, "whether or not [they were] proper exercises of bankruptcy court jurisdiction and power." *Id.* at 152; *see also id.* at 153 ("So long as respondents or those in privity with them were parties to the Manville bankruptcy proceeding and were given a fair chance to challenge the Bankruptcy Court's subject-matter jurisdiction [to enjoin claims against the settling insurers], they cannot challenge it now by resisting enforcement of the 1986 Orders.").

B.    **Parra's Claims Against Marsh**

On February 10, 2010, Parra filed a first amended complaint (the "Complaint") against

Marsh and others in the Circuit Court of Jones County, Mississippi. According to the Complaint,

Parra was exposed to asbestos while working at as an insulator at various jobsites in Louisiana,

Mississippi, Oklahoma, and Texas during the late 1960s and early 1970s. All of the defendants

sued by Parra were producers, distributors, or insurers of asbestos products which, according to

Parra, "knew or should have known through industry and medical studies . . . of the health

hazards . . . inherent in the asbestos-containing products." Compl. ¶ 12. With respect to Marsh,

the Complaint alleges that it "aided and abetted and conspired with" others in order to conceal

those health hazards from the public. *Id.* ¶ 8(*l* ); *see also id.* ¶ 33 ("Marsh willfully suppressed

the truth as to the risks and dangers associated with the use of and exposure to . . . asbestos-

containing products . . . .").

Parra's primary claim against Marsh is set forth in Count Four of the Complaint, which

seeks to hold Marsh liable for its "negligent undertakings, conspiracy, aiding, and abetting

courses of conduct." *Id.* ¶ 34. Count Four contains a detailed recitation of facts spanning more

than seven pages outlining the nature and extent of Marsh's insurance relationship with

Manville. *See id.* ¶¶ 55-86. Among other things, Parra alleges that "Marsh had a relationship

with . . . Johns-Manville for over forty years," *id.* ¶ 53; that Marsh "functioned not only as a

broker but as Johns-Manville's insurance department," *id.* ¶ 62; and that Marsh's relationship

with Manville was "unique," *id.* ¶ 65. Parra also alleges that Marsh learned information about the

health hazards of asbestos exposure from its dealings with Manville. *See, e.g., id.* ¶ 76 ("No later

than 1949, [Marsh] was aware of asbestos injury claims being filed against Johns-Manville."); *id.*

¶ 77 ("Marsh studied the workers at the Johns-Manville plant . . . and concluded that up to 15 employees a year would be stricken with asbestosis.").

On August 6, 2010, Marsh filed the Motion, which is supported by the Declaration of Brian E. O'Connor (the "O'Connor Declaration"). *See* Motion, ECF No. 3915; O'Connor Decl., ECF No. 3916. According to the Motion, the claims asserted by Parra in the Complaint fall "squarely within" the injunction contained in the 1986 Orders. Motion 2; *see also id.* at 13 ("It can[not] . . . be contended . . . that the [1986 Orders] are not sufficiently broad to enjoin the state-law claims asserted by [Parra] in the [Complaint]."). The Motion argues:

> It is apparent from the face of the [Complaint] that whatever theory of liability [Parra] asserts . . . his allegations fall within the scope of the 1986 Orders. Whether couched in terms of a duty to speak out about the ills associated with asbestos, a duty not to defend Manville to the detriment of [Parra], or a duty to warn [Parra] of the perils associated with Manville's asbestos, these state-law actions assert claims or duties against Marsh that are based upon, arising out of, or relating to the services performed by Marsh for Manville. Accordingly, they are barred by the 1986 Orders.

*Id.* at 14-15 (internal quotation marks omitted). The Motion requests that the Court enter an order enjoining Parra from continuing to prosecute his claims.

On August 23, 2010, Parra filed his Response to Marsh USA, Inc.'s Motion for an Order Enforcing the Confirmation Order (the "Response"), which is supported by the Declaration of Eric Bogdan (the "Bogdan Declaration"). *See* Resp., ECF No. 3919; Bogdan Decl., ECF No. 3920. The Response raises four principal arguments: (1) the Motion is procedurally defective because Marsh failed to file an adversary proceeding, Resp. 17-18; (2) the Motion is premature because Parra should be allowed to conduct discovery in preparation for an evidentiary hearing, *id.* at 18-21; (3) on the merits, Parra's claims against Marsh are not subject to the 1986 Orders, *id.* at 21-25; and (4) even if his claims are subject to the 1986 Orders, Parra did not receive constitutionally sufficient notice of the proceedings because the future claimants' representative

did not represent him "with respect to [his] claims against [the settling insurers] for such [insurers]' independent misconduct," *id.* at 26.

On August 30, 2010, Marsh filed its Reply Memorandum of Law in Support of Motion for an Order Enforcing the Confirmation Order and Related Orders (the "Reply"), which is supported by the Declaration of Brian E. O'Connor (the "First Supplemental O'Connor Declaration"). *See* Reply, ECF No. 3927; First Supp'l O'Connor Decl., ECF No. 3928. In response to Parra's arguments, Marsh contends that: (1) it is not required to file an adversary proceeding in order to enforce a preexisting injunction, Reply 2-3; (2) discovery is not warranted because the application of the 1986 Orders to Parra's claims can be determined from the face of the Complaint, *id.* at 5; (3) the affirmative allegations in the Complaint establish that Parra's claims are subject to the 1986 Orders, *id.* at 5-7; and (4) Parra received constitutionally sufficient notice of the 1986 Orders through the future claimants' representative, since the representative "had adequate notice that Marsh was entering into a settlement that would . . . enjoin claims related to its relationship with Manville," *id.* at 7-8.

On November 12, 2010, Travelers Indemnity Company and Travelers Casualty and Surety Company (collectively, "Travelers"), which had participated in the insurance settlements and had been Manville's primary insurer prior to its bankruptcy filing, filed its Submission Concerning the Motion for an Order Enforcing the Confirmation Order and Related Orders (the "Travelers Memorandum"). *See* Travelers Mem., ECF No. 3956. Travelers takes no position on whether Parra's claims are barred by the 1986 Orders; instead, it seeks to be heard solely to oppose Parra's "remarkable suggestion" that he is not bound by the 1986 Orders on due process grounds. Travelers Mem. 2. Travelers argues:

> [A]t every step of the process, the [future claimants' representative] was directly
> involved in the negotiation and approval of the settlements and of the provisions

that were ultimately incorporated into the confirmation order. The Court's order approving the [representative] in no way limited [his] role to preclude [him] from representing the rights of future claimants to assert Manville-related claims against the settling insurers. Indeed, such a limitation would have been completely nonsensical, as it would have precluded the ability of the Court to confirm the Manville plan at all or to fund the Trust that existed for the very *benefit* of future claimants.

*Id.* at 7-8. Travelers asks the Court to reject Parra's argument that "the confirmation order, to the extent it enjoined claims against [settling insurers], is not binding on asbestos claimants represented by the [future claimants' representative]." *Id.* at 9-10.

For the first several years after it was filed, the Court held the Motion in abeyance pending the resolution of litigation concerning a similar motion to enforce the 1986 Orders that had been filed by Travelers. After a status conference in March 2014, the Court ordered briefing on the question of whether it should allow Parra to proceed with discovery in the interim. On March 20, 2014, Parra filed his Brief on the Need for Discovery Before this Court May Decide Marsh USA, Inc.'s Motion for an Order Enforcing the Confirmation Order and Related Orders (the "Parra Supplemental Memorandum"). *See* Parra Supp'l Mem., ECF No. 4085. The same day, Marsh filed its Opposition to Plaintiff's Request to Take Discovery (the "Marsh Supplemental Memorandum"), which is supported by the Declaration of Brian E. O'Connor (the "Second Supplemental O'Connor Declaration"). *See* Marsh Supp'l Mem., ECF No. 4087; Second Supp'l O'Connor Decl., ECF No. 4088.

After a further hearing on May 8, 2014, the Court determined that it would continue to hold the Motion in abeyance and stay any discovery until the litigation concerning Travelers' motion to enforce had been resolved. *See* May 8, 2014 Hr'g Tr. 15:10-21 ("[The Court is] going to wait for the Second Circuit to issue an opinion on the *Travelers* litigation before it proceeds with this motion."); *id.* at 16:8-11 ("[The Court is] going to deny discovery at this juncture while

[it] reserve[s] the right to direct discovery should the Court decide that it's necessary after the
Second Circuit rules on *Travelers*.").

### C.    <u>Travelers' Efforts to Enforce the 1986 Orders</u>

Both before and after Manville's bankruptcy filing, Travelers had been the target of a
number of state court direct actions in which asbestos personal injury claimants sought to recover
directly from Travelers rather than indirectly through Manville. These direct actions fell into two
broad categories: (1) "common law direct actions," in which plaintiffs sought to hold Travelers
liable for failing to disclose information regarding the hazards of asbestos exposure; and
(2) "statutory direct actions," in which plaintiffs sought to hold Travelers liable for violating
state laws regarding unfair insurance practices.[3]

On June 19, 2002, Travelers moved in the Bankruptcy Court for an injunction enforcing
the 1986 Orders and prohibiting the continued prosecution of the direct actions. On August 1,
2002, the Court referred the matter to mediation before Mario Cuomo, former Governor of the
State of New York. By 2004, the mediation had resulted in the execution of a series of settlement
agreements under which Travelers agreed to pay $445 million into various settlement funds for
the benefit of the direct action plaintiffs in exchange for the dismissal of the actions. Travelers'
obligations under each of the settlement agreements was expressly conditioned upon the entry by
the Bankruptcy Court of an order "clarifying" that, notwithstanding the settlements, the direct
actions against Travelers were and had always been barred by the injunctive provisions of the
1986 Orders.

---

[3] Many of these actions were not "true" direct actions because they sought to hold Travelers liable "for independent
wrongdoing rather than for a legal wrong by Manville." *Bailey*, 557 U.S. at 143 n.2.

Numerous parties objected to approval of the settlement agreements and the issuance of the proposed clarifying order. Following an evidentiary hearing, the Bankruptcy Court entered findings of fact and conclusions of law overruling the objections, approving the agreements, and clarifying that the 1986 Orders did in fact enjoin direct actions against Travelers that were in any way related to its insurance relationship with Manville. *See In re Johns-Manville Corp.*, 2004 WL 1876046 (Bankr. S.D.N.Y. Aug. 17, 2004). In doing so, the Court stated that the intent of the 1986 Orders was to "provide the broadest possible protection" to Travelers and to enjoin the prosecution of "100% of everything Manville-related." *Id.* at *30-31. The Court therefore clarified that direct action claims against Travelers "are – and have always been – permanently barred" by the 1986 Orders. *Id.* at *30.

On August 17, 2004, the Court entered the Order Approving Settlement of the Statutory, Hawaii, and Common Law Direct Actions and Clarifying Confirmation Order, Including Insurance Settlement Order and Channeling Injunction (the "Clarifying Order"). *See* Clarifying Order, ECF No. 3751. After several layers of appeal, the Clarifying Order reached the United States Supreme Court in *Bailey*. In a 7-2 opinion, the Supreme Court affirmed, agreeing with the Bankruptcy Court that the unambiguous language of the 1986 Orders had always barred direct actions against Travelers and rejecting the argument that the Clarifying Order represented "revisionism" by the Bankruptcy Court rather than interpretation of its prior orders. *Bailey*, 557 U.S. at 149; *see also id.* at 147-48 ("The Bankruptcy Court correctly understood that the Direct Actions fall within the scope of the 1986 Orders, as suits of this sort always have."). However, the court refrained from deciding whether the objecting parties had received constitutionally sufficient notice of the 1986 proceedings and, accordingly, "whether any particular respondent [was] bound by the 1986 Orders." *Id.* at 155.

On remand, the Second Circuit held that at least one objecting party, Chubb Indemnity

Insurance Company ("Chubb"), was not bound by the 1986 Orders because it had not received

constitutionally sufficient notice of the proceedings. *See Travelers Cas. & Surety Co. v. Chubb*

*Indem. Ins. Co. (In re Johns-Manville Corp.)*, 600 F.3d 135, 157-58 (2d Cir. 2010) ("*Chubb*").

The Circuit expressly declined to reach similar due process arguments made by certain asbestos

claimants, reasoning that those claimants had forfeited their due process arguments by failing to

properly preserve them for appeal. *Id.* at 147.

Following additional litigation over the satisfaction of conditions precedent to the direct

action settlement agreements, the Bankruptcy Court ordered Travelers to "immediately fulfill its

payment obligations" under the agreements. *In re Johns-Manville Corp.*, 440 B.R. 604, 607

(Bankr. S.D.N.Y. 2010). On appeal, the Second Circuit agreed with the Bankruptcy Court that

*Bailey*'s affirmance of the Clarifying Order had triggered Travelers' obligation to make

payments under the agreements. *See Common Law Settlement Counsel v. Travelers Indem. Co.*

*(In re Johns-Manville Corp.)*, 759 F.3d 206, 214-17 (2d Cir. 2014) ("*Common Law Settlement*

*Counsel*"). In doing so, the Circuit brought an end to the "endless and unavailing" cycle of

litigation surrounding the direct action settlements and paved the way for this Court to rule on

the Motion. *Johns-Manville*, 440 B.R. at 606 n.2 (describing litigation over the direct action

settlements as a "Sisyphean cycle . . . that is 'endless and unavailing'" (quoting Random House

Dictionary of the English Language 1333 (1970))).

Following the decision in *Common Law Settlement Counsel*, this Court held a hearing on

February 26, 2015, after which the Motion was taken under advisement.

## Discussion

### I.     Marsh Is Entitled to Proceed by Motion

The Court begins its analysis with Parra's argument that the relief requested by Marsh

may only be obtained by filing an adversary proceeding under Federal Rule of Bankruptcy

Procedure 7001(7). Parra argues the Motion is "in effect seeking a new injunction" beyond that

contained in the 1986 Orders. Parra Supp'l Mem. 9. If Parra's characterization of the Motion is

correct, Marsh would be required to file an adversary proceeding in order to obtain the relief that

it seeks. *See* Fed. R. Bankr. P. 7001(7) ("The following are adversary proceedings: . . . a

proceeding to obtain an injunction or other equitable relief . . . ."); *see also In re St. Vincents

Catholic Med. Ctrs. of N.Y.*, 445 B.R. 264, 270 (Bankr. S.D.N.Y. 2011) ("A proceeding to obtain

an injunction . . . must be brought as an adversary proceeding pursuant to Federal Rule of

Bankruptcy Procedure 7001(7) . . . .").

In response, Marsh argues that it is not seeking a new injunction; rather, it "seeks only

to enforce the release and injunction provisions of the [1986 Orders]." Reply 3. If Marsh's

characterization of the Motion is correct, an adversary proceeding is not required. *See Solow v.

Kalikow (In re Kalikow)*, 602 F.3d 82, 93 (2d Cir. 2010) (agreeing that "the enforcement of a

preexisting injunction" may be accomplished as a contested matter rather than through an

adversary proceeding); *see also In re Ritchie Risk-Linked Strategies Trading (Ireland), Ltd.*, 471

B.R. 331, 337 (Bankr. S.D.N.Y. 2012) ("[T]he Motion need not have been brought as an

adversary proceeding since U.S. Bank seeks only the enforcement of an injunction already in

effect . . . , not the issuance of a new injunction."); *In re Texaco, Inc.*, 182 B.R. 937, 945 (Bankr.

S.D.N.Y. 1995) ("Rule 7001 simply does not provide that a motion to enforce must be brought

by adversary proceeding.").

The Court agrees with Marsh that an adversary proceeding is not required. By its terms, the Motion does not seek a new injunction, only the enforcement of the 1986 Orders. *See* Motion 15 ("This motion is a matter of preserving existing jurisdiction and enforcing existing orders to give Marsh the finality it bargained for over two decades ago."). The Court clearly has jurisdiction to enforce the 1986 Orders, *Bailey*, 557 U.S. at 151, and no adversary proceeding is required for the Court to do so, *see Kalikow*, 602 F.3d at 92; *Ritchie Risk*, 471 B.R. at 337; *Texaco*, 182 B.R. at 945. Accordingly, the fact that Marsh did not file an adversary proceeding is not fatal to its request for relief.

## II.     Parra Is Not Entitled to Discovery

The Court next turns to Parra's argument that he is entitled to discovery in order to "develop an evidentiary record showing that Marsh . . . obtained its knowledge of and influence in the asbestos industry from sources other than Manville." Parra Supp'l Mem. 2. As Parra correctly observes, the Bankruptcy Court held an evidentiary hearing and made extensive findings before clarifying the scope of the 1986 Orders as to Travelers. Parra argues that the Court is required to conduct a similar evidentiary analysis as to Marsh in order to determine whether the 1986 Orders apply to the Complaint. *Id.* at 1 ("[T]his Court must conduct a fact intensive analysis to determine whether the malfeasance alleged against Marsh is 'inextricably intertwined' with Marsh's relationship with Manville . . . ."). Marsh disagrees, arguing that the face of the Complaint "demonstrates unequivocally that [Parra]'s claims . . . are barred" by setting forth a "painstaking recitation" of the forty year history between Marsh and Manville. Marsh Supp'l Mem. 2-3.

The Court agrees with Marsh that the Court can determine the application of the 1986 Orders based solely on the allegations in the Complaint. In the Complaint, Parra affirmatively

alleges that Marsh spent four decades "stud[ying] and inspect[ing] Johns Manville manufacturing plants and asbestos mines," Compl. ¶ 78, and became aware of asbestos claims against Manville as early as 1949, *id.* ¶¶ 76-77. Parra goes on to detail specific instances where Manville communicated with Marsh about asbestos health claims in 1957, 1958, 1959, and 1966. *See id.* ¶¶ 79-82. For example, the Complaint references a 1966 letter from Manville to Marsh describing the medical literature on asbestos diseases and noting the frequent occurrence of carcinoma and mesothelioma in asbestos workers. *Id.* ¶ 82.

Parra is bound by these affirmative allegations in the Complaint, which constitute judicial admissions. *See Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound . . . ."); 2 Kenneth S. Broun, <u>McCormick on Evidence</u> § 254 (7th ed. 2013) ("Judicial admissions . . . have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact."). By affirmatively alleging the nature and extent of Marsh's forty year relationship with Manville and the sources from which Marsh obtained information regarding the health hazards of asbestos exposure, Parra has given the Court all the facts it needs to determine whether the 1986 Orders apply to the Complaint. The Court will not permit Parra to conduct discovery to investigate – and potentially contradict – matters which he has already admitted in the Complaint. *See Soo Line R.R. Co. v. St. Louis Sw. Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997) ("[J]udicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told a court by [its pleadings].").

### III.    Parra's Claims Are Barred by the 1986 Orders

The Court next turns to the core of the parties' dispute: Whether the claims set forth in the Complaint are barred by the injunctive provisions of the 1986 Orders. On this point, the

parties simply disagree as to the scope of the 1986 Orders' injunction. According to Marsh, the orders enjoin the prosecution of any asbestos claim that is in any way related to its insurance relationship with Manville. *See* Motion 6 (stating that the 1986 Orders apply to all "asbestos claims and duties based upon, arising out of, or related to [Marsh's] insurance relationship[ ] with Manville." (internal quotation marks omitted)). According to Parra, on the other hand, the orders enjoin only those claims that are "inextricably intertwined" with Marsh's insurance coverage of Manville. Resp. 3; *see also id.* at 4 (arguing that the 1986 Orders do not apply to claims where "the insurer's relationship with Manville is just one small part of an extensive relationship with the asbestos industry as a whole").

In construing the 1986 Orders, the Court begins with the principle that "[c]ourt orders are construed like other written instruments, except that the determining factor is not the intent of the parties, but that of the issuing court." *United States v. Spallone*, 399 F.3d 415, 424 (2d Cir. 2005) (citation omitted). As with contracts, interpretation of court orders "is restricted to the 'four corners' of the document unless an ambiguity exists." *Valjean Mfg. Inc. v. Michael Werdiger Inc.*, 2012 WL 3839389, at *2 (S.D.N.Y. Sept. 5, 2012) (quoting *Spallone*, 399 F.3d at 424). As the Supreme Court has already determined that the injunctive provisions of the 1986 Orders are unambiguous, *see Bailey*, 557 U.S. at 149-150, this Court's analysis focuses on the four corners of the orders at issue.

With respect to Marsh, the Insurance Settlement Order provides:

[C]ommencing on the Plan Confirmation Date, all Persons, except Marsh, are restrained and enjoined from commencing and/or continuing any action, suit, arbitration or other proceeding of any type or nature against [Marsh] *based upon, arising out of or related to* Marsh Claims.

Insurance Settlement Order ¶ 14.2(d) (emphasis added).[4] "Marsh Claims" are broadly defined in

the Insurance Settlement Order to include:

> [A]ny and all claims, demands, *allegations*, duties, liabilities and obligations
> (whether or not presently known) which have been, or could have been, or might
> be, asserted by any Person against [Marsh] *based upon, arising out of or relating
> to* services (whether acts or omissions) performed by [Marsh] for [Manville], at
> any time, in connection with insurance policies issued to or for the benefit of
> [Manville] . . . .

*Id.* ¶ 14.1 (emphasis added).

In *Bailey*, the Supreme Court interpreted substantially identical language as it applied to

Travelers. In that case, the court began by noting that the phrase "in relation to" is "expansive."

*Bailey*, 557 U.S. at 148 (quoting *Smith v. United States*, 508 U.S. 223, 237 (1993)); *see also*

Black's Law Dictionary 1479 (10th ed. 2014) (defining "related" as "[c]onnected in some way;

having relationship to or with something else"). Coupled with the fact that the injunction applies

to "not only 'claims' but even 'allegations,'" the court held that the injunction was "not remotely

amenable to . . . a narrow construction." *Bailey*, 557 U.S. at 148; *see also Johns-Manville*, 2004

WL 1876046, at *31 (stating that the phrases "arising out of" and "related to" in the 1986 Orders

"were meant to provide the broadest protection possible").

Based on the plain language of the Insurance Settlement Order, this Court agrees with

Marsh that claims and allegations which are in any way "related to" Marsh's insurance coverage

of Manville are enjoined by the 1986 Orders. In doing so, the Court rejects Parra's argument that

---

[4] The Confirmation Order imposes a parallel injunction:

> All Persons . . . are hereby stayed, restrained and enjoined from taking one or more of the following
> actions for the purpose of, directly or indirectly, collecting, recovering or receiving payment of, on or
> with respect to any Claim, Interest or Other Asbestos Obligation: . . . Commencing, conducting or
> continuing in any manner, directly or indirectly, any suit, action or other proceeding . . . against or
> affecting . . . the Settling Insurance Companies . . . .

Confirmation Order ¶ 29(a).

a claim must be "inextricably intertwined" with Marsh and Manville's insurance relationship to fall within the scope of the injunction. Nothing in the 1986 Orders limits the injunction to such a narrow class of claims. Parra's argument is based on a misunderstanding of the findings entered by the Bankruptcy Court in support of the Clarifying Order, in which the Court found that certain of the direct actions against Travelers were, in fact, inextricably intertwined with Travelers and Manville's insurance relationship. *See Johns-Manville*, 2004 WL 1876046, at *30 (finding that "the direct action claims against Travelers are inextricably intertwined with Travelers' long relationship as Manville's insurer"). However, the Court did not limit the 1986 Orders' injunction to only that narrow class of claims; indeed, such a limitation would have been directly contrary to the express language of the 1986 Orders.

Having determined that the unambiguous language of the 1986 Orders applies to any claim that is "related to" Marsh and Manville's insurance relationship, the Court is compelled to enforce those orders according to their terms. *See Bailey*, 557 U.S. at 150-51 ("[A] court should enforce a court order . . . according to its unambiguous terms."); *see also id.* at 150 ("[W]here the plain terms of a court order unambiguously apply . . . , they are entitled to their effect."); *Spallone*, 399 F.3d at 421 ("[I]f a judgment is clear and unambiguous, a court must adopt, and give effect to, the plain meaning of the judgment.").

Based on the affirmative allegations set forth in the Complaint, the Court has no trouble finding that the Parra's claims "relate to" Marsh's insurance relationship with Manville and are accordingly barred by the 1986 Orders. Although Parra's claims do not seek relief based on "[Marsh's] specific contractual obligations to Manville," they do "relate in a more comprehensive way to [Marsh's] dealings with Manville." *Bailey*, 557 U.S. at 148-49. This is established by, among other things, Parra's specific and extensive allegations regarding the ways

in which Marsh learned information about the health hazards of asbestos exposure from its

relationship with Manville. *See* Compl. ¶¶ 55-86. Thus, the Court concludes that the claims

asserted against Marsh in the Complaint are – and have always been – permanently barred by the

injunctive provisions of the 1986 Orders.

The Court is not swayed by Parra's argument that Marsh's insurance relationship with

Manville "was nothing more than one minor association in a broad web of relationships," Resp.

3, and that applying the 1986 Orders to the Complaint would therefore be "absurd." *Bailey*, 557

U.S. at 149 (noting that "[t]here is, of course, a cutoff at some point, where the connection

between the insurer's action complained of and the insurance coverage would be thin to the point

of absurd"). As set forth in the Complaint, Parra's claims are based on Marsh's "express or tacit

understanding with Defendants *and manufacturers such as Johns Manville* . . . to

misrepresent . . . that asbestos was not hazardous [and] would not cause cancer." Compl. ¶ 37

(emphasis added). These claims are nothing like the admittedly absurd scenario in which an

insurer might seek to apply the 1986 Orders to "a state-law claim for personal injuries caused by

[an insurance agent]'s reckless driving while en route to the courthouse to defend Manville."

*Bailey*, 557 U.S. at 160 (Stevens, J., dissenting).

The Court is also not swayed by Parra's argument that the protections afforded to Marsh

by the 1986 Orders are narrower than those afforded to Travelers. As Parra correctly notes, the

injunctive provisions applicable to Travelers specifically reference the existence of certain "bad

faith or other insurer misconduct" claims. *See* Resp. 24 (quoting Insurance Settlement Order

¶ 23.2(f)). There is no such reference to similar claims against Marsh in the 1986 Orders, leading

Parra to the conclusion that "Marsh did not receive the broad injunctive relief given to

Travelers." *Id.* The Court disagrees.

The paragraph at issue reads, in pertinent part:

> [N]o Person who asserted prior to the date this Order becomes a Final Order a claim or cause of action against [Travelers] seeking any and all damages . . . for bad faith or other insurer misconduct alleged in connection with the handling or disposition of claims is enjoined from proceeding only with respect to such claim or cause of action . . . .

Insurance Settlement Order ¶ 23.2(f). In context, it is clear that this language constitutes a limitation on the 1986 Orders as they apply to Travelers, not an expansion of the injunction to cover claims that are not otherwise subject to the orders. The language specifically exempts from the injunction any direct action claims that were filed against Travelers before the Insurance Settlement Order became a final order. *See Bailey*, 557 U.S. at 150 (stating that the quoted language limits the injunction as to Travelers to claims that are "brought after the 1986 Orders become final"). Accordingly, it is Marsh – not Travelers – that has the broader injunction, since Marsh's injunction bars the prosecution of all bad faith and insurer misconduct claims against it, not just those that were brought after the 1986 Orders became final. For purposes of Parra's claims against Marsh, however, the differences between the injunctions are not material. Parra's claims are barred by 1986 Orders.

## IV.    Parra's Due Process Rights Were Not Violated

Parra's final argument concerns whether he received constitutionally sufficient notice of the proceedings before the Bankruptcy Court that led to the entry of the 1986 Orders. To the extent Parra did not receive constitutionally sufficient notice of the proceedings, he cannot be bound by the injunctive provisions of the orders. *Morgan Olson L.L.C. v. Frederico (In re Grumman Olson Indus., Inc.)*, 467 B.R. 694, 706 (S.D.N.Y. 2012) ("[F]or due process reasons, a party that did not receive adequate notice of bankruptcy proceedings [can] not be bound by orders issued during those proceedings."); *see also Chubb*, 600 F.3d at 158 (holding that Chubb

"is . . . not bound by the terms of the 1986 Orders" because it did not receive adequate notice of the proceedings that led to those orders).

During the proceedings that led to the entry of the 1986 Orders, Parra was a "future asbestos claimant" whose interests fell within the scope of the future claimants' representative's mandate. *See Johns-Manville*, 36 B.R. at 744-45 (defining "future asbestos claimants" as persons who came into contact with Manville's asbestos-containing products before the petition date and had not yet filed claims). Parra does not contend otherwise. Instead, he argues that, although the future claimants' representative may have represented his interests with respect to his claims against Manville, the representative did not represent him "with respect to [his] claims against [the settling insurers] for such [insurers]' independent misconduct." Resp. 26; *see also id.* at 30 ("the record does not indicate that [Parra's] independent claims against . . . Marsh fell under the [future claimants' representative]'s charge.").

Unsurprisingly, both Marsh and Travelers disagree with Parra's effort to "fit [himself] within the rationale of the Second Circuit's . . . decision regarding Chubb." Travelers Mem. 9; *see also* Reply 7 (accusing Parra of "attempting to ride on the back of [Chubb]"). Chubb, they argue, is not bound by the 1986 Orders because it was not within the class of persons that the future claimants' representative was appointed to protect. *See Chubb*, 600 F.3d at 157 ("The bankruptcy court ordered the [representative] to concern himself with 'persons who have been exposed to' Manville's asbestos products and who may subsequently 'manifest disease postpetition.' Chubb does not fall within that category . . . ."). Since Parra did fall within the representative's mandate, and since the representative received actual notice of the injunction protecting the settling insurers, both Marsh and Travelers argue that Parra is barred by the 1986 Orders' injunction. *See* Reply 7-8; Travelers Mem. 7-8.

As a threshold matter, none of the parties dispute that "[a]ppointing [a future claimants' representative] is an appropriate method of providing due process for unknown individuals who have yet to make demands for payment." *In re Flintkote Co.*, 486 B.R. 99, 125 n.68 (Bankr. D. Del. 2012); *see also* 11 U.S.C. § 524(g)(4)(B)(ii) (permitting bankruptcy courts to enjoin future asbestos claims against nondebtor third parties if "the court appoints a legal representative for the purpose of protecting the rights of persons that might subsequently assert" such claims).[5] Thus, the sole question before the Court is whether the future claimants' representative in this case was appointed to represent the interests of future asbestos claimants as against both Manville and the settling insurers. The Court finds that he was.

Nothing in the Bankruptcy Court's order appointing the future claimants' representative limited the scope of his representation solely to claims against Manville. Indeed, courts have held that limiting the role of a future claimants' representative would be "inappropriate." *In re G-I Holdings, Inc.*, 292 B.R. 804, 809 (Bankr. D.N.J. 2003). In this case, the Bankruptcy Court endowed the representative with "the full panoply of statutory rights and duties of representation available to an official committee." *Johns-Manville*, 68 B.R. at 626-27. It is undisputed that the representative used that authority and actually represented the interests of future asbestos claimants in connection with the 1986 Orders. *See, e.g., id.* at 626 ("[T]he Legal Representative for Future Claimants has been active in the Manville reorganization for over two years. He has been the catalyst for, if not the architect of, [the] Plan."). Parra has presented no authority – and no compelling reason – to find that the representative was authorized to represent his interests

---

[5] Although § 524(g) of the Bankruptcy Code was not enacted until after the 1986 Orders became effective, the section applies retroactively to asbestos trusts that meet the criteria specified in §§ 524(g) and (h). *Findley v. Falise (In re Joint E. & S. Dist. Asbestos Litig.)*, 878 F. Supp. 473, 571-72 (E.D.N.Y. & S.D.N.Y. 1995) (describing § 524(h) and finding that "[t]he Manville Trust clearly falls within" the provisions for retroactive application), *rev'd in part on other grounds*, 78 F.3d 764 (2d Cir. 1996).

with respect to his claims against Manville but not his claims against the settling insurers. The Court agrees with Travelers that such a limitation on the representative's power would have been "nonsensical." Travelers Mem. 8.

Because the Court holds that the future claimants' representative represented Parra with respect to his claims against the settling insurers as well as his claims against Manville, it agrees with both Marsh and Travelers that Parra received constitutionally sufficient notice of the proceedings that led to the entry of the 1986 Orders. He is therefore bound by the injunctive provisions of those orders.

## V.    The Court Will Not Limit Parra's Right to Amend the Complaint

Finally, the Court considers the possibility raised by the parties that Parra may attempt to amend the Complaint in order to "plead around" the 1986 Orders' injunction. At the hearing on May 8, 2014, Parra's counsel indicated that his client would be willing to excise any references to Manville in the Complaint for that purpose:

> [I]n the state court action, the state court counsel attempted to amend [the Complaint] to excise [Parra's] allegations with – that commented on or had anything to do with Manville. I believe that those efforts were stymied by [Marsh]. If Your Honor would have us excise any allegations with respect to Manville and then allow us to proceed with the state court action, I think that would be fine with my client.

May 8, 2014 Hr'g Tr. 11:18-12:1. In response, Marsh's counsel indicated that simply excising Manville from the Complaint would not be sufficient:

> [W]e think that Your Honor should interpret . . . the [1986 Orders] to bar [Parra's] claims. If Your Honor were unwilling to do that, the next step would be to allow [Parra] to go forward on the – we'll call it the "excised complaint," but we would then tell Your Honor that we may be back . . . to tell [the Court] that . . . it's impossible for [Parra] to prove a claim against Marsh without reference to its relationship with Manville . . . .

*Id.* at 12:8-18.

If Parra were to excise any references to Manville from the Complaint, this would not be the first instance in which a creative plaintiff attempted to plead around this Court's injunctive orders. *See Johns-Manville*, 2004 WL 1876046, at \*21 ("After the Court preliminarily enjoined prosecution of Direct Action Claims against Travelers . . . , certain plaintiffs' lawyers violated the letter and spirit of this Court's rulings by simply deleting the term 'Manville' from their complaints – but leaving the substance unchanged."); *see also id.* (collecting examples). To stop this kind of creative lawyering, the Clarifying Order included a "gate-keeping" provision requiring potential direct action plaintiffs to obtain leave from the Bankruptcy Court before filing suit against Travelers. *See* Clarifying Order ¶ 9(c)(ii). On appeal, however, the District Court vacated that provision, stating:

> If "creative plaintiffs" violate the Bankruptcy Court's orders in their attempts to plead around the injunction, the Bankruptcy Court has jurisdiction to find them in contempt. But the Bankruptcy Court has no jurisdiction to screen, in the first instance, suits against a non-debtor that purport to assert claims unrelated to the debtor or the estate.

*In re Johns-Manville Corp.*, 340 B.R. 49, 66 (S.D.N.Y. 2006), *rev'd in part on other grounds*, *Chubb*, 600 F.3d 135.

Applying these principles to the facts of this case, the Court concludes that it lacks jurisdiction in the first instance to decide whether a complaint against Marsh devoid of any references to Manville would fall within the scope of the 1986 Orders. *See id.*; *see also U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of America, Inc.*, 508 U.S. 439, 446 (1993) ("[A] federal court lacks the power to render advisory opinions." (alterations omitted)); *In re Nunez*, 2000 WL 655983, at \*6 (E.D.N.Y. Mar. 17, 2000) ("[L]ike . . . Article III courts, bankruptcy courts cannot issue advisory opinions."). If such a pleading is filed, it will be without prejudice

to the parties' rights to come back to this Court at that time to for a determination of whether it

violates the 1986 Orders.[6]

### Conclusion

For the reasons set forth herein, the Motion is **GRANTED.** Counsel for Marsh is directed

to submit a proposed order consistent with this Memorandum Decision.


Dated: Poughkeepsie, New York
      July 27, 2015


                               /s/ Cecelia G. Morris
                               The Honorable Cecelia G. Morris
                               Chief United States Bankruptcy Judge

---

[6] Although it may not prospectively determine whether a pleading will violate the 1986 Orders, the Court is not without means to ensure compliance with those orders. The Court may punish parties who violate its injunctions with contempt. *See Johns-Manville*, 340 B.R. at 66. To ensure future compliance with the 1986 Orders, the Court clarifies that further violations of the orders may result in a finding of contempt and the imposition of sanctions on parties and their attorneys, including a requirement that violators to pay the reasonable costs and attorneys' fees incurred in enforcing the orders. *See N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir. 1989) (contempt is appropriate where "(1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply"); *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979) ("[I]t is appropriate for the court . . . to award the reasonable costs of prosecuting the contempt, including attorneys' fees, if the violation of the decree is found to have been willful.").