FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

\-------------------------------------------------------- x

*In re:*                                          :
                                                  :
**JOHNS-MANVILLE CORPORATION,**                   :
**et al.,**                                       :
                                                  :
                                *Debtors.*        :

\-------------------------------------------------------- x

Chapter 11

Case No. 82-11656 (CGM)

## MEMORANDUM DECISION FOLLOWING REMAND FROM THE DISTRICT COURT ON MARSH USA'S MOTION TO ENFORCE THE CONFIRMATION ORDER AND INJUNCTION

**CECELIA G. MORRIS**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

The instant dispute between Salvador Parra, Jr. ("Parra") and Marsh USA ("Marsh") regarding the effect of the channeling injunction issued in the Johns-Manville Corporation's ("Manville") chapter 11 bankruptcy case, is back before this Court on remand from the Southern District of New York ("District Court").  *See Parra v. Marsh USA, Inc. (In re Johns-Manville Corp.)*, 551 B.R. 104 (S.D.N.Y. 2016) (the "District Court Opinion").  The District Court's March 14, 2016 decision affirmed in part and reversed and remanded in part this Court's July 27, 2015 memorandum decision enjoining Parra's asbestos claims against Marsh.  *See In re Johns-Manville Corp.*, 534 B.R. 553 (Bankr. S.D.N.Y. 2015), *aff'd in part, and rev'd in part sub nom. Bogdan Law Firm v. Marsh USA, Inc. (In re Johns-Manville Corp.)*, 551 B.R. 104 (S.D.N.Y. 2016).  On remand, this Court is instructed to apply the due process principles articulated by the Second Circuit in *Johns-Manville Corp. v. Chubb Indemnity Ins. Co. (In re Johns-Manville Corp.)*, 600 F.3d 135, 153–55 (2d Cir. 2010) ("*Chubb*"), to the facts of this case.  *Parra*, 551

B.R. at 123.  As part of the due process analysis, this Court is encouraged to determine whether

the future claims representative ("Future Claims Representative") appointed in the Manville case

was actually charged with representing the future claimants' *in personam* claims against a

settling insurer, and, if so, whether the quality of that representation satisfied due process

concerns.  *Id.* at 123–24.  The District Court also gave this Court the option "consider whether a

denial of due process would have resulted in prejudice." *Id.* at 124.

## JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. §

157(a) and the Standing Order of Reference signed by Chief Judge Loretta A. Preska dated

January 31, 2012.  This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A), involving

matters concerning the administration of the estate.  Further, the Supreme Court has held in prior

litigation arising out of this very case that this Court has "jurisdiction to interpret and enforce its

own prior orders." *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (citing *Local Loan

Co. v. Hunt*, 292 U.S. 234, 239 (1934)).

## BACKGROUND

At the hearing on June 1, 2017, the Court read into the record the procedural posture of

the case and the relevant facts that color the instant dispute.  For purposes of completeness, the

background portion of the record already established at the June 1, 2017 hearing is repeated

herein.

### THE MANVILLE BANKRUPTCY

The instant dispute arises out of more than thirty years of litigation in the Johns-Manville

Corporation's ("Manville") chapter 11 bankruptcy case.  *See In re Manville Forest Prods. Corp.*,

31 B.R. 991, 992 (S.D.N.Y. 1983); *In re Johns-Manville Corp.*, 36 B.R. 727, 729 (Bankr.

S.D.N.Y. 1984); *In re Johns-Manville Corp.* 97 B.R. 174, 176 (Bankr. S.D.N.Y. 1989).

Although Manville's reasons for filing are no secret, it bears repeating here.

Before filing for bankruptcy, Manville was the largest producer and provider of asbestos

in the world. *GAF Corp. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 26. B.R. 405,

407 (Bankr. S.D.N.Y 1983), *aff'd sub nom. Johns-Manville Corp. v. Asbestos Litig. Grp. (In re

Johns-Manville Corp.)*, 40 B.R. 219 (S.D.N.Y. 1984); *see also In re Johns-Manville Corp.*, 2004

Bankr. LEXIS 2519, at *7 (citations omitted). Manville's asbestos was used widely throughout

many industries for decades in the United States. *Manville Corp. v. Equity Sec. Holders Comm.

(In re Johns-Manville Corp.)*, 66 B.R. 517, 521 (Bankr. S.D.N.Y. 1986). The medical dangers

associated with exposure to asbestos were not well known until latent asbestos injuries began to

manifest across the country in the 1960s. *In re Asbestos Prods. Liab. Litig.*, 771 F. Supp. 415,

418 (J.P.M.L. 1991) (quoting Judicial Conf. of the U.S., Report of the Judicial Conference Ad

Hoc Committee on Asbestos Litigation 1–3 (1991)). "The health risks caused by asbestos were

finally given broad acknowledgment on the legal front in 1973, when the United States Court of

Appeals for the Fifth Circuit issued its landmark decision in *Borel*." *In re Johns-Manville Corp.*,

552 B.R. 221, 226 (Bankr. S.D.N.Y. 2016) (citing *Borel v. Fibreboard Paper Prod. Corp.*, 493

F.2d 1076 (5th Cir. 1973)). The Fifth Circuit's decision affirmed a jury verdict finding Manville

strictly liable for the plaintiff's personal injuries resulting from asbestos exposure. *Borel*, 493

F.2d at 1086. After *Borel*, asbestos litigation ballooned. *See* Patrick M. Hanlon & Anne Smetak,

*Asbestos Changes*, 62 N.Y.U. Ann. Surv. Am. L. 525, 526–27 (2007).

Over the years asbestos litigation began to change shape. By the 1980s, "asbestos

producers coalesced into an industry-wide consortium, presenting a unified litigation front." *In

re Johns-Manville Corp.*, 552 B.R. 221, 227 (Bankr. S.D.N.Y. 2016) (citing John C. Coffee, Jr.,

*Class Wars: The Dilemma of the Mass Tort Class Action*, 95 Colum. L. Rev. 1343, 1364–66 (1995)).  "Counsel for asbestos plaintiffs were also operating on a narrow playing field.  There were fewer than 50 firms representing asbestos plaintiffs, with most cases concentrated in the hands of a few."  *In re Johns-Manville Corp.*, 552 B.R. 221, 227 (Bankr. S.D.N.Y. 2016) (citing Coffee, *supra*, at 1364-65, 1392 & nn.187-88 (citations omitted); *Amchem Prods. v. Windsor*, 521 U.S. 591, 599 (1997)).

While litigation between the asbestos producers' consortium and the asbestos-plaintiffs' firms continued, Manville and its insurers fought over who should bear the costs of the asbestos litigation against Manville.  *See In re Johns-Manville Corp.*, 552 B.R. 221, 227 (Bankr. S.D.N.Y. 2016) (citing *In re Johns-Manville Corp.*, 36 B.R. 743, 750 (Bankr. S.D.N.Y. 1984)).

Manville filed for chapter 11 bankruptcy on August 26, 1982 due to the looming "spectre of proliferating, overburdening [asbestos] litigation to be commenced in the next 20–30 years, which litigation would be beyond [Manville's] ability to manage, control, and pay for . . . ."  *In re Johns-Manville Corp.*, 36 B.R. 743, 745 (Bankr. S.D.N.Y. 1984), *aff'd*, 52 B.R. 940 (S.D.N.Y. 1985); *see also In re Johns-Manville Corp.*, 36 B.R. 727, 729 (Bankr. S.D.N.Y. 1984).  "Manville's financial inability to resolve the impending asbestos claims was a result of 'the insurance industry's general disavowal of liability to Manville on policies written for this very purpose.'"  *Bogdan Law Firm v. Bevan & Assocs., LPA (In re Johns-Manville Corp.)*, 2016 Bankr. LEXIS 3145, at *3 (Bankr. S.D.N.Y. Aug. 26, 2016) (quoting *In re Johns-Manville Corp.*, 36 B.R. 727, at 729).  In other words, it was not the asbestos lawsuits themselves but the "*inability* to look at at least $600 million in insurance coverage . . ." that brought Manville to its knees.  *In re Johns-Manville Corp.*, 36 B.R. 743, at 750 (citations omitted) (emphasis added).

Manville's insurance disputes were no small or private affair.  Prior to bankruptcy, "'Manville and its insurers litigated over the scope and limits of liability coverage, and Travelers faced suits by third parties, such as Manville factory workers and vendors of Manville products, seeking compensation under the insurance policies,' as well as suits from other insurers pursuing indemnity and contribution claims."  *Bogdan Law Firm v. Bevan & Assocs., LPA (In re Johns-Manville Corp.)*, 2016 Bankr. LEXIS 3145, at *3 (Bankr. S.D.N.Y. Aug. 26, 2016) (quoting *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 141 (2009)).  "As early as 1983, this Court found that any direct action suit against an insurer of Manville would negatively impact Manville's bankruptcy estate by limiting the assets available for Manville to put in trust for future asbestos claimants."  *Bogdan Law Firm v. Bevan & Assocs., LPA (In re Johns-Manville Corp.)*, 2016 Bankr. LEXIS 3145, at *4 (Bankr. S.D.N.Y. Aug. 26, 2016) (citing *Johns-Manville Corp. v. Asbestos Litig. Grp. (In re Johns-Manville Corp.)*, 33 B.R. 254, 260, 263 (Bankr. S.D.N.Y. 1983)).

This Court recognized that "any forced payment to an asbestos litigant by one of Manville's liability carriers would obviously decrease the pool and leave fewer assets remaining to be divided among other claims.  This effect could seriously undermine the whole purported purpose of Manville's bankruptcy petition, to wit: reasonable compensation for all asbestos victims."  *In re Johns-Manville Corp.*, 33 B.R. 254, 268 (Bankr. S.D.N.Y. 1983).  "As such, the insurance policies were included as assets in Manville's bankruptcy estate."  *Bogdan Law Firm v. Bevan & Assocs., LPA (In re Johns-Manville Corp.)*, 2016 Bankr. LEXIS 3145, at *4–5 (Bankr. S.D.N.Y. Aug. 26, 2016).

This Court reasoned that "Manville's insurance policies constitute one of its largest and most significant assets and are absolutely necessary for the formulation of any reorganization

plan." *Johns-Manville Corp. v. Asbestos Litig. Grp. (In re Johns-Manville Corp.)*, 33 B.R. 254, 260, 263 (Bankr. S.D.N.Y. 1983). In furtherance of this determination and to protect against the diminishment of Manville's primary assets, "this Court extended the automatic stay to cover all direct actions against Manville's insurers . . . ." *Bogdan Law Firm v. Bevan & Assocs., LPA (In re Johns-Manville Corp.)*, 2016 Bankr. LEXIS 3145, at \*3 (Bankr. S.D.N.Y. Aug. 26, 2016) (quoting *Johns-Manville Corp. v. Asbestos Litig. Grp. (In re Johns-Manville Corp.)*, 33 B.R. 254, 260, 263 (Bankr. S.D.N.Y. 1983)).

As the bankruptcy litigation unfolded, Manville's insurers agreed to settle for approximately $770 million. *Macarthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 90 (2d Cir. 1988). "The settlements provided that, in exchange for cash payments, the insurers would be relieved of all obligations related to the disputed policies and the insurers would be protected from claims based on such obligations by injunctive orders of the Bankruptcy Court." *Id.* Marsh was included in the group of settling insurers, and executed a settlement with Manville on October 10, 1986. *See* Marsh's Mot. Enforce at 2, Aug. 6, 2010, ECF No. 3915; Marsh's Mot. Enforce, Ex. A at 153, Aug. 6, 2010, ECF No. 3916-5. Marsh paid approximately $29.75 million as part of the settlement agreement, the proceeds of which "became the cornerstone of the Manville reorganization, providing the much-needed funding for the Manville Personal Injury Settlement Trust (the Manville "Trust") that was established for the benefit of future asbestos claimants." *Bogdan Law Firm v. Bevan & Assocs., LPA (In re Johns-Manville Corp.)*, 2016 Bankr. LEXIS 3145, at \*6 (Bankr. S.D.N.Y. Aug. 26, 2016) (citing *In re Johns-Manville Corp.*, 97 B.R. 174, 177 (Bankr. S.D.N.Y. 1989); *In re Johns-Manville Corp.*, 68 B.R. 618, 621–22 (Bankr. S.D.N.Y. 1986)).

The insurance settlement was so-ordered and incorporated into the confirmation order by this Court, and

> provided for the channeling of all asbestos claims against the settling insurers "based upon, arising out of, or related to any or all of the Policies" to the Manville Trust; the release of the settling insurers from any further obligations "based upon, arising out of or related to the Policies . . . and all Policy ***Claims***"; and a "***permanent injunction***, specifically prohibiting all ***future claims*** for bad faith or insurer misconduct," and enjoining all persons from "commencing and/or continuing any suit, arbitration or other proceeding of any type or nature for Policy ***Claims*** against any or all members of the Settling Insurer Group . . . ."

*Bogdan Law Firm v. Bevan & Assocs., LPA (In re Johns-Manville Corp.)*, 2016 Bankr. LEXIS 3145, at *5–6 (Bankr. S.D.N.Y. Aug. 26, 2016) (quoting *In re Johns-Manville Corp.*, 2004 Bankr. LEXIS 2519, at *42-43 (Bankr. S.D.N.Y. Aug. 17, 2004)) (citing *In re Johns-Manville Corp.*, 68 B.R. 618, 624 (Bankr. S.D.N.Y. 1986), *aff'd* 78 B.R. 407 (S.D.N.Y 1987), *aff'd sub nom. MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89 (2d Cir. 1988)).

"The Manville Plan, although concerned with future asbestos claimants, was also designed to treat both present asbestos claimants and future asbestos claimants equally." *In re Johns-Manville Corp.*, 552 B.R. 221, 245 (Bankr. S.D.N.Y. 2016) (citing *In re Johns-Manville Corp.*, 68 B.R. 618, 621 (Bankr. S.D.N.Y. 1986), *aff'd sub nom. In re Johns-Manville Corp.*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom. Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988)). "In order to guarantee funds that would be available to both present and future asbestos claimants, the Manville Plan established two trusts, the Personal Injury Settlement Trust, ("Manville Trust") and the Manville Property Damage Trust ("Manville PD Trust")." *Id.* (citing *In re Johns-Manville Corp.*, 68 B.R. at 621; *In re Johns-Manville Corp.*, 97 B.R. 174, 176-77 (Bankr. S.D.N.Y. 1989)). The Manville Trust "draws no distinction between victims on the basis of the date of the manifestation of their disease." *In re Johns-Manville Corp.*, 68 B.R. 618, 621 (Bankr. S.D.N.Y. 1986).

The Court appointed the Future Claims Representative to represent the interests of all future claimants. The Court found that the interest of the future claimants were distinct and separate from those of the current asbestos plaintiffs. Most importantly, the Manville Plan and Confirmation Order did not discharge the claims of future asbestos claimants. *See In re Johns-Manville Corp.*, 68 B.R. 618, 628 (Bankr. S.D.N.Y. 1986) (discussing the category of "other asbestos obligations" in the Manville Plan and Trust, which covers the claims of potential future claimants). Instead,

> [t]he Manville Plan and Confirmation Order incorporated a channeling injunction, which was created to preserve the rights and interests of all "future asbestos claimants," defined as persons "who had been exposed to Manville's asbestos prior to the August 1982 petition date but had not yet shown any signs of disease at that time," by channeling their claims to the Manville Trust.

*Bogdan Law Firm v. Bevan & Assocs., LPA (In re Johns-Manville Corp.)*, 2016 Bankr. LEXIS 3145, at *6-7 (U.S. Bankr. S.D.N.Y. Aug. 26, 2016) (quoting *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 639 (2d Cir. 1988)).

The 1986 Orders, which include the Manville Plan, Trust documents, the Confirmation Order, and incorporated Insurance Settlement Order, barred claims by future asbestos claimants against settling insurers. The Second Circuit clearly stated and left no room for confusion, in *Macarthur*, when it affirmed and held that the 1986 Orders

> do not offer the umbrella protection of a discharge in bankruptcy. Rather, they preclude only those suits against the settling insurers that arise out of or relate to Manville's insurance policies. Moreover, claims against the insurers based on Manville's policies are not extinguished; they are simply channeled away from the insurers and redirected at the proceeds of the settlement.

*Macarthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 91 (2d Cir. 1988). That case was brought by a distributor of Manville's asbestos, who claimed to be co-insured under Manville's policies. MacArthur asserted the Bankruptcy Court lacked jurisdiction or authority to enter the Insurance

Settlement Order.  In rejecting MacArthur's claims, the Second Circuit reasoned that

"MacArthur's rights as an insured vendor are completely derivative of Manville's rights as the

primary insured.  Such derivative rights are no different in this respect from those of the asbestos

victims who have already been barred from asserting direct actions against the insurers."  *Id.* at

92 (citations omitted).  In denying MacArthur's objection, the Second Circuit likened

MacArthur's rights to those of the asbestos victims, who were also barred from directly suing the

insurers.

Despite the Second Circuit's holding in *Macarthur*, asbestos plaintiffs continued to file

so-called "direct" actions against Manville's insurers, including Travelers Indemnity Company,

Travelers Casualty and Surety Company, and other affiliates ("Travelers").

> These post-confirmation "direct action" lawsuits against Travelers asserted so-
> called "novel" legal theories in an attempt to hold the insurer directly liable for its
> own alleged misconduct.  The direct actions fell into two categories—those
> asserting statutory causes of action and those based on common law claims.  Both
> types of actions argued that Travelers had conspired with Manville to suppress
> evidence Manville was aware of the hazards of asbestos, and had engineered a
> fraudulent "no duty to warn" defense.

*Bogdan Law Firm v. Bevan & Assocs., LPA (In re Johns-Manville Corp.)*, 2016 Bankr. LEXIS

3145, at *7 (Bankr. S.D.N.Y. Aug. 26, 2016) (citing 2004 Bankr. LEXIS 2519 at *48–60).

In 2002, Travelers filed a motion to enforce the injunction contained in the 1986 Orders.

*See* Mot. Temp. Restraining Order, Dkt. No. 3413.  Ultimately this led to an agreement between

Travelers and the asbestos victims, affirmed by the Bankruptcy Court in a thorough decision

issued after an evidentiary trial.  *In re Johns-Manville Corp.*, 2004 Bankr. LEXIS 2519, at *113

(Bankr. S.D.N.Y Aug. 17, 2004), *aff'd in part, vacated in part*, 340 B.R. 49 (S.D.N.Y. 2006),

*vacated sub nom. Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.)*,

517 F.3d 52 (2d Cir. 2008), *rev'd and remanded sub nom. Travelers Indem. Co. v. Bailey*, 557

U.S. 137, 129 S. Ct. 2195, 174 L. Ed. 2d 99 (2009)).  This Court's decision and order found that the direct action suits against settling insurers had always been barred.  The decision was appealed by a non-settling insurer, Chubb, to the District Court.  The District Court affirmed that order in part and vacated it in part.  *In re Johns-Manville Corp.*, 340 B.R. 49 (S.D.N.Y. 2006). The District Court's decision was then appealed to the Second Circuit.

On appeal to the Second Circuit, the Circuit reversed the Bankruptcy Court and the District Court's conclusion that Chubb, a non-settling insurer, could not bring contribution and indemnification claims against Travelers.[1] *Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.)*, 517 F.3d 52 (2d Cir. 2008).  The Second Circuit held that the Bankruptcy Court had exceeded its subject matter jurisdiction in entering the 1986 Orders, when it released the settling insurers from all claims relating to or arising from their insurance relationship with Manville.  On appeal, the Supreme Court reversed the Second Circuit and held that the 1986 orders were final orders, entitled to *res judicata* and not subject to collateral attack.  *Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009).  The Supreme Court did not determine whether all parties actually received notice sufficient to satisfy due process concerns, and remanded that issue to the Second Circuit.  *Id.* at 155.

On remand from the Supreme Court, the Second Circuit determined that its holding in MacArthur did not foreclose Chubb's due process argument and that Chubb was not barred from asserting *in personam* claims against Travelers for contribution and indemnification even though those claims are purported to be barred by the 1986 Orders.  *Johns-Manville Corp. v. Chubb Indemnity Ins. Co. (In re Johns-Manville Corp.)*, 600 F.3d 135, 158 (2d Cir. 2010).  The Second

---

[1] Chubb was a codefendant with Travelers in certain common law direct asbestos related actions filed in state courts against insurers directly and was seek indemnification and contribution from Travelers.

Circuit then reversed the District Court's March 28, 2006 order and remanded *Chubb* back to the District Court. *Id.* at 159.

The Second Circuit's holding in *Chubb*, emboldened Parra to bring an action against a settling insurer in Mississippi alleging the same conspiracy and negligence-type claims that this Court dealt with in 2004. *See* Parra Resp., ECF No. 3919 at 5 ("arguing "that it is incumbent on this Court to conduct that analysis and to determine whether the future claims representative appointed in the 1986 bankruptcy case was charged with representing future asbestos claimants (who may or may not have future claims against Johns-Manville) with respect to their claims against Marsh for Marsh's independent wrongful conduct" and citing *Johns-Manville Corp. v. Chubb Indemnity Ins. Co. (In re Johns-Manville Corp.)*, 600 F.3d 135, 158 (2d Cir. 2010)).

CURRENT DISPUTE

On February 10, 2010, Parra filed a complaint against Marsh USA ("Marsh") and others in the Circuit Court of Jones County, Mississippi ("Mississippi Litigation"). Parra claimed to have been exposed to asbestos while working as an insulator at various jobsites in Louisiana, Mississippi, Oklahoma, and Texas during the late 1960s and early 1970s. Marsh's Mot. Enforce, Ex. E at ¶ 2, ¶ 14, Aug. 6, 2010, ECF No. 3916-5. Parra claims that as a direct and proximate result of inhaling, ingesting, and general exposure to asbestos, he received injuries including asbestosis, impaired pulmonary capacity, reduced lung volume, interstitial lung fibrosis, injury to lung tissue and/or pleura, increased risk for cancer, and physical and mental anguish associated with any of the aforementioned conditions. *Id.* at ¶ 15. Parra's complaint further alleges loss of wages and earning power, future medical expenses and loss of enjoyment of life. *Id.* at ¶ 16. Parra asserts that due to the long latency period, Parra only recently discovered his injuries. *Id.*

All of the defendants sued by Parra in the Mississippi Litigation were producers, distributors, or insurers of asbestos products. *Id.* at ¶ 8. Parra asserts that all of the defendants "knew or should have known through industry and medical studies . . . of the health hazards . . . inherent in the asbestos-containing products." *Id.* at ¶ 12. Parra's state court claims against Marsh seek to hold Marsh liable for its "negligent undertakings, conspiracy, aiding, and abetting courses of conduct," to conceal the known health hazards of asbestos from the public. *Id.* at ¶ 34. Parra alleges that Marsh "aided and abetted" and "conspired with" the Defendants and other entities "such as Johns Manville" to hide the effects of Parra's exposure to asbestos from materials including, but not limited to, Johns-Manville products. *Id.* at ¶ 33, 34, 53. Parra's state court complaint details Marsh's forty year insurance relationship with Manville, stating that it was unique, and that Marsh learned of the health hazards of asbestos through its dealings with Manville. *Id.* at ¶ 76-86.

On August 6, 2010, Marsh filed a motion in the Bankruptcy Court to enforce the channeling injunction and other orders entered in connection with the chapter 11 cases of Johns-Manville Corporation ("Manville"). Mot. Authorize, ECF No. 3915. In the motion, Marsh argued that Parra's claims against Marsh were barred by the channeling injunction and incorporated so-ordered settlements amongst Manville's insurers. *Id.* at 2. In response, Parra argued that Marsh was required to file an adversary; Parra was entitled to conduct discovery; Parra's claims were not barred by the 1986 channeling injunction and orders; and, even if technically covered by the 1986 orders, Parra did not receive notice sufficient to satisfy constitutional due process. Parra Resp., ECF No. 3919.

On July 27, 2015, this Court entered a memorandum decision, holding that (1) Marsh was not required to file an adversary proceeding as the Court was interpreting the scope of an existing

injunction issued by this Court in the 1986 orders; (2) Parra was not entitled to discovery to develop an evidentiary record as this Court conducted extensive evidentiary hearings and issued findings of facts and conclusions of law interpreting the scope of the 1986 orders on this very issue in 2004, allowing this Court to determine from the facts alleged in Parra's complaint whether the claims were barred by the 1986 orders; (3) that the 1986 orders barred Parra's claims against Marsh; (4) Parra's due process rights were not violated; and (5) the Court would not limit Parra's right to amend his complaint in the Mississippi Litigation. *See* Mem. Dec., ECF No. 4171.

Parra appealed items (1) through (4) of this Court's July 27, 2015 decision to the District Court on August 19, 2015. Ntc. Appeal, ECF No. 4147. The District Court issued an opinion on April 11, 2016. Order U.S. Dist. Court, ECF No. 4229. The District Court affirmed this Court as to the first three issues. The District Court specifically held that no discovery was needed and that "[t]he allegations in Parra's Complaint are sufficient to establish the required nexus" between Parra's claims against Marsh and Marsh's insurance relationship with Manville, as the 1986 orders were interpreted by the Supreme Court in *Travelers Indemnity Company v. Bailey*, 557 U.S. 137 (2009). The District Court reversed and remanded as to the fourth issue, whether Parra received sufficient due process in connection with the entry of the 1986 orders.

The District Court determined that Parra's claims against Marsh were *in personam* claims, as the claims seek to hold Marsh liable for its own wrongdoing, separate from its insurance relationship with Manville. The District Court further held that "Parra's claims do not seek to collect from the *res* of the Manville chapter 11 estate," and that "[t]hey are not claims against the insurance policies." The District Court then concluded that the due process principles articulated in the Second Circuit's opinion in *Chubb* on remand applied to Parra's claims against

Marsh, even though Chubb, a non-settling insurer, had asserted indemnity and contribution claims against Travelers, while Parra suffered personal injuries as a result of Manville's asbestos.

After discussing the Second Circuit's *Chubb* opinions, the *Parra* District Court enunciated three principles to frame the question on remand to this Court: the 1986 orders do not speak to whether Parra received due process in the proceedings leading up to the entry of the 1986 orders; the requirements of due process are not the same for *in personam* and *in rem* proceedings and that the special due process exception for *in rem* bankruptcy proceedings does not apply where future claimants seek to pursue *in personam* claims against a non-debtor; and where *in personam* claims are involved, the appropriate standard for due process is the standard set forth in Federal Rule of Civil Procedure 23, regarding class action notice requirements to form a class.

From the District Court's understanding of the new *in personam* due process principles, the District Court reasoned that even if the Manville Future Claims Representative was appointed to represent all rights of the future claimants against both Manville and the settling insurers, "all rights" did not automatically include *in personam* rights against settling insurers, and that to have represented the future claimants' *in personam* rights, the Future Claims Representative would have had to "predict the bankruptcy court would exceed its *in rem* jurisdiction in entering the 1986 orders."

On remand, the District Court instructs this Court to make a factual determination as to whether Parra's *in personam* claims received adequate representation by the Future Claims Representative, at all times throughout the litigation, and notice reasonably calculated to apprise him of the pendency of the action. The District Court expects an answer to whether *in personam*

claims were contemplated by the Future Claims Representative order, and whether the requisite

representation was provided as to the *in personam* claims.

The District Court opinion provides as follows:

> Accordingly, this matter is remanded to the bankruptcy court for development of
> the record and application of the due process principles set forth in Chubb.
> The bankruptcy court should determine the extent to which the FCR was charged
> with representing Parra (and other future asbestos claimants) with respect to *in
> personam* claims against Marsh and, if the FCR was so charged, determine whether
> the quality of that representation was sufficient to satisfy due process.
> Finally, as part of its analysis on remand, the bankruptcy court may also consider
> whether a denial of due process would have resulted in prejudice.

*Parra v. Marsh*, 40–41, No. 15-06607, Mar. 14, 2016.  The District Court concluded that

regardless of the due process consideration, there may be no prejudice to Parra if Parra could

have recovered from the Manville Trust.

Parra was a future asbestos claimant at the time of the 1986 Orders.  Parra now seeks to

recover for his personal injuries resulting from his exposure to asbestos from Marsh, a settling

insurer.  Parra frames his claims against Marsh as direct claims against Marsh, for Marsh's own

wrongdoing, separate and apart from any relationship Marsh had with Manville.

## DISCUSSION

The District Court remanded for a determination consistent with the due process

principles articulated in *Chubb*.  Although the Supreme Court has held that this Court's subject

matter jurisdiction to issue the Manville Plan, Confirmation Order and accompanying Settling

Insurer Orders is *res judicata*, the question for this Court on remand is whether Parra had

sufficient due process such that this Court could appropriately exercise personal jurisdiction over

Parra's person, consistent with the Due Process Clause in the Constitution.  In short, this Court

finds that it properly exercised jurisdiction over Parra's claims against Marsh, even as an

unknown future claimant, consistent with the Due Process Clause in Article III of the
Constitution.

## DUE PROCESS

"Judicial jurisdiction" is defined in Black's Law Dictionary as "[t]he legal power and
authority of a court to make a decision that binds the parties to any matter properly brought
before it." *Jurisdiction*, Black's Law Dictionary (10th ed. 2014). In order to issue an
enforceable order, "[a] court must have jurisdiction over subject matter but also over the person
of the defendant." *GP Credit Co., LLC v. Orlando Residence, Ltd.*, 349 F.3d 976, 979 (7th Cir.
2003). Here, the Supreme Court determined that whether or not this Court properly had subject
matter jurisdiction to issue the Manville channeling injunction was *res judicata*. *Travelers
Indem. Co. v. Bailey*, 557 U.S. 137, 152–53 (2009). The only issue left open to challenge was
whether or not the individual litigants were "given constitutionally sufficient notice of the 1986
Orders, so that due process absolves it from following them, whatever their scope." *Id.* at 155
(citations omitted).

Due process concerns limit the ability of a court to adjudicate the rights of parties not
before the court. *Pennoyer v. Neff*, 95 U.S. 714, 732–33 (1877). Historically, the power of the
Court to decide so-called "personal rights" has required the court to obtain personal jurisdiction
over the defendant, while the ability to determine title to or possession of property only requires
jurisdiction over the property. *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306,
311–12 (1950). Thus, whether this Court was presiding over an *in personam* or *in rem* action,
*i.e.*, whether the Confirmation Order was a judgment adjudicating rights such that its issuance
required personal jurisdiction over the affected parties, has thrown into issue whether the Court

properly obtained personal jurisdiction over unknown litigants consistent with Constitutional due process.

"Historically the jurisdiction of courts to render judgment *in personam* is grounded on their de facto power over the defendant's person.  Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citing *Pennoyer v. Neff*, 95 U.S. at 733). The power to issue an *in personam* judgment thus required the presence of the defendant in the court's jurisdiction.  The purpose of this requirement was to put the defendant on notice that he or she was subject to the jurisdiction of the issuing court.  Before the use of the summons, a court had the power to issue a writ of *capias ad respondendum*, empowering the sheriff to arrest any defendant who failed to appear and answer a civil action brought against them.  *See id.*; *see also Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 350 (1999) (citations omitted).  Today, a defendant is put on notice by service of the summons, which compels the defendant's appearance in court.  *See Int'l Shoe Co.*, 326 U.S. at 316.  "[T]he service of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served."  *Mississippi Pub. Corp. v. Murphree*, 326 U.S. 438, 444–45 (1946).  Under Federal Rule of Civil Procedure 4(k), incorporated and made applicable by Bankruptcy Rule 7004, federal courts may obtain personal jurisdiction over any defendant properly served in a suit brought pursuant to federal law.  *See United States Sec. v. Carrillo*, 115 F.3d 1540, 1544 (11th Cir. 1997); *Chew v. Dietrich*, 143 F.3d 24, 28 (2d Cir. 1998). Additionally in bankruptcy, serving the summons in accordance with Federal Rule of Civil Procedure 4, "is effective to establish personal jurisdiction over the person of any defendant with

respect to a case under the Code or a civil proceeding arising under the Code, or arising in or related to a case under the Code."

"The requirement that a court have personal jurisdiction flows not from Art. III, but from the Due Process Clause.  The personal jurisdiction requirement recognizes and protects an individual liberty interest."  *Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 702 (1982).  The reach of a court's ability to exercise personal jurisdiction over a particular defendant is limited by due process, which requires that a defendant have a minimum level of contact with the forum exercising that jurisdiction "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463) (further citations omitted).  In the context of a bankruptcy case, the authority exercising jurisdiction is the United States.  *See Diamond Mortg. Corp. v. Sugar*, 913 F.2d 1233, 1244 (7th Cir. 1990); *Enron Corp. v. Arora (In re Enron Corp.)*, 316 B.R. 434, 444 (Bankr. S.D.N.Y. 2004).  A resident citizen of the United States would certainly have sufficient minimum contacts with the United States as a whole to be amenable to suit in federal court in a case involving a question of federal law.  *See In re Platinum & Palladium Antitrust Litig.*, No. 1:14-cv-9391, 2017 U.S. Dist. LEXIS 46624, at *123 (S.D.N.Y. Mar. 28, 2017) (quoting *Gucci Am. v. Bank of China*, 768 F.3d 122, 142 n.21 (2d Cir. 2014)).

While a court may procedurally establish personal jurisdiction over a litigant through service of process, "[s]ervice of process has its own due process component, and must be 'notice reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *SEC v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Perhaps most critical to this Court's analysis of whether Parra received due process is the principle that the notice requirements of the Due Process Clause do not vary depending on whether the proceeding is *in personam* or *in rem*. *Mullane*, 339 U.S. at 312–13 (discussing the "elusive and confused" standard of classification for *in rem* and *in personam* jurisdiction and holding that the due process "requirements of the Fourteenth Amendment to the Federal Constitution do not depend upon a classification for which the standards are so elusive and confused generally," and that the power to resort to constructive service should not depend on a court's determination of whether the proceeding is *in rem* or *in personam*). While "[d]istinctions between actions *in rem* and those *in personam* are ancient and originally expressed in procedural terms what seems really to have been a distinction in the substantive law of property under a system quite unlike our own," courts in this country still attempt to differentiate the two. *Mullane*, 339 U.S. at 312. New property rights and the changes to the structure of modern day courts "have confused the old procedural classification." *Id.*

If the proceeding requires the court to issue a determination adjudicating personal rights, the court must establish personal jurisdiction over the affected parties. Due to the fact that the *in personam* or *in rem* nature of any given proceeding is no longer clear on its face, "American courts have sometimes classed certain actions as *in rem* because personal service of process was not required, and at other times have held personal service of process not required because the action was *in rem*." *Id.* In other words, the question of whether a litigant must be served with process has become a circular one.

Although there is an abundance of case law determining whether a proceeding is *in rem* or *in personam*, there is relatively little discussion of why the nature of a proceeding matters when "personal rights" are involved such that personal service is required. The reason service is

required when personal rights are adjudicated is notice to the litigant that they are subject to binding litigation in the forum jurisdiction, here the United States. The notice required by due process to alert litigants that they are subject to the court's territorial jurisdiction is the same regardless of whether the proceeding is *in rem* or *in personam*. "Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable." *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800 (1983). Liberty and property interests both require notice, so long as the would-be defendant is *known*.

While service must be reasonably calculated to notify interested parties and to give them an opportunity to object, actual notice is not required to satisfy due process. *Dusenbery v. United States*, 534 U.S. 161, 170 (2002). " "The proper inquiry is whether the [party giving notice] acted reasonably in selecting means likely to inform persons affected, not whether [the intended recipient] actually received notice." *Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988). In *Mullane*, the Supreme Court "recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." *Mullane*, 339 U.S. at 317 (citations omitted). In the bankruptcy context, "for unknown creditors whose identities or claims are not reasonably ascertainable, and for creditors who hold only conceivable, conjectural or speculative claims, constructive notice of the bar date by publication is sufficient" to satisfy due process. *In re Chateaugay Corp. Reomar, Inc.*, 2009 WL 367490, at *5 (Bankr. S.D.N.Y. Jan. 14, 2009) (citing *Barry v. L.F. Rothschild & Co. Inc. (In re L.F. Rothschild Holdings, Inc.)*, 1992 WL 200834, at *3 (S.D.N.Y. Aug. 3, 1992); *Castleman v.*

*Liquidating Trustee*, 2007 WL 2492792, at *2 (N.D.N.Y. Aug. 28, 2007); *N.Y. v. N.Y., N. Haven*

*& Hartford R.R. Co.*, 344 U.S. 293, 296 (1953); *Mullane*, 339 U.S. at 317; *Tulsa Prof'l*

*Collection Servs., Inc. v. Pope*, 485 U.S. 478, 490 (1988); *Chemetron Corp. v. Jones*, 72 F.3d

341, 348 (3d Cir.1995); *Emons Indus., Inc. v. Allen (In re Emons Indus., Inc.)*, 220 B.R. 182,

185–86 (Bankr. S.D.N.Y. 1998)).  "For creditors who are not 'reasonably ascertainable,'

publication notice can suffice. Nor is everyone who may conceivably have a claim properly

considered a creditor entitled to actual notice." *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485

U.S. 478, 490 (1988) (discussing the holding in *Mullane*, which applies equally to *in personam*

and *in rem* proceedings).

  This Court has repeatedly held that the unknown future asbestos claimants received due

process in the 1986 proceedings.  In the decision approving confirmation of the Manville Plan

and overruling the due process objections made on behalf of the future claimants by the "Equity

Interests and Kane Objectors," this Court noted it "has long been aware of the delicate and

difficult notice problems inherent in the Debtor's efforts to equitably resolve all of its asbestos-

related liabilities." *In re Johns-Manville Corp.*, 68 B.R. 618, 626 (Bankr. S.D.N.Y. 1986), *aff'd*

*sub nom. Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988) (determining that Kane, as

a present claimant, did not have standing to assert the interests of future claimants and noting

that the Future Claims Representative was more than competent to assert and protect the rights of

future claimants).  The Manville Debtors undertook a massive publicity campaign designed to

give future asbestos claimants as much notice as possible.  *See id.*

> That campaign provided, *inter alia*, for national television and radio
> advertisements, newspaper advertisements in the six leading U.S. and Canadian
> newspapers and in the largest circulation daily newspaper in each state, the District
> of Columbia and each Canadian province. This publicity campaign was designed
> to inform as many future asbestos claimants as possible of the impact of the

Manville reorganization upon whatever rights they might have against the Debtor
and give them a voice in these proceedings.

*Id.* The Court went on to find that the form of notice "clearly meets the standard set forth in

*Mullane* where notice by publication is constitutionally adequate 'to those beneficiaries whose

interests are either conjectural or future.'" *Id.* (quoting *Mullane*, 339 U.S. at 317) (further

citations omitted).

In the face of an objection to the Bankruptcy Court's jurisdiction to issue the injunction

restraining *all* claims against the settling insurers, the Second Circuit has already held that "the

Bankruptcy Court had jurisdiction over the insurance policies as property of the debtor's estate.

Moreover, the court had authority to issue the injunctive orders pursuant to its power to dispose

of a debtor's property free and clear of third-party interests and to channel such interests to the

proceeds of the disposition." *Macarthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 90 (2d Cir.

1988). On appeal to the Second Circuit, "MacArthur's primary contention on appeal is that the

Bankruptcy Court lacked jurisdiction and authority to enjoin suits against Manville's insurers."

*Id.* at 91. The Second Circuit found that this Court appropriately exercised jurisdiction to

channel all claims against the settling insures that were "related to" the Manville insurance

policies. *Id.*

Even though the Second Circuit affirmatively determined that the settling insurers were

protected from all claims "related to" the Manville insurance policies, and "[d]espite the

existence of the Insurance Settlement Order and the channeling injunction, asbestos plaintiffs

continued to file state court actions against Travelers," and other settling insurers. *Bogdan Law

Firm v. Bevan & Assocs., LPA (In re Johns-Manville Corp.)*, 2016 Bankr. LEXIS 3145, at *7

(Bankr. S.D.N.Y. Aug. 26, 2016) (citing *In re Johns-Manville Corp.*, 2004 Bankr. LEXIS 2519,

at \*48 (Bankr. S.D.N.Y. Aug. 17, 2004)).[2]  "These post-confirmation 'direct action' lawsuits against Travelers asserted so-called 'novel' legal theories in an attempt to hold the insurer directly liable for its own alleged misconduct."  *Id.* (citing *In re Johns-Manville Corp.*, 2004 Bankr. LEXIS 2519, at \*48–60).  The direct actions generally alleged that the settling insurers "had conspired with Manville to suppress evidence Manville was aware of the hazards of asbestos, and had engineered a fraudulent 'no duty to warn'" defense.  *Id.* (citing *In re Johns-Manville Corp.*, 2004 Bankr. LEXIS 2519, at \*49–56).

The direct action claims that were the subject of this Court's 2004 decision are precisely the type of claim Parra seeks to assert against Marsh.  Parra's state court complaint alleges that all of the defendants, including Marsh, "knew or should have known through industry and medical studies . . . of the health hazards . . . inherent in the asbestos-containing products."  Marsh's Mot. Enforce, Ex. E at 14, Aug. 6, 2010, ECF No. 3916-5.  Parra's state court claims against Marsh seek to hold Marsh liable for its "negligent undertakings, conspiracy, aiding, and abetting courses of conduct," to conceal the known health hazards of asbestos from the public.  *Id.* at 21. Parra alleges that Marsh "aided and abetted and conspired with Defendants . . . and other entities such as Johns Manville . . . .  [and that Parra] was exposed to asbestos from materials including, but not limited to, Johns-Manville pipe covering and Fibreboard Pabco pipe covering."  *Id.* at 12.  These allegations are substantively the same as those alleged in the proceedings before this Court initiated by Travelers in 2002, involving the alleged conspiracy of Marsh with Manville, based on Marsh's "relationship with asbestos manufacturer Johns-Manville for over forty years."  *Id.* at 26.

---

[2] For an in-depth explanation of the proceedings and this Court's decision finding jurisdiction to issue the injunction against the settling insurers please refer to

The issues Parra seeks to relitigate have been extensively litigated in front of this Court and have been ruled upon. Parra is even represented by the same counsel that represented the asbestos claimants before this Court in the prior settling insurer litigation. *See Bogdan Law Firm v. Bevan & Assocs., LPA (In re Johns-Manville Corp.)*, 2016 Bankr. LEXIS 3145 (Bankr. S.D.N.Y. Aug. 26, 2016). In 2004, this Court determined that the settling insurers were protected by the Manville injunction from "direct action" lawsuits brought by asbestos claimants seeking to hold settling insurers for their own alleged misconduct. *In re Johns-Manville Corp.*, 2004 Bankr. LEXIS 2519 (Bankr. S.D.N.Y. Aug. 17, 2004), *aff'd in part, vacated in part*, 340 B.R. 49 (S.D.N.Y. 2006), *vacated sub nom. Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.)*, 517 F.3d 52 (2d Cir. 2008), *rev'd and remanded sub nom. Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009). This Court conclusively determined, based on a full evidentiary hearing, that the direct claims of the future asbestos claimants against the settling insurers were "related to" the Manville insurance policies. This Court explicitly found that after "countless submissions and a full evidentiary hearing later, these objections have withered away and the evidence on the record and before this Court conclusively establishes that the direct action claims against Travelers are inextricably intertwined with Travelers long relationship as Manville's insurer." *In re Johns-Manville Corp.*, 2004 Bankr. LEXIS 2519, at *84. As such, these direct action lawsuits against settling insurers were covered under and barred by the original 1986 Confirmation Orders.

The Court's decision as to the settling insurers was not disturbed by the Second Circuit in its second *Chubb* decision. *See Johns-Manville Corp. v. Chubb Indemnity Ins. Co. (In re Johns-Manville Corp.)*, 600 F.3d 135 (2d Cir. 2010). Instead, the Second Circuit held that non-settling insurer Chubb, seeking indemnification and contribution from settling insurer Travelers, did not

have adequate notice regarding the treatment of its claim during the 1986 proceedings. *Id.* The Second Circuit reasoned that Chubb would have had to predict the 1986 orders would exceed the Bankruptcy Court's *in rem* jurisdiction. *Id.* at 157. The Second Circuit relied on an amendment to the settling insurer agreements that attempted to clarify that the channeling order is only intended to channel claims against the *res* to the settlement fund, and to enjoin claims against the *res* which may be asserted against the settling insurers. Based on the amendment, the Second Circuit reasoned that Chubb could not have known it was an interested party in Manville's bankruptcy or that the 1986 orders would bar its non-derivative *in personam* claims against Travelers. In other words, Chubb was not given notice sufficient to allow it to decide to opt in to the class, or opt out. *Id.* at 158. This is factually distinct from the situation now before the Court regarding Parra's claims against Marsh.

Parra would have been a future asbestos claimant at the time the 1986 Confirmation Orders were entered. Parra is now seeking to sue a settling insurer, Marsh, for alleged conspiracy with Manville and negligence in failing to warn the public. Parra is not like the non-settling insurer Chubb seeking to sue Travelers for indemnification and contribution on policy claims Chubb may be held liable for by other asbestos claimants. Instead, Parra is an asbestos claimant seeking to sue a settling insurer for claims that have been conclusively established by this Court to be sufficiently "related to" the Manville insurance policies so that Parra is enjoined by the channeling injunction in the Manville Plan and Confirmation Orders. While arguably this means that Parra's claim is in fact a claim against the *res* of the Manville bankruptcy estate, the District Court has determined that Parra's claim was actually *in personam*.

The District Court was particularly concerned with whether the Future Claims Representative appointed in the Manville bankruptcy case was actually representing the future

asbestos plaintiffs' *in personam* claims.  Whether or not Parra's claims against Marsh, as claims related to the Manville insurance policies, should actually be considered *in personam* claims is neither here nor there.

In point of fact, the Future Claims Representative was fully aware of the terms of the injunction against settling insurers and the types of claims that might be enjoined.  *See* Marsh's Supp. Mem. Ex. C, ECF No. 4277-3.  The Future Claims Representative submitted a response to the Debtor's proposed settling insurer order, questioning whether the proposed contribution amounts were reasonable given the fact that the settling insurers would be immune from liability. *See id.*  Several other parties opposed the order as well, arguing that the injunction would bar any suit against the settling insurers based upon the insurers' knowledge regarding the hazards of asbestos, whether or not it had any connection to the Manville Debtors.  *See* Marsh's Supp. Mem. 8, Ex. L at 5, 12, Ex. M at 5, 11.  Given the extensive litigation on this matter and the fact that the Future Claims Representative was clearly aware of the consequences of such an order and the rights of the future claimants he was appointed to represent would also be affected by such an injunction, this Court cannot conclude that future asbestos claimants such as Parra seeking to sue settling insurers did not receive constitutionally sufficient "notice" to present all their objections.  The very same objections Parra seeks to make now have been heard by this Court before and conclusively determined.  Future asbestos' rights, including whatever *in personam* rights they may have had, were addressed and considered by the Future Claims Representative who considered the proposed order to enjoin actions against the settling insurers.

## CLASS ACTION STANDARDS

The Second Circuit, on remand from the Supreme Court, held in *Chubb* that "because the 1986 Orders purport to bind Chubb's *in personam* claims, the better due process analogy in

terms of notice and representation principles is to class action settlements, not *in rem* bankruptcy

proceedings." *Chubb II*, 600 F.3d at 154.  Those due process principles have already been

considered by the Second Circuit when it approved a Rule 23 class action settlement with the

Manville Trust that treats all present and future asbestos claimants as non-opt-out class members

under Rule 23(b)(1)(B).  *In re Joint E. & S. Dist. Asbestos Litig.*, 982 F.2d 721, 739 (2d Cir.

1992); *In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d 764, 778 (2d Cir. 1996) (citations

omitted).

The Manville Trust, the surviving entity that emerged from Manville's bankruptcy to

ensure a recovery for all asbestos claimants, continued to pay claims until the payment

mechanism in place led to serious and systemic depletion of the available Trust funds.  *In re

Joint E. & S. Dist. Asbestos Litig.*, 129 B.R. 710, 732 (E.D.N.Y. 1991).  In response to the crisis,

the Manville Trust and a group of would-be plaintiffs filed a class action case, seeking an

amendment to the Trust's distribution procedures before the joint District Courts for the

Southern and Eastern Districts of New York.  *See id.* at 733.  Bankruptcy Judge Burton Lifland

was also involved in the multi-district litigation involving the Manville Trust class action

settlement.  *See generally id.*

On February 13, 1991, the joint district courts "entered an order and partial judgment that

certified a non-opt-out class pursuant to Rule 23(b)(1)(B) consisting of all beneficiaries each of

whom has or will have a claim either for death or personal injury caused by exposure to asbestos,

or a claim for warranty, guarantee, indemnification or contribution arising from an obligation of

the Trust for the payment of a death or personal injury claim." *In re Joint E & S Dist. Asbestos

Litig.*, 129 B.R. 710, 776 (E.D.N.Y. 1991).  The settlement specified that it is "is binding on the

class that consists of all beneficiaries of the Trust who now have or in the future may have (a)

any unliquidated claims for death or injury resulting from exposure to Manville asbestos, (b) any warranty, guarantee, indemnification, or contribution claims against the Trust arising from exposure to asbestos by any class member, and (c) settlements or judgments arising from any of the foregoing claims.  Trust beneficiaries include those with death or personal injury claims arising from exposure to Manville asbestos prior to the confirmation date." *In re JOINT E. & S. Dist. ASBESTOS Litig.*, 982 F.2d 721, 729 (2d Cir. 1992) (citations omitted).

After the District Court approved the terms of the Manville Trust settlement, the Second Circuit addressed and overruled an objection by the D.C. Plaintiffs made on behalf of the asbestos claimants who had filed or would filed claims for asbestos related injuries in the District of Columbia. *In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d at 777.  According to the Second Circuit, "The D.C. Plaintiffs prefer not to be bound by the Settlement because it will cost them the opportunity under District of Columbia law to recover fully from defendants other than the Trust," and that due process required them to be allowed to opt out of the class.  *Id.*  The Second Circuit reasoned that "whether a given group of plaintiffs should be allowed to opt out of a settlement of this litigation would depend on whether they received the protections accorded by Fed. R. Civ. P. 23." *Id.* at 778.  "In the present case, the D.C. Plaintiffs have not suggested that counsel or the class representatives lacked the requisite qualifications to represent them in particular or the Plaintiff Class in general, or that class counsel neglected their duties toward their clients.  Nor does the record suggest that any such contention would be meritorious." *Id.* The Second Circuit determined that the present and future claimants had been fairly and adequately represented under Rule 23 standards, and affirmed the District Court's denial of their motion to opt-out.  *See id.* at 778–79.  Any beneficiary under the Manville trust is a member of the non-opt out class.

The settlement proceeding was brought as a Rule 23 Class Action.  The joint Courts

ultimately approved a non-opt out class of plaintiffs including present and future asbestos

plaintiffs.  The Trust Distribution Procedures were amended to limit the right to sue the Manville

Trust, and to give the Manville Trust more control over the distribution process.  *In re Joint E. &*

*S. Dist. Asbestos Litig.*, 129 B.R. 710, 771 (E.D.N.Y. 1991).  The Second Circuit approved the

no-opt out class under Rule 23.  *In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d 764, 780 (2d

Cir. 1996).  All future asbestos plaintiffs are bound to the class.  *See id.* at 777–79.  The

Confirmation Order and Plan were undisturbed.  The only thing amended was how the Manville

Trust is permitted to deal with and payout on asbestos claims according to its Trust Distribution

Procedures.

Parra and Marsh agree that Parra could recover from the Manville Trust.  Bogdan's Br.

Prejudice 12, ECF No. 4274; Marsh's Supp. Mem. 14, Ex. K at 4.  As such, Parra is a

beneficiary under the Manville Trust, and would be bound by the terms of the TDP, which

channel all asbestos related claims to the Manville Trust.  *In re Joint E. & S. Districts Asbestos*

*Litig. v. Falise*, 878 F. Supp. 473, 573 (S.D.N.Y. and E.D.N.Y. 1995), *aff'd in part and vacated*

*in part sub nom.*, *In re Joint E. & S. Districts Asbestos Litig.*, 78 F.3d 764, 774 (2d Cir. 1996)

(finding "error only in the Trial Courts' refusal to decide which set-off rules are to be applied in

Maryland cases.").

As such, a due process Rule 23 inquiry brings all members of the non-opt out asbestos

plaintiff class right back to the 1986 channeling injunction in the Confirmation Order.  As a

beneficiary of the Trust, there is no escape from the Rule 23 class, which is enjoined by both the

original channeling injunction and the additional injunctions in the TDP.  Thus, there is no

prejudice for any would-be beneficiary of the Trust, as they are part of a non-opt out Rule 23

class and subject to the injunction contained in the TDP, as well as the channeling injunction.

Though the Rule 23 class action took place, the existence of the Rule 23 class action amending

the terms of the TDP does not override the prior bankruptcy proceedings that took place, the

1986 Confirmation Orders, or the due process considerations that were undertaken when the

Manville Plan was confirmed.

Even if the heightened due process standard under a Rule 23 class action did apply to the

bankruptcy proceedings that occurred in 1986, "[c]ourts have consistently recognized that, even

in Rule 23(b)(3) class actions, due process does not require that class members actually receive

notice." *Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012) (citing *Silber v. Mabon*, 18

F.3d 1449, 1453–54 (9th Cir. 1994); *Adams v. S. Farm Bureau Life Ins. Co.*, 417 F. Supp. 2d

1373, 1380 n.6 (M.D. Ga. 2006), *aff'd*, 493 F.3d 1276 (11th Cir. 2007); *In re Prudential Sec. Inc.*

*Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996), *aff'd*, 107 F.3d 3 (2d Cir. 1996); *Trist*

*v. First Fed. Sav. & Loan Ass'n of Chester*, 89 F.R.D. 1, 2 (E.D. Pa. 1980); 4 William B.

Rubenstein et al., Newberg on Class Actions § 11:53 (4th ed. 2011); 7AA Charles Alan Wright

et al., Federal Practice & Procedure § 1789.1 (3d ed. 2005)).  The Second Circuit has held that

"Rule 23(c)(2) requires only that members of a Rule 23(b)(3) class be given 'the best notice

practicable under the circumstances, including individual notice to all members who can be

identified through reasonable effort.'"  *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145,

168 (2d Cir. 1987).  In the Second Circuit's *In re "Agent Orange"* decision, the court did an in

depth analysis of *Mullane* and the permissibility of publication notice where interested parties

were unknown to the trustee.  The Second Circuit interpreted the Supreme Court's holding in

*Mullane* as finding that "notice by publication was permissible as to persons whose whereabouts

or interests could not be determined through due diligence or whose interests were either

conjectural or future." *Id.* (citing *Mullane*, 339 U.S. at 317–18).

## PREJUDICE

Prejudice in the due process context occurs "'when it is shown that an abridgment of due

process is likely to have affected the outcome of the proceedings.'" *Amouri v. Holder*, 572 F.3d

29, 36 (1st Cir. 2009) (citing *Pulisir v. Mukasey*, 524 F.3d 302, 308 (1st Cir. 2008)).  For

prejudice, "the relevant inquiry is whether courts can be confident in the reliability of prior

proceedings when there has been a procedural defect.  In considering reliability, '[t]he entire

record must be considered and the probable effect of the error determined in the light of all the

evidence.'"   *Elliott v. GM LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 162 (2d Cir. 2016)

(citing *Lane Hollow Coal Co. v. Dir., Office of Workers' Compensation Programs*, 137 F.3d

799, 808 (4th Cir. 1998); *Rose v. Clark*, 478 U.S. 570, 577-78 (1986)) (further citations omitted).

On remand, the question for this Court is whether assuming there was some sort of due

process violation, is Parra prejudiced, taking into consideration the fact that he can recover from

the Manville Trust.  The answer is clearly **no**.  This Court can find no procedural defect that

would warrant a different outcome.  Beyond the requirements of due process, and under the

heightened Rule 23 standard, Parra was represented by the Future Claims Representative.  The

very objections Parra seeks to make now have been raised, repeatedly, and were explicitly

considered by the Future Claims Representative prior to confirmation of the Manville Plan.  The

benefit of over 30 years of hindsight and the diminishing memory of the proceedings had in the

Manville case are not an excuse to retry and replead all of the issues that were previously tried

and resolved before the Court.  The Future Claims Representative knew the settling insurers

would be immune from suit regarding any claims "related to" the Manville insurance policies.

To fall within the scope of the 1986 Confirmation Order and channeling injunction, Parra's claims against Marsh have to be "related to" the Manville insurance policies. The Future Claims Representative must have considered that his own clients, the future asbestos claimants, would also be barred from bringing suits "related to" the Manville insurance policies.

Parra argues that even if he recovers from the Manville Trust, he will be prejudiced by a deprivation of his right to pursue independent claims against Marsh. Bogdan's Br. Prejudice 3. Parra argues that deprivation of the right to sue Marsh amounts to a due process violation of service of process, claiming he was deprived of notice and the right to be heard. *Id.* at 4–6. Parra also claims he is deprived of due process on the grounds the injunction unjustly limits the amount he can recover for his injuries. *Id.* at 9–10. Due process does not preserve for time immemorial the right to assert a claim against another individual. This cannot be so or the fundamental discharge injunction in every bankruptcy case would be a due process violation. Additionally, any statute of limitations would amount to a due process violation.

The injunction does not violate Parra's due process rights to notice and an opportunity to be heard. As this Court has already determined, the Manville bankruptcy proceedings satisfied Parra's due process rights to notice and an opportunity to object. Parra was adequately represented by the Future Claims Representative who took into consideration the effect of the settling insurers' order and injunction on the rights of the future claimants.

Further, the injunction does not violate due process by limiting the amount Parra is able to recover on his injury claims. Parra does not have a due process right to recover more than is available for distribution. The <u>only</u> reason there is anything to recover for any asbestos plaintiff is the existence of the Manville Trust. The Manville Trust's purpose is to ensure there are funds available for all claimants.

The importance of the contribution and settlement of insurers cannot be overstated. The breadth of the problem is so vast—that even 35 years after this case was first filed the Court continues to deal with the aftermath. The only reason Parra has an ability to come to this Court and assert any rights at all against a settling insurer is because this Court created the Manville Trust. That Trust did two things at once: it put money aside for future claimants like Parra so that they would have some recovery instead of none; and it allowed businesses, like Marsh, to continue to operate and not have to shutter their windows. The irony here is that but for the Manville Trust's existence, Parra may have no one to sue at all. If Marsh and all of the other third-party insurers had not settled, Parra may have been left to cover the full cost of his disease entirely on his own. The FCR and the Court knew this and spent countless years—nay decades—working hard to protect Parra specifically, and all future claimants generally. The Manville Trust is the only remedy for Parra; and that there is any remedy for him at all is nothing short of a miracle.

While Parra may not recover as much from the Manville Trust as he would like, it would be unfair to allow him to recover more than other similarly situated claimants. It would also be unfair to permit recovery against a settling insurer in a way that could jeopardize the continuing existence of the Manville Trust, thus, preventing recovery for the dozens, hundreds, or thousands of additional future claimants still yet unknown. As there is no dispute that Parra could submit a claim to the Manville Trust, pursuant to the District Court's questions on remand, this Court finds that Parra does not suffer any prejudice since he is able to recover from the Manville Trust. Parra received due process in every possible respect.

## <u>Conclusion</u>

For the foregoing reasons, Marsh' motion to enforce the injunction is granted. The Court

will issue a separate order in conformity with this opinion.



**Dated: January 24, 2018**
        **Poughkeepsie, New York**

/s/ **Cecelia G. Morris**
_____
**Hon. Cecelia G. Morris**
**Chief U.S. Bankruptcy Judge**