*FOR PUBLICATION*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------x

*In re:*
:
:    Chapter 11
Johns-Manville Corporation Et. Al.,    :    Case No. 82-11656 (CGM)
:
*Debtor.*

-------------------------------------------------x

# MEMORANDUM DECISION GRANTING MARSH USA, INC.'S MOTION FOR CONTEMPT

## A P P E A R A N C E S :

*Attorneys for Marsh USA, Inc.*
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
By:   John L. Brennan

WILLKIE FARR & GALLAGHER LLP
1875 K Street N.W.
Washington, D.C. 20006
By:   Joseph G. Davis (admitted *pro hac vice*)

JACKSON WALKER LLP
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
By:   John A. Koepke (admitted *pro hac vice*)

*Attorney for Parra*
DUFFY AMEDEO LLP
132 W. 31st Street, 9th Floor
New York, NY 10001

By:    Todd E. Duffy
       Douglas A. Amedeo

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

## Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a); 28 U.S.C. § 157(a); the Standing Order of Reference signed by Chief Judge Loretta A. Preska dated January 31, 2012; *In re Petrie Retail, Inc.*, 304 F.3d 223 (2d Cir. 2002) ("A bankruptcy court retains post-confirmation jurisdiction to . . . enforce its own orders."); and the Order Approving Settlement of the Statutory, Hawaii and Common Law Direct Actions and Clarifying Confirmation Order, Including Ins. Settlement Order and Channeling Injunction, No. 82-11656, ECF No. 3751 ("[T]his Court retains jurisdiction to enforce this Order and to determine any and all disputes arising under this Order.").

This is a "core proceeding" under 28 U.S.C. § 157(b)(2).

## Background

The Court assumes familiarity with the Johns-Manville bankruptcy and does not intend to cover all events that transpired in the Johns-Manville bankruptcy case over forty-three years. The following background is only intended to highlight particular facts and events of relevance to this decision.

On August 26, 1982, Johns-Manville Corporation and related entities (collectively, "Manville") filed a Chapter 11 petition with this Court. *In re* Johns-Manville Corp., 36 B.R. 727, 729 (Bankr. S.D.N.Y. 1984); *see also In re* Johns-Manville Corp., 534 B.R. 553, 556 (Bankr. S.D.N.Y. 2015), *aff'd in part, rev'd in part*, 551 B.R. 104 (S.D.N.Y. 2016). In light of the volume of anticipated future asbestos-related claims, the Court appointed a legal representative for future asbestos claimants in 1991 (the "FCR"). *See, e.g.*, *In re Johns-Manville Corp.*, 36 B.R. at 741 (Bankr. S.D.N.Y. 1984); *see also* Letter from Leslie Gordon Fagen, FCR, to the Court (Jan. 23, 2019), No. 82-11656, ECF No. 4349.

Manville, its insurers, insurance brokers (including Marsh)[1], and the FCR reached a global resolution and entered into a series of settlement agreements, culminating in Manville's Second Amended Restated Plan of Reorganization (the "Plan"). Pursuant to these settlement agreements and the Plan, Manville's insurers and insurance brokers paid into a trust for the benefit of asbestos personal injury claimants (the "Manville Trust"), with Marsh paying $29.76 million. The agreements and the Plan provided that insurers and brokers who paid into the Manville Trust "would be relieved of all obligations related to [their insurance of

---

[1] "Marsh" collectively refers to Marsh U.S.A., Inc., individually and as successor-in-interest to Marsh & McLennan, Inc.; Marsh USA, Inc., a Mississippi Corporation; Marsh USA, Inc., a Louisiana Corporation; Marsh USA, Inc., a Texas Corporation; Marsh USA Agency, Inc., a Texas Corporation; Marsh & McLennan of Delaware, Inc.; Marsh & McLennan of Dallas, Inc.; Houseman & Company, Inc.; J&H Marsh & McLennan, Inc.; J&H M&M ELC, Inc.; and Marsh USA Risk Services, Inc. Marsh was Manville's insurance broker but is often described as an "insurer" in various filings.

Manville]" and "would be protected from claims based on such obligations by injunctive orders of" this Court. *In re Johns-Manville Corp.*, 534 B.R. at 557 (citation omitted).

On December 18, 1986, this Court approved the settlement agreements, and on December 22, 1986, this Court confirmed Manville's Plan (together, the "1986 Orders"). *See In re* Johns-Manville Corp., 68 B.R. 618, 638 (Bankr. S.D.N.Y. 1986), *aff'd*, 78 B.R. 407 (S.D.N.Y. 1987); *In re Johns-Manville Corp.*, 534 B.R. at 557. The 1986 Orders include an injunction (the "Channeling Injunction") channeling all existing and future asbestos claims to the Manville Trust.  The 1986 Orders also include a release of Manville, its insurers, and its insurance brokers—including Marsh—from all such claims.   The 1986 Orders approving the settlement agreements and confirming the Plan became final and non-appealable in 1988. *See* MacArthur Co. v. Johns-Manville, 837 F.2d 89, 94 (2d Cir. 1988) (affirming Insurance Settlement Order); Kane v. Johns-Manville Corp., 843 F.2d 636, 648–50 (2d Cir. 1988) (affirming Confirmation Order); *see also* Travelers Indem. Co. v. Bailey, 557 U.S. 137, 148 (2009) ("[T]he 1986 Order became final on direct review over two decades ago . . . .").

Despite the finality of the 1986 Orders and Channeling Injunction, asbestos plaintiffs continued to file state court litigation against the insurers themselves over the next two decades.  *See In re* Johns-Manville Corp., 319 F. Supp. 3d 633, 636

(S.D.N.Y. 2018).  On June 19, 2002, one Manville insurer, Travelers,[2] filed its first order to show cause in this Court seeking to enforce the 1986 Orders and to enjoin certain direct action asbestos lawsuits that had been filed against Travelers in various state courts.  *See* Mem. Law Supp. Order to Show Cause, No. 82-11656, ECF No. 3413.

On August 17, 2004, this Court entered a clarifying order (the "Clarifying Order") explaining that such "direct actions" against insurers were and "always ha[d] been—permanently barred."  *See In re* Johns-Manville Corp., 2004 WL 1876046, at *30 (Bankr. S.D.N.Y. Aug. 17, 2004); Order Approving Settlement of the Statutory, Hawaii and Common Law Direct Actions and Clarifying Confirmation Order, Including Ins. Settlement Order and Channeling Injunction, No. 82-11656, ECF No. 3751.

---

[2] "Travelers" refers to The Travelers Indemnity Company, Travelers Casualty and Surety Company, Travelers Property Casualty Corp., Citigroup Inc., The Travelers Insurance Company, Travelers Life and Annuity Company, and each of their respective direct or indirect parents, subsidiaries and sister companies (i.e., entities that are directly or indirectly owned or controlled by a common parent or holding company), as well as each of their respective predecessors, successors, assigns, officers and directors. (All of the foregoing collectively referred to as "Travelers Entities"). Travelers shall also include future parents, subsidiaries and sister companies of the Travelers Entities (or successors of any of the foregoing), provided, however, that nothing in this definition shall be construed to include The St. Paul Companies or any other company first acquiring, acquired by or merging with any of the Travelers Entities on or after November 19, 2003 for liability for such Entity's own conduct and not for conduct relating to or arising from acts, omissions, conduct or issuance of insurance by any of the Travelers Entities. Travelers shall also include past parents, subsidiaries or sister companies of any of the Travelers Entities (or successors of any of the foregoing), provided however that nothing in this definition shall be construed to include any such past parent, subsidiary or sister company that no longer is a parent, subsidiary or sister company of any of the Travelers Entities as of November 19, 2003 for its own conduct after its ownership of or by or affiliation with any of the Travelers Entities ended and not relating to or arising from acts, omissions, conduct or issuance of insurance by any of the Travelers Entities. By way of example, Travelers shall not include Aetna Inc., or any of its predecessors in interest, for their own conduct post-dating April 1996 relating to or arising from acts, omissions, conduct or issuance of insurance and not relating to or arising from acts, omissions, conduct or issuance of insurance by any of the Travelers Entities. *See* Order Approving Settlement of the Statutory, Hawaii and Common Law Direct Actions and Clarifying Confirmation Order, Including Ins. Settlement Order and Channeling Injunction, No. 82-11656, ECF No. 3751.

The Clarifying Order did not stop asbestos plaintiffs from challenging the 1986 Orders and filing direct actions against insurers themselves and the issue eventually made its way to the Supreme Court.  On June 18, 2009, in a definitive 7-2 decision affirming this Court, the Supreme Court held that the 1986 Orders prohibit direct actions against the settling insurers (which would include Marsh). *See* Travelers Indem. Co. v. Bailey, 557 U.S. 137 (2009).  The Supreme Court found that the Clarifying Order was a correct reading of the 1986 Orders, thereby making the Clarifying Order final. *See Bailey*, 557 U.S. at 151.

On May 11, 2009, shortly before the Supreme Court issued its ruling in *Bailey*, Parra[3] filed suit against Marsh and others in Jones County, Mississippi, Civil Action No. 2009-42-cv5 (the "Mississippi Action"). *See* Declaration of Joseph G. Davis ("Davis Decl."), Ex. 17.  The operative complaint (the "Parra Complaint"), dated February 10, 2010, alleges that Salvador Parra, Jr. was exposed to asbestos at jobsites in Mississippi between 1968 and 1969, and suffered physical and mental injuries as a result of that exposure.  The Parra Complaint alleges that defendants in the Mississippi Action, several of whom mined, designed, evaluated, manufactured, packaged, furnished, supplied and/or sold products that contained asbestos, failed to

---

[3] "Parra" collectively refers to Peggy Parra as Representative of Estate of Salvador Parra, Jr., and Parra's counsel, Eric Bodgan, David Shelton, and John S. Grant IV.

disclose the risks of asbestos and conspired with others or each other in order to sell asbestos and avoid litigation by those who were injured from asbestos inhalation.

On August 6, 2010, Marsh moved this Court to enforce the Channeling Injunction on the grounds that the claims brought against Marsh in the Parra Complaint were barred by the 1986 Orders. *See* Mot. for Order Enforcing Confirmation Order and Related Orders, No. 82-11656, ECF No. 3915. This Court then held not once, but **twice**, that the 1986 Orders barred Parra's claims against Marsh as alleged in the Parra Complaint.

First, on July 27, 2015, this Court held that the 1986 Orders barred Parra's claims against Marsh as alleged in the Mississippi Action. *See In re* Johns-Manville Corp., 534 B.R. 553, 563 (Bankr. S.D.N.Y. 2015). In its decision (the "July 2015 Opinion"), the Court found that the 1986 Orders, which barred Parra's claims against Marsh, did not violate Parra's due process rights. *See id.* at 566. On August 5, 2015, this Court issued an order (the "August 2015 Order" and together with the July 2015 Opinion, the "2015 Enforcement Order") directing that "Plaintiff and his counsel are hereby enjoined from prosecuting the claims asserted against Marsh as alleged in the Complaint in the [Mississippi] Action." Order Enforcing the Johns-Manville Confirmation Order and Related Orders, No. 82-11656, ECF No. 4173.

In the July 2015 Opinion, this Court made clear it "is not without means to ensure compliance with the 1986 Orders" and emphasized that it "may punish parties

who violate its injunctions with contempt." *In re Johns-Manville*, 534 B.R. at 569

n.6.  The Court warned that "further violations of the orders may result in a finding

of contempt and the imposition of sanctions on parties and their attorneys," including

attorneys' fees.  *Id.*  This Court also cautioned Parra against "attempt[ing] to plead

around this Court's injunctive orders" by merely "excis[ing] any references to

Manville."  *Id.* at 568.   The Court explained that such tactics could result in a

contempt finding.  *Id.*

The Bogdan Law Firm appealed 2015 Enforcement Order and on March 14,

2016, the District Court affirmed this Court's ruling that the claims against Marsh in

the Mississippi Action are within the scope of the 1986 Orders but reversed and

remanded on the question of whether the 1986 Orders violated Parra's due process

rights.  *In re Johns-Manville Corp.*, 551 B.R. 104 (S.D.N.Y. 2016).

On January 24, 2018, on remand from the District Court, this Court held that

the 1986 Orders did not violate Parra's due process rights and reaffirmed an earlier

holding that Parra's claims in the Mississippi Action are "sufficiently 'related to' the

[Manville] insurance policies so that [Parra] [i]s enjoined by the channeling

injunction . . . ." *In re* Johns-Manville Corp., 581 B.R. 38, 54 (Bankr. S.D.N.Y. Jan.

14, 2018), *rev'd and remanded*, 319 F. Supp. 3d 633 (S.D.N.Y. 2018), *rev'd*, 802 F.

App'x 20 (2d Cir. 2020).   In the Court's accompanying order (the "January 2018

Order"), the Court once again ordered that "Parra is enjoined and channeled by this

Court's Confirmation Order and Injunction" and that "Parra's only source of recovery is the Manville Trust." Order Enforcing the Confirmation Order and Injunction, No. 82-11656, ECF No. 4312.

On February 1, 2018, the Bogdan Law Firm appealed the January 2018 Order to the District Court. *See In re* Johns-Manville Corp., 319 F. Supp. 3d 633, 638–39 (S.D.N.Y. 2018), *rev'd*, 802 F. App'x 20 (2d Cir. 2020). On July 27, 2018, the District Court reversed the January 2018 Order, reasoning that the FCR did not adequately represent certain of Parra's interests. *Id.* at 642–44. Marsh appealed the District Court's holdings concerning due process, and on February 19, 2020, the Second Circuit reversed. *See In re* Johns-Manville Corp., 802 F. App'x. 20 (2d Cir. 2020).

In its decision, the Second Circuit reaffirmed the scope of the Channeling Injunction and the applicability of the 1986 Orders to Parra's claims in the Mississippi Action, stating: "The 1986 Orders channel all Johns-Manville-related claims against settling insurers and insurance brokers (including Marsh) (collectively, the "Settling Insurers") into the Manville Trust— whether those claims arise from the Settling Insurers' contractual obligation to cover Johns-Manville's liability (*in rem* claims) or from their own conduct "based upon, arising out of or relating to" that coverage (*in personam* claims)." *In re Johns-Manville Corp.*, 802 F. App'x. at 23 (quoting *Bailey*, 557 U.S. at 148–51). On March 5, 2020, Parra filed

a petition for panel rehearing, or, in the alternative, for rehearing *en banc*, which the Second Circuit denied on April 10, 2020. *See In re* JohnsManville Corp., No. 18-2539 (2d Cir. 2020), *reh'g den.*, No. 18-2539 (2d Cir. Apr. 10, 2020), ECF No. 122. In the roughly four years and ten months since the Second Circuit issued its final decision in 2020, Parra has taken no steps to comply with this Court's orders. Instead, Parra has repeatedly pursued claims against Marsh in Mississippi courts and continuously asserted that Marsh is still a defendant under the Parra Complaint.

In January 2021, certain defendants in the pending Mississippi Action moved to dismiss the Parra Complaint for lack of prosecution (the "Mississippi Motion to Dismiss"). Marsh filed a reply to the Mississippi Motion to Dismiss on March 1, 2021, alleging that all of Parra's claims against Marsh have been permanently enjoined. *See* Davis Decl., Ex. 5. A hearing on the Mississippi Motion to Dismiss was held on March 22, 2021 (the "March 2021 Hearing"). At the March 2021 Hearing, the presiding judge acknowledged that the "only recovery against Marsh was to some trust fund," that Parra "couldn't go any further against Marsh in this action," and that "Marsh at this point is out [of the case] insofar as this Court is concerned[.]" Davis Decl., Ex. 14 at 23:09–13, 53:12–13. In response, Parra[4] asserted that Marsh was "still in the case." *Id.* at 53:21–22. The court then pointed

---

[4] David Shelton made the assertion that Marsh was "still in the case" and Eric Bogdan made the assertion that Parra was "still seeking" relief from Marsh as "successor and [sic] interest to other entities." *See* Davis Decl., Ex. 14.

out that "the Second Circuit Court of Appeals had ruled that [Parra] could not pursue [Marsh] except to the Manville Trust." *Id.* at 53:23-25. Parra responded that "[a]s to Marsh, as to Mr. Parra, that's correct" but that Parra was "still seeking" relief from Marsh as a "successor and [sic] interest to other entities." *Id.* at 54:04–08.

On June 4, 2021, the trial court granted the Mississippi Motion to Dismiss and dismissed the Mississippi Action in its entirety, with prejudice.  In so holding, the court stated, among other things, that there was "a clear record of dilatory conduct by [Parra]." *See* Davis Decl., Ex. 3 at 2–4.  On June 14, 2021, Parra filed a motion for reconsideration of the June 4, 2021 dismissal order (the "Motion for Reconsideration")[5]. On September 18, 2023, the trial court denied the Motion for Reconsideration, stating that the "egregiously protracted delay of [Parra] in timely pursuing her claims . . . has no doubt resulted in prejudice." Davis Decl., Ex. 7 at 2.

On October 13, 2023, Parra appealed the dismissal and denial of the Motion for Reconsideration as to all defendants—including Marsh—to the Mississippi Supreme Court (the "Parra Appeal" and the accompany brief, the "Appellate Brief").[6] *See* Davis Decl., Ex. 8.  In August 2024, Marsh's counsel exchanged letters with Parra's counsel in an attempt to resolve the matter out of court.  An August 12, 2024 letter from Marsh's counsel to Parra's counsel warned that if "you and your client continue

---

[5] The Motion for Reconsideration was filed by David Shelton and Eric Bogdan.  *See* David Decl., Ex. 6.
[6] The Parra Appeal was signed by John S. Grant IV, David Shelton, and Eric Bogdan, who were listed as "Attorneys for Peggy Parra, Representative of the Estate of Salvador Parra." *See* Davis Decl., Ex. 8 at 2.

to violate the 1986 and 2018 Orders, Marsh intends to bring this matter to the attention of the Bankruptcy Court, again, and request that the Bankruptcy Court find both you and your client in contempt." *See* Davis Decl., Ex. 12 at 2. The August 12 letter also highlights the Court's previous warning that non-compliance with the 1986 Orders would lead to sanctions. *See id.* In a responsive letter dated August 20, 2024 from Parra's counsel to Marsh's counsel, Parra explains it is "well aware of the 1986 and 2018 Orders," was "on record before the Mississippi trial court that [Parra] understands the consequences of the 1986 and 2018 Orders," and that "Parra's intent [wa]s in no way to seek to reinstate claims against Marsh, but to pursue his claims against other defendants." *See id.*

On September 12, 2024, John S. Grant IV, on behalf of Parra, filed a "clarification" in Mississippi Supreme Court, claiming Parra "potentially can recover against Marsh USA, Inc. as a successor in interest to other companies acquired after the 1986 Order, and in this respect and this respect only is not bound by the 1986 Order or the Second Circuit ruling." Davis Decl., Ex. 16 (the "Clarification") at 3. The Clarification does not identify the "other companies" or the basis for any such claims, and does not purport to withdraw, correct, or otherwise modify any specific statements or arguments Parra made in the Appellate Brief but merely "withdraws any such statement" "[t]o the extent anything . . . could be

construed as a violation of the New York Bankruptcy Court's rulings or the Second Circuit's rulings." *Id.* at 4.

As prospects of an out-of-court resolution with Parra dwindled following the filing of the Clarification, Marsh (the "Petitioner") filed a Motion for Contempt (the "Motion") in this Court on September 23, 2024, seeking to hold Parra and Parra's counsel (collectively, the "Respondents") in civil contempt for violating the 1986 Orders, the 2015 Enforcement Order, and the January 2018 Order, through continued pursuit of claims against Marsh in the Mississippi Action via the Motion for Reconsideration and Parra Appeal. *See* Pet'rs Mot. For Contempt, No. 82-11656, ECF No. 4431. On October 7, 2024, Respondents filed an opposition brief to the Motion (the "Initial Opposition Brief") and on October 23, 2024, a hearing was held at the United States Bankruptcy Court, Southern District of New York, at 9:35 a.m. (prevailing Eastern time). *See* Resp'ts Opposition Brief, No. 82-11656, ECF No. 4437; Transcript of Hearing Held on 10/23/24, No. 82-11656, ECF No. 4448. The Honorable Cecelia G. Morris presided over the hearing and ordered the parties to file supplemental briefs, which Petitioner and Respondent filed on November 22, 2024. *See* Supplemental Brief in Support of Pet'rs Mot. For Contempt, No. 82-11656, ECF No. 4449; Supplemental Opposition Brief in Support of Resp'ts Opposition Brief, No. 82-11656, ECF No. 4450.

## Discussion

### I.    Contempt of Court

The Court must consider whether the Respondents should be held in contempt of court for violating the 1986 Orders, including the Channeling Injunction, the 2015 Enforcement Order, and the January 2018 Order. A court injunction combined with 11 U.S.C. § 105(a) provides the basis for a bankruptcy court's civil contempt power. *PHH Mortg. Corp. v. Sensenich* (*In re Gravel*), 6 F.4th 503, 512 (2d Cir. 2021) (citing *Taggart v. Lorenz*, 139 S. Ct. 1795, 1801 (2019)). 11 U.S.C. § 105(a) states that "the [bankruptcy] court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." This statutory power follows the tradition of federal courts imposing civil contempt sanctions to correct non-compliance with their injunctions. *Taggart*, 139 S. Ct. at 1801.

To determine whether parties should be held in contempt for violating a court order, "a court must find that (i) the order the party failed to comply with is clear and unambiguous, (ii) the proof of noncompliance is clear and convincing, and (iii) the party has not diligently attempted to comply in a reasonable manner." *Rushmore Loan Mgmt. Servs., L.L.C. v. Hosking* (*In re Hosking*), 2016 U.S. Dist. LEXIS 3492, at *15 (S.D.N.Y. January 11, 2016). "In the context of civil contempt, the clear and convincing standard requires a quantum of proof adequate to demonstrate 'reasonable certainty' that a violation occurred." *In re* Chief Exec. Officers Clubs,

359 B.R. 527, 535 (2d Cir. 1995). Courts should only resort to civil contempt if there is no "fair ground of doubt" about a party's wrongful conduct. *Taggart*, 139 S. Ct. at 1801.  The standard is an objective one: A party's "subjective belief that she was complying with an order ordinarily will not insulate her from civil contempt if that belief was objectively unreasonable." *Id.* at 1797.

### A. The 2015 Enforcement Order and January 2018 Order are Clear and Unambiguous.

The 2015 Enforcement Order and January 2018 Order must be clear and unambiguous to hold Parra and Parra's counsel in contempt of court for violating them. *Rushmore*, 2016 U.S. Dist. LEXIS 3492 at *15. The 2015 Enforcement Order provided the following terms:

> **ORDERED** that Marsh's Motion is hereby GRANTED; and it is further
>
> **ORDERED**, that the December 22, 1986 Order Confirming Debtors' Second Amended and Restated Plan of Reorganization and related orders ("1986 Orders") entered in the above-captioned cases are binding with respect to plaintiff in the Parra Action as defined in Marsh's Motion; and it is further
>
> **ORDERED**, that the claims asserted against Marsh as alleged in the Complaint in the Parra Action constitute "Marsh Claims," as defined in the December 18, 1986 Order approving the settlement agreements among Johns-Manville and the settling insurers; and it is further
>
> **ORDERED**, that Plaintiff and his counsel are hereby enjoined from prosecuting the claims asserted against Marsh *as alleged* in the Complaint in the Parra Action.

Order Enforcing the Johns-Manville Confirmation Order and Related Orders ¶¶ 3-6, ECF No. 4173. The 2015 Enforcement Order plainly states that Parra and Parra's counsel are enjoined from continuing to pursue the claims asserted against Marsh in the Mississippi Action. The 2015 Enforcement Order incorporates the terms of the 1986 Orders and makes them binding on Parra and Parra's counsel. The 2015 Enforcement Order is clear and unambiguous. At the October 23, 2024 hearing, the Court observed that the 2015 Enforcement Order was "clear and unambiguous." Transcript of Oral Argument at 12:7, ECF No. 4448.

The January 2018 Order reaffirmed this directive. The January 2018 Order provided the following terms:

> **ORDERED** that Marsh' motion to enforce the injunction is granted; and it is further
>
> **ORDERED**, that Parra is enjoined and channeled by this Court's Confirmation Order and Injunction; and it is further
>
> **ORDERED**, that Parra's only source of recovery is the Manville Trust.

Order Enforcing the Confirmation Order and Injunction ¶¶ 3-5, ECF No. 4312. The January 2018 Order plainly states that Parra's only source of recovery is the Manville Trust. The January 2018 Order is clear and unambiguous.

**B. Respondents' Failure to Comply with the 1986 Orders, 2015 Enforcement Order, and January 2018 Order is Clear and Convincing.**

A party's failure to comply with a court's order must be clear and convincing to hold a party in contempt of court. *Rushmore*, 2016 U.S. Dist. LEXIS 3492 at *15. Marsh has submitted evidence that following the dismissal of the Mississippi Action, Respondents filed a Motion for Reconsideration on June 14, 2021, seeking to reinstate Parra's claims against Marsh as alleged in the Parra Complaint—the very claims that this Court clearly and unambiguously enjoined. *See* Davis Decl., Ex. 6. The Mississippi Action that Parra attempts to resurrect is exactly the form of direct action against Marsh that was foreclosed by the 1986 Orders, the 2015 Enforcement Order, and the January 2018 Order. The Supreme Court clarified that such "direct actions fall within the scope of the 1986 Orders"—foreclosing any confusion on the issue. *Bailey*, 557 U.S. at 147.

The Parra Complaint dedicates over thirty paragraphs to Marsh's "forty-year-plus" relationship with Manville, how Marsh learned of the dangers of asbestos through its close relationship with Manville, and how Marsh conspired with Manville to conceal such dangers. *See* Davis Decl., Ex. 2. "The breadth and length of Manville's asbestos involvement compels the conclusion, as a factual matter, that essentially all potential asbestos claimants—including all plaintiffs with Direct Action[s]—have been exposed to Manville asbestos through Manville's pervasive

asbestos mining, processing and manufacturing activities." *In re* Johns-Manville *Corp.*, 2004 WL 1876046, at *5 (Bankr. S.D.N.Y. Aug. 17, 2004). As the Supreme Court correctly pointed out in *Bailey*, the gravamen of these "direct action" claims are "acts or omissions by [insurers and insurance brokers] arising from or relating to [such insurer's or insurance brokers'] insurance relationship with Manville." *Bailey*, 557 U.S. at 144 (citation omitted). The evidence here compels the same conclusion—as this Court already observed—that Parra's claims against Marsh focus on "Marsh's insurance relationship with Manville" and are within the scope of the 1986 Orders and barred. *In re Johns-Manville Corp.*, 534 B.R. at 558.

Following the denial of the Motion for Reconsideration, on October 13, 2023, Respondents filed the Parra Appeal. *See* Davis Decl., Ex. 8. The Appellate Brief filed in connection with the Parra Appeal relies on the same allegations of conspiracy reflected in the enjoined Mississippi Action and makes no mention of an intent to amend the Parra Complaint.[7] *See id.*

On September 12, 2024, Respondents filed a Clarification in the Mississippi Supreme Court stating that Parra is "not bound by the 1986 Order or the Second Circuit's ruling" to cease prosecution of the Parra Complaint. *See* Clarification at 3.

---

[7] The Respondents shared a proposed amended Parra Complaint with the attorneys for Marsh as early as May 14, 2014, as reflected in the email attached to the Declaration of Eric Bogdan ("Bogdan Decl."), Ex. B. Even if the proposed amended Parra Complaint (attached to the Bogdan Decl. as Exhibit A) was timely filed in the Mississippi Action, the claims against Marsh, as amended, would still fall within the scope of the 1986 Orders. However, this issue is not before this Court as there is a pending appeal on the Mississippi Action in the Mississippi Supreme Court.

The quantum of proof before the Court, including the filing of the Motion for Reconsideration, the filing of the Parra Appeal, and the filing of the Clarification, demonstrate with reasonable certainty that Respondents violated this Court's 1986 Orders, the 2015 Enforcement Order, and the January 2018 Order.

### C. Parra Has Not Diligently Attempted to Comply with the 1986 Orders, the 2015 Enforcement Order, or the January 2018 Order, in a Reasonable Manner.

The party in contempt must not have diligently attempted to comply with the court's order in a reasonable manner. *In re* Chief Exec. Officers' Clubs, 359 B.R. 527, 535 (2d Cir. 1995) (*citing* New York State NOW v. Terry, 886 F.2d 1339, 1351 (2d Cir.1989)). Since the Second Circuit's 2020 decision affirming this Court's orders and after the 2015 Enforcement Order and January 2018 Order became final in April 2020, Respondents have taken **no** steps to comply with the Court's 1986 Orders or the Channeling Injunction. Instead, as described above, Parra and Parra's counsel have repeatedly asserted in Mississippi courts that Marsh is still a defendant under the Parra Complaint and that neither the 1986 Orders nor the Second Circuit's 2020 ruling enjoin Parra's claims against Marsh. The first time Respondents raised the argument that Parra could allegedly recover from Marsh under a successor-in-interest theory was at the March 2021 Hearing—well over ten years after the commencement of litigation in the Mississippi courts; it is far too late to relitigate

the viability of the Parra Complaint now. *See, e.g.*, Taylor v. Sturgell, 553 U.S. 880, 892 (2008).

The Clarification filed by Respondents in the Mississippi Supreme Court on September 12, 2024 shows that they did not even bother to read or understand this Court or the Second Circuit's rulings, but rather blanketly withdrew any statements should they be inconsistent with this Court's or the Second Circuit's rulings. The Clarification states that "[t]o the extent anything in [Parra's] initial [appellate] brief could be construed as a violation of the New York Bankruptcy Court's rulings or the Second Circuit's rulings, Parra withdraws any such statement." *See* Clarification at 4. Respondents cannot claim a single sentence filed over four years after this Court's orders became final constitutes a diligent attempt at complying with this Court's orders in a reasonable way.

Respondents' Initial Opposition Brief and supplemental opposition brief (the "Supplemental Opposition Brief," together with the Initial Opposition Brief, the "Opposition Briefs") do not dispute Marsh's claims or provide any compelling evidence to the contrary. Instead, the Opposition Briefs argue that a pending appeal on a dismissed action due to lack of prosecution cannot be violative of an order that bars "prosecuti[on]". *See* Brief in Opposition to Marsh USA Inc.'s Mot. For Contempt, ECF No. 4437; Supp. Brief in Support of Objection to Marsh USA Inc.'s Mot. For Contempt, ECF No. 4450. Respondents improperly conflate the fact that

the Mississippi Action was dismissed for lack of prosecution as evidence that Respondents have not sought to prosecute the enjoined claims asserted against Marsh as alleged in the Parra Complaint.

Respondents have in fact sought on numerous occasions, at great cost—unsuccessfully—to prosecute the enjoined claims asserted against Marsh as alleged in the Parra Complaint in violation of this Court's orders.   First, Respondents opposed the dismissal of the Mississippi Action through the Motion for Reconsideration filed on June 14, 2021, on the grounds that "Defendant Marsh did not join in the motion to dismiss" and blaming the lack of prosecution of the case for ten years on "Marsh's legal maneuvering to a bankruptcy court in New York." Davis Decl., Ex. 6, at 1, 3.  Second, on October 13, 2023, after the trial court denied the Motion for Reconsideration, Respondents appealed the dismissal and denial of the Motion for Reconsideration as to *all* defendants—including Marsh.  *See* Davis Decl., Ex. 8.  In its Appellate Brief, Respondents made no mention of an intent to amend the Parra Complaint and simply relied on the same allegations of conspiracy as alleged in the Parra Complaint.  In short, Respondents twice attempted to reinstate the very claims that this Court clearly and unambiguously barred.  Parra, through Parra's counsel, also claimed Marsh was "still in the case" at the March 2021 Hearing after the presiding judge noted that Parra "couldn't go any further against

Marsh in this action," and that "Marsh at this point is out [of the case] insofar as this Court is concerned[.]" Davis Decl., Ex. 14 at 53:12–13, 21–22.

Marsh recently provided Parra and Parra's counsel with opportunities to purge their repeated violations of this Court's orders—to no avail—and has presented evidence of Respondents' affirmative refusal to participate in such opportunities. In a letter dated August 12, 2024, Marsh's counsel warns Parra's counsel that Marsh would take all reasonable actions to compel compliance with this Court's orders and would request that the Bankruptcy Court find both Parra and Parra's counsel in contempt should there be continued noncompliance. *See* Davis Decl., Ex. 12 at 2. Marsh's counsel also presented evidence that Parra's counsel admits it is "well aware" of the 1986 and 2018 Orders and, in Parra's counsel's own words, "understands the consequences of the 1986 and 2018 Orders." *See id.* Despite this "aware[ness]" and "understand[ing]," Respondents filed a clarification with the Mississippi Supreme Court just one month later insisting on the reinstatement of enjoined claims against Marsh.

## II.    Sanctions

Sanctions for civil contempt may "serve either to coerce the contemnor into future compliance with the court's order or to compensate the complainant for losses resulting from the contemnor's past noncompliance." *New York State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1352 (2d Cir. 1989) (citing *United States v. United*

*Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947)).   Where the purpose of contempt is to make a party comply, a court must exercise discretion in determining the proper sanction.  *See In re* Chief Exec. Officers Clubs, Inc., 359 B.R. 527, 530. The court must consider the "character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about compliance with the court order." *Id.* Where the purpose of contempt is to compensate the complainant, compensation should be awarded for the actual damages incurred.  *See In re Haemmerle*, 529 B.R. 17, 26 (Bankr. E.D.N.Y. 2015); *In re Nicholas*, 457 B.R. 202, 224 (Bankr. E.D.N.Y. 2011).  Compensatory damages may include "attorneys' fees; litigation costs; travel expenses; other actual losses, such as wages or business income; and possibly emotional distress damages." *In re Haemmerle*, 529 B.R. at 26 (citations omitted).  Bankruptcy courts may also impose contempt sanctions in a non-nominal amount for on-going non-compliance with a court's orders. *See In re* Markus, 78 F.4th 554, 562, 570 (2d Cir. 2022) (affirming imposition of "per diem sanctions in the amount of $1,000 per day, for a total of $55,000" and "$36,600 in attorneys' fees" against attorney).

Bankruptcy courts possess inherent discretion to fashion sanctions for civil contempt. *See* In re Sledziejowski, No. 13-22050 (RDD), 2015 WL 2128595, at *5 (Bankr. S.D.N.Y. May 5, 2015) (citing *In re* Ngang Gung Restaurant, 1996 U.S. Dist. LEXIS 18877, at *16 (S.D.N.Y. Dec. 20, 1996) ("It is generally agreed that

bankruptcy courts possess the same inherent sanction power that district courts enjoy.")); *see id.* ("Pursuant to this inherent power, courts have broad discretion to fashion appropriate sanctions . . . ."); *see also In re* Chief Exec. Officers' Clubs, 359 B.R. 527, 534 (2d Cir. 1995); Chambers v. Nasco, Inc., 501 U.S. 32, 44–45 (1991)) (noting that bankruptcy courts have fashioned a variety of sanctions that have been upheld on appeal); *Ex parte* Robinson, 86 U.S. 505, 510 (1874) ("The power to punish for contempt is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders and writs of the courts and, consequently, to the due administration of justice.").

This discretion includes the imposition of monetary sanctions in the form of attorneys' fees and other continuing monetary penalties on a party while non-compliance continues. *See In re* Covelli, 550 B.R. at 269, 271 (imposing daily monetary penalty on party during non-compliance); *In re* Olsen, 358 B.R. 609, 627–28 (Bankr. S.D.N.Y. 2007) (ordering payment of attorneys' fees expended responding to frivolous motions and for ignoring court order); *In re* Nicholas, 457 B.R. 202, 224, 228 (Bankr. E.D.N.Y. 2011) (holding party in contempt and awarding attorneys' fees and $5,000 in punitive damages after the party commenced an action in state court in knowing violation of a discharge injunction). There is no

requirement in the Second Circuit for the violator to have acted willfully to award attorney's fees. *See In re* Eppolito, 583 B.R. 822, 829 (Bankr. S.D.N.Y. 2018).

Bankruptcy Courts also have the inherent power and discretion to impose sanctions on a party's counsel for "misconduct by an attorney that involves that attorneys' violation of a court order." United States v. Seltzer, 227 F.3d 36, 42 (2d Cir. 2000); *In re* Markus, 78 F.4th at 565 ("[B]ankruptcy courts [may] impos[e] non-nominal civil contempt sanctions pursuant to their inherent authority."); *see also* Palmer v. Simon's Agency Inc., 833 Fed. App'x. 838, 839 (2d Cir. 2020) (holding "courts have the inherent power to sanction attorneys" for "violations of court orders") (quotations omitted). Those sanctions include imposition of attorneys' fees, expenses, and other monetary sanctions while non-compliance with a court order continues. *See In re* Markus, 78 F.4th at 562, 570 (affirming attorneys' fees and daily monetary sanction against attorney during non-compliance); *In re* Lehman Bros., 2013 WL 6283572, at *4–5 (awarding civil contempt sanctions in the form of attorneys' fees and costs); *In re* Stockbridge Funding Corp., 145 B.R. 797, 813 (Bankr. S.D.N.Y. 1992) (imposing monetary sanctions against law firm representing litigants), *aff'd in part, vacated in part*, 158 B.R. 914 (S.D.N.Y. 1993).

Petitioner is entitled compensatory damages, including attorney's fees for the time spent litigating in this Court on the Motion for Contempt and the time spent litigating in the Mississippi courts on the Motion for Reconsideration and Parra

Appeal, to reimburse Petitioner for its actual damages incurred as a result of Respondents' continued noncompliance of this Court's Orders. Petitioner shall submit an affidavit listing attorney's fees incurred beginning June 14, 2021, the date Respondents filed the Motion for Reconsideration on claims this Court clearly and unambiguously enjoined. There are serious and legitimate concerns about Respondents' intent to comply with this ruling given their history and practice of disregarding this Court's orders. If Respondents are only forced to pay Petitioner's attorneys' fees, there is no impetus to keep Parra and Parra's counsel from engaging in similar, violative conduct in the future. Accordingly, if attorneys' fees are not paid in full within fourteen days of the entry of the order granting attorneys' fees, Respondents must pay an additional *per diem* monetary sanction in the amount of $1,000 per day that the Parra Appeal remains pending against Marsh and attorneys' fees remain outstanding. The Court finds that such sanctions are appropriate considering all the facts and circumstances, including as set forth in the Davis Decl. and Bodgan Decl., which demonstrate (a) Respondents' disregard for not one, not two, but **three**, prior Court orders, (b) the extensive process leading up to the Court having to issue the 2015 Enforcement Order and January 2018 Order, and (c) the numerous opportunities over the last thirty-eight years that Respondents have had to comply with this Court's orders.

## <u>Conclusion</u>

For the foregoing reasons, the Petitioner's Motion for Contempt is granted. The Petitioner shall submit an order granting attorneys' fees in accordance with this ruling, and an affidavit listing those attorneys' fees, within fourteen days of the issuance of this decision, directly to chambers (via E-Orders).  If attorneys' fees are not paid in full within fourteen days after entry of the order granting attorneys' fees and the Parra Appeal has not been withdrawn, Respondents must pay an additional *per diem* monetary sanction in the amount of $1,000 per day.

/s/ Cecelia G. Morris



**Dated: January 31, 2025**
**Poughkeepsie, New York**

_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**