UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | ) In Proceedings For A |
| | ) Reorganization Under |
| JOHNS-MANVILLE CORPORATION, | ) Chapter 11 |
| et al., | ) |
| | ) Case Nos. 82 B 11656 (KYP) |
| Debtors | ) Through 82 B 11676 (KYP) |
| | ) Inclusive |

### FINANCIAL STATEMENTS AND REPORT OF MANVILLE PERSONAL INJURY SETTLEMENT TRUST FOR THE PERIOD ENDING MARCH 31, 2026 PURSUANT TO SECTIONS 3.02(d)(ii) and (iii) OF THE TRUST AGREEMENT

Sections 3.02(d)(ii) and (iii) of the Trust Agreement provide that the Trustees shall prepare and file with the Court within 30 days following the end of each of the first three quarters of each Fiscal Year a quarterly report containing certified financial statements and a summary of certain additional information, including the number of Trust Claims Liquidated and the average amount per Trust Claim paid or payable, the amount of investment income earned by the Trust, and the amount of Trust Expenses incurred by the Trust.  The attached Financial Statements for the Period January 1, 2026 through March 31, 2026 and the exhibits thereto are submitted

{C1350638.1 }

in satisfaction of the requirements that the Trust file a quarterly report. Exhibits I, II and III of the Financial Statements set forth the specific items of information required by Sections 3.02(d)(iii)(A),(C) and (D) of the Trust Agreement.

Respectfully submitted,

MANVILLE PERSONAL INJURY
SETTLEMENT TRUST

By:   _/s/ *Kathleen Campbell Davis*
     Kathleen Campbell Davis
     (Delaware NO. 4229)
     (Admitted Pro Hac)
     Campbell & Levine, LLC
     222 Delaware Avenue,
     Suite 905
     Wilmington, DE 19801
     (302) 426-1900
     kdavis@camlev.com

Dated:   April 27, 2026
         Wilmington, DE

{C1350638.1 }

## CERTIFICATE OF SERVICE

I, Kathleen Campbell Davis, hereby certify that on April 27, 2026, I caused a true and complete copy of the Financial Statements for the Period Ending March 31, 2026 pursuant to Sections 3.02(d)(ii) and (iii) of the Manville Personal Injury Settlement Trust Agreement to be served by email or United States mail, to the entities named on the service list annexed hereto.

/s/ *Kathleen Campbell Davis*
**Kathleen Campbell Davis**

{C1350638.1 }

| | |
|---|---|
| Steven T. Baron, Esq.<br>BARON & BUDD<br>3102 Oak Lawn Avenue<br>Dallas, TX 75219<br>sbaron@baronbudd.com | Todd E. Phillips, Esq.<br>Allison Scoggin, Esq.<br>CAPLIN & DRYSDALE, CHARTERED<br>1200 New Hampshire Avenue NW<br>8th Floor<br>Washington, DC 20036<br>tphillips@capdale.com<br>ascoggin@capdale.com |
| Lisa Busch, Esq.<br>SIMMONS HANLY CONROY<br>112 Madison Ave.<br>7th Floor<br>New York, NY 10016<br>lbusch@simmonsfirm.com | Maria Keane, Esq.<br>875 West End Ave. 11E<br>New York, NY 10025<br>mhkeane.consulting@gmail.com |
| John A. Baden, IV, Esq.<br>MOTLEY RICE LLC<br>28 Bridgeside Blvd.<br>Mt. Pleasant, SC 29464<br>jbaden@motleyrice.com | Francis Lawall, Esq.<br>TROUTMAN PEPPER<br>3000 Two Logan Square<br>18th & Arch Streets<br>Philadelphia, PA 19103<br>francis.lawall@troutman.com |
| Paul Schwartzberg (USTP)<br>Joseph Nadkarni (USTP)<br>U.S. DEPARTMENT OF JUSTICE<br>Office of the United States Trustee – NY Office<br>Alexander Hamilton Custom House<br>One Bowling Green, Room 534<br>New York, NY 10004-1408<br>Paul.Schwartzberg@usdoj.gov<br>Joseph.T.Nadkarni@usdoj.gov | |

{C1350638.1 }

# MANVILLE PERSONAL INJURY SETTLEMENT TRUST

## SPECIAL-PURPOSE CONSOLIDATED FINANCIAL STATEMENTS WITH SUPPLEMENTARY INFORMATION

March 31, 2026 and 2025

# MANVILLE PERSONAL INJURY SETTLEMENT TRUST
## SPECIAL-PURPOSE CONSOLIDATED STATEMENTS OF NET CLAIMANTS' EQUITY
## AS OF MARCH 31, 2026 AND 2025

| | 2026 | 2025 |
|---|---|---|
| **ASSETS:** | | |
| Cash equivalents and investments (Note 2) | | |
| Restricted (Note 8) | $43,300,000 | $43,000,000 |
| Unrestricted | 557,675,382 | 555,406,170 |
| Total cash equivalents and investments | 600,975,382 | 598,406,170 |
| | | |
| Accrued interest and dividend receivables | 2,217,236 | 2,310,738 |
| Deposits and other assets | 535,535 | 673,473 |
| | | |
| Total assets | 603,728,153 | 601,390,381 |
| | | |
| **LIABILITIES:** | | |
| Accrued expenses | 3,241,791 | 2,946,997 |
| Deferred income taxes (Note 9) | 41,983,500 | 40,501,500 |
| Unpaid claims (Notes 4, 6 and Exhibit III) | | |
| Outstanding offers | 3,763,204 | 2,607,326 |
| Settled, not paid | 14,183,643 | 15,649,028 |
| Pro rata adjustment payable - personal injury | 153,105 | 151,855 |
| Lease commitment payable (Note 5) | 1,138,573 | 1,570,526 |
| | | |
| Total liabilities | 64,463,815 | 63,427,232 |
| | | |
| **NET CLAIMANTS' EQUITY (Note 6)** | $539,264,338 | $537,963,150 |

The accompanying notes are an integral part of these special-purpose consolidated statements.

**MANVILLE PERSONAL INJURY SETTLEMENT TRUST**
**SPECIAL-PURPOSE CONSOLIDATED STATEMENTS OF CHANGES IN NET CLAIMANTS' EQUITY**
**FOR THE THREE MONTHS ENDED MARCH 31, 2026 AND 2025**

|  | 2026 | 2025 |
|---|---|---|
| **NET CLAIMANTS' EQUITY,** | | |
| **BEGINNING OF PERIOD** | $563,345,748 | $556,862,682 |
| | | |
| **ADDITIONS TO NET CLAIMANTS' EQUITY:** | | |
| Net decrease in outstanding claim offers | 0 | 704,026 |
| Decrease in lease commitments payable (Note 5) | 108,251 | 105,092 |
| Total additions | 108,251 | 809,118 |
| | | |
| **DEDUCTIONS FROM NET CLAIMANTS' EQUITY:** | | |
| Net investment loss (Exhibit I) | 7,093,562 | 3,562,284 |
| Net operating expenses (Exhibit II) | 1,442,537 | 810,010 |
| Provision for current income taxes | 2,007,010 | 1,631,640 |
| Net increase in outstanding claim offers | 1,102,901 | 0 |
| Claims settled for personal injury claims | 12,543,653 | 13,704,716 |
| Total deductions | 24,189,661 | 19,708,650 |
| | | |
| **NET CLAIMANTS' EQUITY,** | | |
| **END OF PERIOD** | $539,264,338 | $537,963,150 |

The accompanying notes are an integral part of these special-purpose consolidated statements.

**MANVILLE PERSONAL INJURY SETTLEMENT TRUST**
**SPECIAL-PURPOSE CONSOLIDATED STATEMENTS OF CASH FLOWS**
**FOR THE THREE MONTHS ENDED MARCH 31, 2026 AND 2025**

|  | 2026 | 2025 |
|---|---|---|
| **CASH INFLOWS:** | | |
| Investment income receipts | $3,800,918 | $4,073,126 |
| Net realized gains on investment securities | 10,786,045 | 7,682,517 |
| Total cash inflows | 14,586,963 | 11,755,643 |
| **CASH OUTFLOWS:** | | |
| Claim payments made | 13,010,549 | 11,325,221 |
| Total claim payments | 13,010,549 | 11,325,221 |
| Disbursements for Trust operating expenses and income taxes paid | 1,676,389 | 1,011,875 |
| Increase/(Decrease) in deposits and other assets | (137,426) | 38,504 |
| Total cash outflows | 14,549,513 | 12,375,600 |
| **NET CASH (OUTFLOWS)** | 37,451 | (619,957) |
| **NON-CASH CHANGES:** | | |
| Net unrealized gains (losses) on investment securities | (25,446,481) | (17,764,191) |
| **NET INCREASE (DECREASE) IN CASH EQUIVALENTS AND INVESTMENTS** | (25,409,030) | (18,384,149) |
| **CASH EQUIVALENTS AND INVESTMENTS BEGINNING OF PERIOD** | 626,384,413 | 616,790,319 |
| **CASH EQUIVALENTS AND INVESTMENTS END OF PERIOD** | $600,975,382 | $598,406,170 |

The accompanying notes are an integral part of these special-purpose consolidated statements.

**MANVILLE PERSONAL INJURY SETTLEMENT TRUST**

**NOTES TO SPECIAL-PURPOSE CONSOLIDATED FINANCIAL STATEMENTS**

**AS OF MARCH 31, 2026 AND 2025**

## 1.   Organization Description and Summary of Significant Special-Purpose Accounting Policies

The Manville Personal Injury Settlement Trust (the Trust), a Delaware statutory trust, was established pursuant to the Manville Corporation (Manville or JM) Second Amended and Restated Plan of Reorganization (the Plan).  The Trust was formed to assume Manville's liabilities resulting from pending and potential litigation involving (i) individuals exposed to asbestos who have manifested asbestos-related diseases or conditions, (ii) individuals exposed to asbestos who have not yet manifested asbestos-related diseases or conditions and (iii) third-party asbestos-related claims against Manville for indemnification or contribution.  Upon consummation of the Plan, the Trust assumed liability for existing and future asbestos health claims.  The Trust's funding is dedicated solely to the settlement of asbestos health claims and the related costs thereto, as defined in the Plan.  The Trust was consummated on November 28, 1988.

In December 1998, the Trust formed a wholly-owned corporation, the Claims Resolution Management Corporation (CRMC), to provide the Trust with claim processing and settlement services.  Prior to January 1, 1999, the Trust provided its own claim processing and settlement services.  CRMC began operations on January 1, 1999 in Fairfax, Virginia and subsequently relocated to Falls Church, Virginia.  The accounts of the Trust and CRMC have been consolidated for financial reporting purposes.  All significant intercompany balances and transactions between the Trust and CRMC have been eliminated in consolidation.

The Trust was initially funded with cash, Manville securities and insurance settlement proceeds.  Since consummation, the Trust has converted the Manville securities to cash and currently holds no Manville securities.

**Basis of Presentation**

The Trust's special-purpose consolidated financial statements are prepared using special-purpose accounting methods that differ from accounting principles generally accepted in the United States.  The special-purpose accounting methods were adopted in order to communicate to the beneficiaries of the Trust the amount of equity available for payment of current and future claims.  Since the accompanying special-purpose consolidated financial statements and transactions are not based upon generally accepted accounting principles (GAAP), accounting treatment by other parties for these same transactions may differ as to timing and amount.  These special-purpose accounting methods are as follows:

1) The special-purpose consolidated financial statements are prepared using the accrual basis of accounting, except as otherwise described herein.

2) The funding received from JM and its liability insurers was recorded directly to net claimants' equity. These funds do not represent income of the Trust.  Under GAAP, fundings would be recorded as revenue and recorded upon settlement and assurance of collectability.

3) Settlement offers for asbestos health claims are reported as deductions in net claimants' equity and do not represent expenses of the Trust.  Under GAAP, settlement offers would be recorded as expenses of the Trust.

4) Costs of non-income producing assets, which will be exhausted during the life of the Trust and are not available for satisfying claims, are expensed as they are incurred.  These costs include acquisition costs of computer hardware, software, software development, office

furniture and leasehold improvements. Under GAAP, payments for fixed assets are capitalized and depreciated or amortized over their useful lives of the assets.

5) Future fixed liabilities and contractual obligations entered into by the Trust are recorded directly against net claimants' equity.  Accordingly, the future minimum rental commitments outstanding at period end for non-cancelable operating leases, net of any sublease agreements, have been recorded as deductions to net claimants' equity. Under GAAP, liabilities and contractual obligations are recorded over the period that is benefited by the underlying contract or agreement. Operating lease assets and liabilities would be recognized at the lease commencement date based on the present value of lease payments over the lease term.

6) The liability for unpaid claims reflected in the special-purpose consolidated statements of net claimants' equity represents settled but unpaid claims and outstanding settlement offers. Post-Class Action complaint claims' liability is recorded once a settlement offer is made to the claimant (Notes 4 and 6) at the amount equal to the expected pro rata payment.  No liability is recorded for future claim filings and filed claims on which no settlement offer has been made. Net claimants' equity represents funding available to pay present and future claims on which no fixed liability has been recorded. Under GAAP, a liability would be recorded for an estimate of the amount to be paid for claims that have been incurred but not reported and for those claims that have been submitted but not yet approved for payment by the Trust.

7) Investment securities are recorded at fair market value. All interest and dividend income on investment securities, net of investment expenses, are included in investment income on the special-purpose consolidated statements of changes in net claimants' equity.  Realized and unrealized gains and losses on investment securities are combined and recorded on the special-purpose consolidated statements of changes in net claimants' equity. Under GAAP, the financial statements would require additional disclosures including the classification of investments into a hierarchy of levels, the basis for those levels, and a schedule outlining movement between the levels among other disclosures.

Realized gains/losses on investment securities are recorded based on the security's original cost. At the time a security is sold, all previously recorded unrealized gains/losses are reversed and recorded net, as a component of investment income in the accompanying consolidated statements of changes in net claimants' equity.

8) The Trust records deferred tax assets and liabilities for the expected future tax consequences of temporary differences between the book and tax basis of assets and liabilities. Under GAAP, changes in deferred tax assets and liabilities would be included in the provision for income taxes.

9) Revenue earned from claims processing services provided by CRMC to third parties is treated as a reduction of the Trust's net operating expenses (see Exhibit II). Revenue is recorded as services are provided to those third-party customers. Under GAAP, claims processing services would be recorded as revenue as services are provided to those third-party customers.

**Use of Estimates**

The preparation of financial statements in conformity with the special-purpose accounting methods described above requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities at the date of the financial statements and the reported amounts of additions and deductions to net claimants' equity during the reporting period.  Actual results could differ from those estimates.  The most significant estimates with regard to these special-purpose consolidated financial statements relate to unpaid claims, as discussed in Notes 4 and 6.

### 2.   CASH EQUIVALENTS AND INVESTMENTS

At March 31, 2026 and 2025, the Trust has recorded all of its investment securities at fair market value, as follows:

| *Restricted* | 2026 | | 2025 | |
| --- | --- | --- | --- | --- |
| *Description* | Cost | Fair Market Value | Cost | Fair Market Value |
| Cash equivalents | 267,757 | 267,757 | 78,606 | 78,606 |
| U.S. Govt. obligations | 10,885,919 | 10,864,936 | 13,162,084 | 13,216,492 |
| Corporate and other debt | 18,898,545 | 18,919,743 | 16,656,627 | 16,744,933 |
| Equities - U.S. | 2,316,841 | 13,247,563 | 2,506,070 | 12,959,969 |
| **Total** | **32,369,062** | **43,300,000** | **32,403,386** | **43,000,000** |

| *Unrestricted* | 2026 | | 2025 | |
| --- | --- | --- | --- | --- |
| *Description* | Cost | Fair Market Value | Cost | Fair Market Value |
| Cash equivalents | 20,038,131 | 20,038,131 | 9,135,610 | 9,135,610 |
| U.S. Govt. obligations | 91,493,191 | 90,000,758 | 102,595,143 | 101,923,217 |
| Corporate and other debt | 116,157,575 | 115,965,391 | 108,526,374 | 108,496,202 |
| Equities - U.S. | 44,673,708 | 280,082,882 | 49,726,808 | 272,749,482 |
| Equities - International | 16,372,176 | 51,588,219 | 25,998,685 | 63,101,659 |
| **Total** | **288,734,781** | **557,675,382** | **295,982,620** | **555,406,170** |

The Trust invests in two types of derivative financial instruments.  Equity index futures are used as strategic substitutions to cost effectively replicate the underlying index of its domestic equity investment fund.  At March 31, 2026, the fair market value of these instruments was approximately $0.66 million and was included in investments on the special-purpose consolidated statements of net claimants' equity. Foreign currency forwards are utilized for both currency translation purposes and to economically hedge against some of the currency risk inherent in foreign equity issues and are generally for periods up to 90 days.  At March 31, 2026, the Trust held $25.3 million in net foreign currency forward contracts.  The unrealized loss on these outstanding currency forward contracts of approximately $0.02 million is offset by an equal unrealized gain due to currency exchange on the underlying international securities.  These net amounts are recorded in the special-purpose consolidated statements of net claimants' equity at March 31, 2026.

The Trust invests in professionally managed portfolios that contain common shares of publicly traded companies, U.S. government obligations, U.S. and International equities, corporate and other debt, and money market funds.  Such investments are exposed to various risks such as interest rate, market, and credit risks.  Due to the level of risk associated with certain investments securities, it is reasonably possible that changes in the fair market values of investment securities will occur in the near term and that such changes could materially affect the Trust's account balance in the future and the amounts reported in the special-purpose consolidated statements of net claimants' equity and special-purpose consolidated statements of changes in net claimants' equity.

### 3. FIXED ASSETS

The cost of non-income producing assets that will be exhausted during the life of the Trust and are not available for satisfying claims are expensed as incurred. Since inception, the cost of fixed assets expensed, net of disposals, include:

| | |
|---|---|
| Acquisition of furniture and equipment | $322,458 |
| Acquisition of computer hardware and software | 761,760 |
| Computer software development (e-Claims) | 2,361,100 |
| Total | $3,445,319 |

These items have not been recorded as assets, but rather as direct deductions to net claimants' equity in the accompanying special-purpose consolidated financial statements.

### 4. UNPAID CLAIMS

The Trust distinguishes between claims that were resolved prior to the filing of the class action complaint on November 19, 1990, and claims resolved after the filing of that complaint.  Claims resolved prior to the complaint (Pre-Class Action Claims) were resolved under various payment plans, all of which called for 100% payment of the full liquidated amount without interest over some period of time.  However, between July 1990 and February 1995, payments on all claims, except qualified exigent health and hardship claims, were stayed by the courts.  By court order on July 22, 1993 (which became final on January 11, 1994), a plan submitted by the Trust was approved to immediately pay, subject to claimant approval, a discounted amount on settled, but unpaid Pre-Class Action Claims, in full satisfaction of these claims. The discount amount taken, based on the claimants who accepted the Trust's discounted offer, was approximately $135 million.

The unpaid liability for the Post-Class Action claims represents outstanding offers made in first-in, first-out (FIFO) order to claimants eligible for settlement after November 19, 1990.  Under the Trust Distribution Process (TDP) (Note 6), claimants receive an initial pro rata payment equal to a percentage of the liquidated value of their claim.  The Trust remains liable for the unpaid portion of the liquidated amount only to the extent that assets are available after paying all claimants the established pro rata share of their claims.  The Trust makes these offers electronically for law firms that file their claims electronically (e-filers), or by sending an offer letter and a release form for claimants that file their proof of claim on paper.  E-filers may accept their offers electronically and the Trust records a settled, but unpaid claim at the time of acceptance, then makes payment upon receipt of an acceptable signed release.  Paper filers may accept their offer by submitting an acceptable signed release, upon receipt of which the Trust sends a check.  An unpaid claim liability is recorded once an offer is made.  The unpaid claim liability remains on the Trust's books until accepted or expiration of the offer after 360 days.  Expired offers may be reinstated if the claimant accepts the original offer within two years of offer expiration.

### 5. COMMITMENT

CRMC signed a 7-year and 7-month lease effective October 1, 2015 at a location in Falls Church, Virginia.  In October 2018, CRMC signed a lease extension at its current location in Falls Church, Virginia.  This lease will expire on September 30, 2028.  Future minimum rental commitments under this operating lease, as of March 31, 2026, are as follows:

| Calendar Year | Amount |
|---|---|
| 2026 | 333,400 |
| 2027 | 454,913 |
| 2028 | 350,260 |
| Total | $1,138,573 |

This obligation has been recorded as a liability in the accompanying special-purpose consolidated statement of net claimants' equity.

### 6.  NET CLAIMANTS' EQUITY

A class action complaint was filed on behalf of all Trust beneficiaries on November 19, 1990, seeking to restructure the methods by which the Trust administers and pays claims. On July 25, 1994, the parties signed a Stipulation of Settlement that included a revised TDP.  The TDP prescribes certain procedures for distributing the Trust's limited assets, including pro rata payments and initial determination of claim value based on scheduled diseases and values.  The Court approved the settlement in an order dated January 19, 1995 and the Trust implemented the TDP payment procedures effective February 21, 1995.

Prior to the commencement of the class action in 1990, the Trust filed a motion for a determination that its assets constitute a "limited fund" for purposes of Federal Rules of Civil Procedure 23(b)(1)(B).  The Courts adopted the findings of the Special Master that the Trust is a "limited fund".  In part, the limited fund finding concludes that there is a substantial probability that estimated future assets of the Trust are and will be insufficient to pay in full all claims that have been and will be asserted against the Trust.

The TDP contains certain procedures for the distribution of the Trust's limited assets.  Under the TDP, the Trust forecasts its anticipated annual sources and uses of cash until the last projected future claim has been paid.  A pro rata payment percentage is calculated such that the Trust will have no remaining assets or liabilities after the last future claimant receives his/her pro rata share.

Prior to the implementation of the TDP, the Trust conducted its own research and monitored studies prepared by the Courts' appointee regarding the valuation of Trust assets and liabilities.  Based on this valuation, the TDP provided for an initial 10% payment of the liquidated value of then current and estimated future claims (pro rata payment percentage).  As required by the TDP, the Trust has periodically reviewed the values of its projected assets and liabilities to determine whether a revised pro rata payment percentage should be applied.  In June 2001, the pro rata percentage was reduced from 10% to 5%.

During the second and third quarters of 2002, the Selected Counsel for the Beneficiaries (SCB) and Legal Representative of Future Claimants (Legal Representative) and the Trust met to discuss amending the TDP.  As a result of these meetings, in late August 2002, the parties agreed to TDP amendments that are now contained in what is referred to as the "2002 TDP".  The 2002 TDP principally changes the categorization criteria and scheduled values for the scheduled diseases.

In January 2008, the Trust completed a review of the Trust's projected assets and liabilities.  Based upon this review, the Trustees approved an increase in the pro rata percentage from 5% to 7.5%.  This proposed change received the required concurrence of the SCB and the Legal Representative in early March 2008.  Under the TDP, any claimant who received less than the current pro rata percentage is entitled to receive a retroactive payment sufficient to increase their previous payment percentage to the current pro rata percentage.  Accordingly, the Trust recorded a liability of $365.7 million for approximately 282,000 personal injury claimants eligible to receive a retroactive payment.

In January 2012, the Trustees amended the 2002 TDP to include a provision requiring the Trust to determine the Maximum Annual Payment (MAP) amount, which limits the amount of claim payments in any one year based upon its projections of assets and liabilities at the current pro rata percentage.  Once

the claim payments in any one year reach the annual MAP amount, the Trust ceases claim payments and any unpaid claims are carried over to the next year and placed at the front of the FIFO payment queue.

In August 2014, the Trust completed a review of the Trust's projected assets and liabilities.  Based upon this review, the Trustees approved a decrease in the pro rata percentage from 7.5% to 6.25%.   This change received the required concurrence of the SCB and Legal Representative.

In November 2016, the Trust completed a review of the Trust's projected assets and liabilities.  Based upon this review, the Trustees approved a decrease in the pro rata percentage from 6.25% to 5.1%.  This change received the required concurrence of the SCB and Legal Representative.

In late 2019, the Trustees began a review of the Trust's projected assets and liabilities. Upon completion of that review, which coincided with a sharp drop in equities markets caused by the COVID-19 pandemic, reducing the fair market value of the Trust's assets, the Trustees proposed a decrease in the pro rata percentage from 5.1% to 4.3%.  After the Trust received the required concurrence of the SCB and the Legal Representative, the decrease took effect on April 28, 2020.

In February 2021, the Trust completed a review of the Trust's projected assets and liabilities.  Based upon this review, the Trustees approved on February 15, 2021 an increase in the pro rata percentage from 4.3% to 5.1%.  This proposed change received the required concurrence of the SCB and the Legal Representative.  Under the TDP, any claimant who received less than the current pro rata percentage is entitled to receive a retroactive payment sufficient to increase their previous payment percentage to the current pro rata percentage.  Accordingly, the Trust paid at the end of February of 2021 approximately $5.6 million to all the personal injury claimants eligible to receive a retroactive payment.  All claimants receiving offers after February 15, 2021 will be paid a pro rata percentage of 5.1%.

## 7.   EMPLOYEE BENEFIT PLANS

The Trust established a tax-deferred employee savings plan under Section 401(k) of the Internal Revenue Code, with an effective date of January 1, 1988.  On April 7, 2016, the plan was amended and restated as the CRMC Salary Savings and Retirement Plan. The plan allows employees to defer a percentage of their salaries within limits set by the Internal Revenue Code with CRMC matching contributions by employees of up to 6% of their salaries.  The total employer contributions and expenses under the plan were approximately $58,500 and $57,300 for the three months ended March 31, 2026 and 2025, respectively.

## 8.   RESTRICTED CASH EQUIVALENTS AND INVESTMENTS

In order to avoid the high costs of director and officer liability insurance (approximately $2.5 million in 1990), the Trust ceased purchasing such insurance in 1991 and, with the approval of the United States Bankruptcy Court for the Southern District of New York, the Trust established a segregated security fund. Pursuant to this authority, the Trust currently maintains $30 million in a separate escrow account for the purpose of securing the obligation of the Trust to indemnify former and current Trustees.  The investment earnings on these escrow accounts accrue to the benefit of the Trust.

Additionally, as a condition of the tax agreement between JM and the Trust discussed in Note 9, the Trust was required to transfer $30 million in cash to an escrow account to secure the payment of its future income tax obligations post settlement of the transaction.  The escrow account balance may be increased or decreased over time. As of March 31, 2026, securities with a fair market value of $74 million were held by an escrow agent, of which $13.3 million is reported as restricted in accordance with the agreement.

## 9.   INCOME TAXES

For federal income tax purposes, JM had elected for the qualified assets of the Trust to be taxed as a Designated Settlement Fund (DSF). Income and expenses associated with the DSF are taxed in accordance with Section 468B of the Internal Revenue Code, which obligates JM to pay for any federal income tax liability imposed upon the DSF.  In addition, pursuant to an agreement between JM and the Trust, JM is obligated to pay for any income tax liability of the Trust.  In a subsequent separate agreement

between the Trust and JM to facilitate the sale of JM to a third party, JM paid the Trust $90 million to settle the JM obligation to the Trust.  In return, the Trust terminated JM's contractual liability for income taxes of the DSF and agreed to indemnify JM in respect for all future income taxes of the Trust and established an escrow fund to secure such indemnification.  The statutory income tax rate for this DSF is 15%.  As a Delaware domiciled trust, the Trust is not subject to state income taxes. CRMC files separate federal and state corporate income tax returns.

As of March 31, 2026 and 2025, the Trust has recorded a net deferred tax liability from net unrealized gains on investment securities of approximately $42 million and $40.5 million, respectively.  As of March 31, 2026 and 2025, the Trust had net income taxes payable of $2.4 million and $2.1 million, respectively.  These amounts are included with accrued expenses as of March 31, 2026 and 2025 on the consolidated statements of net claimants' equity.

## 10.  PROOF OF CLAIM FORMS FILED

Proof of claim forms filed as of March 31, 2026 and 2025 with the Trust are as follows:

|  | 2026 | 2025 |
|---|---|---|
| Claims filed | 1,161,003 | 1,141,552 |
| Withdrawn (1) | (111,111) | (109,730) |
| Expired offers (2) | (1,417) | (2,096) |
| Active Claims | 1,048,475 | 1,029,726 |
| Settled Claims | (1,036,966) | (1,018,581) |
| Claims currently eligible for settlement | 11,509 | 11,145 |

(1)      Principally, claims that have received a denial notification and the claim is in an expired status for more than two years.  These claims must be refiled to receive a new offer.

(2)      Claims that received a Trust offer or denial, but failed to respond within the specified response period, usually 360 days.  As of March 31, 2026 and 2025, approximately 264 and 363 respectively, of the claims with expired offers are still eligible to accept their original offer with a payment value of $0.6 million and $0.7 million, respectively.  All claims with expired offers may be reactivated upon written request by the claimant and will be eligible for a new offer at the end of the FIFO queue.

**MANVILLE PERSONAL INJURY SETTLEMENT TRUST**

**SUPPLEMENTARY INFORMATION**

**AS OF MARCH 31, 2026**

The following exhibits are provided in accordance with Article 3.02 (d)(iii) of the Manville Personal Injury Settlement Trust Agreement.

**EXHIBIT I**

**MANVILLE PERSONAL INJURY SETTLEMENT TRUST**
**SPECIAL-PURPOSE CONSOLIDATED INVESTMENT INCOME (LOSS)**
**FOR THE THREE MONTHS ENDED MARCH 31, 2026 AND 2025**

|  | 2026 | 2025 |
|---|---|---|
| **INVESTMENT INCOME (LOSS):** | | |
| Interest | $2,635,417 | $2,620,919 |
| Dividends | 1,334,667 | 1,455,510 |
| Total interest and dividends | 3,970,084 | 4,076,430 |
| Net realized gains (losses) | 10,786,045 | 7,682,517 |
| Net unrealized gains (losses), net of the change in deferred income taxes (Note 9) | (21,628,981) | (15,100,191) |
| Investment expenses | (220,709) | (221,039) |
| **TOTAL NET INVESTMENT INCOME (LOSS)** | ($7,093,562) | ($3,562,284) |

The accompanying notes are an integral part of this exhibit.

**EXHIBIT II**

**MANVILLE PERSONAL INJURY SETTLEMENT TRUST**
**SPECIAL-PURPOSE CONSOLIDATED NET OPERATING EXPENSES**
**FOR THE THREE MONTHS ENDED MARCH 31, 2026 AND 2025**

|  | 2026 | 2025 |
|---|---|---|
| **OPERATING EXPENSES:** | | |
| Personnel costs | $1,108,764 | $1,090,182 |
| Office general and administrative | 271,785 | 199,322 |
| Travel and meetings | 5,401 | 8,764 |
| Board of Trustees | 170,938 | 127,124 |
| Professional fees | 185,217 | 109,033 |
| Net fixed asset purchases | 22,939 | 5,681 |
| Web hosting and other EDP costs | 7,533 | 11,310 |
| Claims processing revenue and other income | (330,040) | (741,406) |
| **TOTAL NET OPERATING EXPENSES** | $1,442,537 | $810,010 |

The accompanying notes are an integral part of this exhibit.

**MANVILLE PERSONAL INJURY SETTLEMENT TRUST**
**SUPPLEMENTAL SCHEDULE OF LIQUIDATED CLAIMS**
**SINCE CONSUMMATION (NOVEMBER 28, 1988)**
**THROUGH MARCH 31, 2026**

**EXHIBIT III**
Page 1 of 2

| | Number | Amount | Average Payment Amount |
|---|---|---|---|
| **Trust Liquidated Claims** | | | |
| **Pre-Class Action Complaint** | | | |
| **November 19, 1990 and Before-** | | | |
| Full Liquidated Claim Value | 27,590 | $1,187,852,399 | |
| Present Value Discount (1) | | (135,306,535) | |
| Net Settlements | 27,590 | 1,052,545,864 | |
| Payments | (27,590) | (1,052,545,864) | $38,150 |
| Unpaid Balance | 0 | $0 | |
| **Post-Class Action Complaint** | | | |
| **After November 19, 1990-** | | | |
| Offers Made at Full Liquidated Amount | 1,010,873 | $55,312,247,485 | |
| Reduction in Claim Value (2) | | (51,031,307,893) | |
| Net Offer Amount | 1,010,873 | 4,280,939,592 | |
| Offers Accepted | (1,009,376) | (4,277,176,389) | $4,237 |
| Outstanding Offers | 1,497 | 3,763,204 | |
| Offers Accepted, Not Paid | 6,538 | 14,183,643 | |
| Unpaid Balance | 8,035 | 17,946,846 | |
| **Total Trust Liquidated Claims** | 1,036,966 | 5,329,722,253 | $5,140 |
| **Manville Liquidated Claims Paid (3)** | 158 | $24,946,620 | |
| **Co-Defendant Liquidated Claims (4)** | | | |
| Settlement Claim Value | | $95,329,160 | |
| Investment Receipts (5) | | 2,624,732 | |
| Payments | | (97,953,892) | |
| Payable | | $0 | |

(1)   The unpaid liability for Pre-Class Action Complaint claims has been reduced based upon a plan approved by the Courts in January, 1994 which requires the Trust to offer to pay a discounted amount in full satisfaction of the unpaid claim amount.

(2)   Under the TDP, Post Class Action Complaint claims have been reported at a pro rata percentage of their liquidated value.

(3)   Manville Liquidated Claims refers to Liquidated AH Claims (as defined in the Plan) which the Trust has paid pursuant to an order of the United States Bankruptcy Court for the Southern District of New York dated January 27, 1987.

(4)   Number of personal injury claimants not identifiable.

(5)   Investment receipts of separate investment escrow account established for the sub-class beneficiaries per the Stipulation of Settlement, net of income taxes.

The accompanying notes are an integral part of this exhibit.

**EXHIBIT III**
Page 2 of 2

**MANVILLE PERSONAL INJURY SETTLEMENT TRUST**
**SUPPLEMENTAL SCHEDULE OF LIQUIDATED CLAIMS**
**FOR THE THREE MONTHS ENDED MARCH 31, 2026**

| | Number | Amount | Average Payment Amount |
|---|---|---|---|
| **Trust Liquidated Claims** | | | |
| **Post-Class Action Complaint** | | | |
| **After November 19, 1990  (1)** | | | |
| Offers Outstanding as of December 31, 2025 | 945 | $2,660,303 | |
| Net Offers Made (2) | 4,040 | 13,646,553 | |
| Offers Accepted | (3,488) | (12,543,653) | $3,596 |
| Offers Outstanding as of March 31, 2026 | 1,497 | 3,763,204 | |
| Offers Accepted, Not Paid as of March 31, 2026 | 6,538 | 14,183,643 | |
| Payable as of March 31, 2026 | 8,035 | $17,946,846 | |

| **Co-Defendant Liquidated Claims** | |
|---|---|
| Payable as of December 31, 2025 | $0 |
| Settled | 0 |
| Paid | 0 |
| Payable as of March 31, 2026 | $0 |

(1)   Under the TDP, Post Class Action Complaint claims have been reported at a pro rata percentage
of their liquidated value.

(2)   Represents payment offers made during the period net of rejected and expired offers.

The accompanying notes are an integral part of this exhibit.